

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED

JUN 2 0 2008
JUN 20, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

PRAMILA GARDNER, JEFF GLENNON, :
KAREN P. HOLLANDER, REBECCA :
NORDAN, MAGGIE O'BRIEN, :
TRACIE SNYDER, ANDREA STRONG, :
JANE WERMAN, :
Individually And On :
Behalf Of All Others Similarly Situated :
All Others Similarly Situated, :

         Plaintiffs, :

         v. :

WHIRLPOOL CORPORATION, :

         Defendant. :

08CV3555
JUDGE KENDALL
MAG. JUDGE BROWN

CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL

Plaintiffs, Pramila Gardner ("Gardner"), Jeff Glennon ("Glennon"), Karen P. Hollander ("Hollander"), Rebecca Nordan ("Nordan"), Maggie O'Brien ("O'Brien"), Tracie Snyder ("Snyder"), Andrea Strong ("Strong"), and Jane Werman (collectively "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this Complaint, aver as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.    Plaintiffs bring this class action individually and on behalf of the Classes defined herein (the "Classes" or collectively, the "Class"), against Defendant, Whirlpool Corporation ("Defendant" or "Whirlpool"), to obtain, *inter alia*, damages and injunctive relief.

2. As alleged and explained more fully below, this action is brought to remedy violations of applicable law in connection with Whirlpool's design, manufacture, marketing, advertising, selling, warranting and servicing of its Duet, Duet HT and Duet Sport Front-Loading Automatic Washers (the "Washing Machines" or "Machines"). The Washing Machines contain a serious design defect that causes the Washing Machines to (a) accumulate mold and mildew within the Washing Machines, (b) produce a moldy odor that permeates consumers' homes if the doors to the Washing Machines are left open, (c) produce a mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to the extent to and for the purpose for which the Washing Machines were advertised, marketed and sold.

3. Plaintiffs assert claims for violation of the Magnuson-Moss Act, 15 U.S.C. §2301 *et seq.*, Texas Deceptive Trade Practices - Consumer Protection Act, Tex. Bus & Com. Code §17.41 *et seq.*, Florida Deceptive and Unfair Trade Practices Act, F.S.A. 501.201 *et seq.*, Maryland Consumer Protection Act, Md. Code Ann. § 13-303 *et seq.*, North Carolina Consumer Fraud and Deceptive Business Practices Act, N.C.G.S.A. 75-16.2, *et seq.*, Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, Arizona Consumer Fraud Act (A.R.S. §§44-1521, *et seq.*), and New York Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349, as well as claims for breach of express and implied warranty and unjust enrichment, on behalf of themselves and the Class.

4. Plaintiffs seek actual and/or compensatory damages, as well as equitable relief, including the replacement and/or recall of the defective Washing Machines, costs and expenses of litigation, including attorneys' fees to the extent permitted by applicable law, and all additional and further relief that may be available.

## THE PARTIES

5.    Plaintiff, Pramila Gardner, is, and at all times relevant and pertinent to this action

has been, a resident and citizen of Pearland, Brazoria County, Texas. Moreover, at all times

relevant and pertinent to this action, Plaintiff has been a citizen of the State of Texas and the

United States of America and has been domiciled in the State of Texas. Plaintiff purchased a

Duet Washing Machine from Best Buy Co. Inc. in Pearland, Texas on or about December 27,

2004 and took delivery of the Washing Machine on December 28, 2004. Plaintiff paid

approximately $999.99 (plus delivery charges and pedestal) for the Washing Machine and, at all

pertinent times, has used the Machine for its intended purpose.

6.    Plaintiff, Karen P. Hollander, is, and at all times relevant and pertinent to this

action has been, a resident and citizen of Boca Raton, Palm Beach County, Florida. Moreover, at

all times relevant and pertinent to this action, Plaintiff has been a citizen of the State of Florida

and the United States of America and has been domiciled in the State of Florida. Plaintiff

purchased a Duet Washing Machine from BrandsMart U.S.A. in Deerfield Beach, Florida on or

about January 11, 2006 and took delivery of the Washing Machine on January 16, 2006. Plaintiff

paid approximately $1,100 (plus delivery charges and extended warranty) for the Washing

Machine and, at all pertinent times, has used the Machine for its intended purpose.

7.    Plaintiff, Rebecca Nordan, is, and at all times relevant and pertinent to this action

has been, a resident and citizen of Davidsonville, Anne Arundel County, Maryland. Moreover, at

all times relevant and pertinent to this action, Plaintiff has been a citizen of the State of Maryland

and the United States of America and has been domiciled in the State of Maryland. Plaintiff

purchased a Duet Washing Machine from ABC Appliance Sales & Services, Inc. in Edgewater,

-3-

Maryland on or about April 22, 2005 and took delivery of the Washing Machine shortly thereafter. Plaintiff paid approximately $989.95 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

8.       Plaintiff, Maggie O'Brien, is, and at all times relevant and pertinent to this action has been, a resident and citizen of Valparaiso, Porter County, Indiana. Moreover, at all times relevant and pertinent to this action, Plaintiff has been a citizen of the State of Indiana and the United States of America and has been domiciled in the State of Indiana. Plaintiff purchased a Duet Washing Machine from Rouch's TV & Appliance, Inc. in Valparaiso, Indiana on or about February 11, 2005 and took delivery of the Washing Machine shortly thereafter. Plaintiff paid approximately $999.00 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

9.       Plaintiff, Tracie Snyder, is, and at all times relevant and pertinent to this action has been, a resident and citizen of Harrisburg, Cabarrus County, North Carolina. Moreover, at all times relevant and pertinent to this action, Plaintiff has been a citizen of the State of North Carolina and the United States of America and has been domiciled in the State of North Carolina. Plaintiff purchased a Duet Washing Machine from Plaza Brand Source in Concord, North Carolina on or about June 4, 2005 and took delivery of the Washing Machine on June 6, 2005. Plaintiff paid approximately $1,200.00 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

10.      Plaintiff, Jane Werman, is, and at all times relevant and pertinent to this action has been, a resident and citizen of Highland Park, Lake County, Illinois. Moreover, at all times relevant and pertinent to this action, Plaintiff has been a citizen of the State of Illinois and the

-4-

United States of America and has been domiciled in the State of Illinois. Plaintiff purchased a Duet Washing Machine from ABT Electronics, Inc. in Glenview, Illinois on or about February 15, 2004 and took delivery of the Washing Machine in or about August 2004. Plaintiff paid approximately $880.00 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

11.     Plaintiff, Andrea Strong, is, and at all times relevant and pertinent to this action has been, a resident and citizen of Gilbert, Arizona. Moreover, at all times relevant and pertinent to this action, Plaintiff has been a citizen of the State of Arizona and the United States of America and has been domiciled in the State of Arizona. At the time Plaintiff purchased a Duet Washing Machine from Spencer's TV & Appliances in Mesa, Arizona on or about November 19, 2004 and took delivery of the Washing Machine in or about December 11, 2004, Plaintiff resided in Mesa, Arizona. Plaintiff paid $695.95 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

12.     Plaintiff, Jeff Glennon, is, and at all times relevant and pertinent to this action has been, a resident and citizen of East Hills, New York. Moreover, at all times relevant and pertinent to this action, Plaintiff has been a citizen of the State of New York and the United States of America and has been domiciled in the State of New York. Plaintiff purchased a Duet Washing Machine from PC Richard & Son in Greenvale, New York on or about August 16, 2006 and took delivery of the Washing Machine on or about August 22, 2006. Plaintiff paid $838.97 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.

-5-

13. Whirlpool is a Delaware corporation and maintains its principal place of business at 2000 M-63 N, Benton Harbor, Michigan 49022. At all times relevant and pertinent to this action, Whirlpool has been a citizen of the State of Michigan. Whirlpool markets and sells products, including the Washing Machines throughout Illinois and this judicial district, by and through various retail outlets.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) because the amount in controversy, upon information and belief, exceeds $5,000,000, exclusive of interests and costs, and this is a class action in which the Class members and Defendant are citizens of different states.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, because Defendant does business throughout this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. Furthermore, Defendant has agreed that this is the appropriate venue for this dispute.

16. At all pertinent times, Whirlpool was in the business of distributing, advertising, marketing, promoting and selling products, including the Washing Machines.

17. The Washing Machines that form the basis of this Complaint were purchased from Defendant and/or placed in the stream of commerce by Defendant.

## FACTUAL BACKGROUND

### Class Members' Common Factual Allegations

18. Defendant holds itself out to the public as a manufacturer of safe, cutting-edge, and easy-to-use home appliances, including washing machines. Defendant is in the business of

manufacturing, producing, distributing, and/or selling washing machines throughout the United States.

19.     Defendant has manufactured, produced, and/or distributed front load washing machines for several leading retailers in the United States, including Lowe's, Sears, Best Buy, and other large retail chains.

20.     In recognition of the anticipated useful life of the Machine, Whirlpool expressly warranted the stainless steel drum of the Washing Machine for its lifetime.  Specifically, Whirlpool provided a "limited lifetime warranty on the stainless steel drum" stating that, "for the lifetime of the washer," Whirlpool would "pay for FSP® (factory specified products), replacement parts for the Stainless Steel wash drum if defective in materials or workmanship."

21.     Whirlpool also provided Plaintiffs and each owner of the subject Washing Machines with a one year factory warranty for parts and labor, a two year factory warranty for the electronic control board, a seven year factory warranty for the porcelain or powder top, drive system belt and pulleys, and a ten year factory warranty for the outer tub.  Whirlpool's express warranty, in pertinent part, provides that the warranty covers repairs to correct any Washing Machine defect related to materials or workmanship occurring during the warranty period. Under this warranty, Whirlpool was obligated, *inter alia*, to repair the defect at no charge. Defendant has these same obligations with respect to Plaintiffs and all Class members, but has failed to satisfy these obligations. In conjunction with each sale, the Defendant marketed, advertised and warranted that the defective Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not accumulate mold, mildew, and emit associated odors.

22.    Defendant also makes numerous additional express representations about the quality of its washing machines. For example, Whirlpool sold the Washing Machines as "High Efficiency" and labeled the Machines as "ENERGY STAR" compliant. ENERGY STAR is a voluntary labeling program designed to identify and promote energy-efficient products through a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy. Members of the Class have purchased the Washing Machines in part, on the basis that the Machines would save money and energy. In reality, at the recommendation of Whirlpool and independently, Class Members are having to run empty cycles of hot water and bleach to combat the mold and mildew problems with the Machine. Further, Whirlpool recommends running three successive washer cleaning cycles with an Affresh™ tablet in each for heavily soiled washers. Upon information and belief, the ratings (Modified Energy Factor) provided by Whirlpool to the government entities are not taking into account the extra loads necessary to run through the Machine in order to attempt to clean the Machine.

23.    Whirlpool intended for customers to believe its statements and representations about its washing machines and to trust that its high-end washing machines were and are of first-rate quality. Whirlpool has instead concealed material facts regarding the Washing Machines, including serious design defects, which cause the Washing Machines to (a) accumulate mold and mildew within the Washing Machines, (b) produce a moldy odor that permeates consumers' homes if the doors to the Washing Machines are left open, (c) produce a mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to the extent to and for the purpose which the Washing Machines were advertised, marketed and sold.

-8-

24.     Upon information and belief, the stainless steel drums, which come with a lifetime warranty, play a role in the accumulation of mold and mildew within the Washing Machines.

25.     Furthermore, Defendant was aware that the mold was caused by a defect with the Washing Machines and that none of the proposed solutions it offered Plaintiffs and Class members would adequately remedy the defect with the Washing Machines.

26.     Upon information and belief, Whirlpool knew and was aware, prior to marketing and selling the Washing Machines, that the Machines were inherently defective in a manner that they were substantially likely to cease working in the manner that they were intended to perform during their useful life with normal use and shortly after one year of use. Nevertheless, Whirlpool failed and refused to warn its customers of the serious defect inherent in the Washing Machines or to warn them regarding the problems that they would likely encounter when the Machines began to accumulate mold as a result of the defect at issue in this case.

27.     Whirlpool has refused, and continues to refuse, to warn consumers about the defect inherent in the Washing Machines or to effectively remedy the problems and defect inherent in the Machines. Unwilling to admit fault, Whirlpool has sat silently while consumers have purchased these defective products and continues to sit silently today as an unacceptable percentage of the Washing Machines become effectively unusable.

28.     As a result of the design defect that plagues the Washing Machines, Plaintiffs and other members of the Class overpaid for the Machines because the value of the Machines was diminished at the time that they were sold to consumers. In light of Whirlpool's knowledge of the problems associated with and the serious nature of the defect at issue, Whirlpool knew or

-9-

should have known that it was selling the Washing Machines to consumers with a value that was substantially less than they reasonably should have expected to receive and been able to rely upon receiving when purchasing the Machines under all of the circumstances. If Plaintiffs and other members of the Class had known about the design defect affecting the Washing Machines, they would not have paid the significant sums that they paid for the Machines.

29.    As a result of the mold or mildew odor that permeates many clothes and other items, including towels that are "washed" in the Machines, many consumers have been forced to replace clothes, towels and other items that literally have been ruined by the defect in these Washing Machines.

30.    Whirlpool also has profited, either directly or indirectly, by concealing the nature of the defect because, by misrepresenting its knowledge regarding the defect at issue and misrepresenting the cause of the problems associated with the defect to consumers, Whirlpool has been able to convince a large number of consumers to purchase the Washing Machines at premium prices, and to pay Whirlpool for repair services and Whirlpool products (from which Whirlpool earns a profit) to address the problems arising from the defect at issue -- even though Whirlpool has no effective remedy for the defect, literally has taken no action to correct the defect in the Machines and has succeeded in effectively profiting by failing and refusing to correct the defect in the Washing Machines.

31.    As a result of Whirlpool's false and misleading statements and concealment, as well as Whirlpool's other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of the Washing Machines and have suffered -- and continue to suffer -- injury

as a result of the defective nature of these Washing Machines and as a result of Defendant's misconduct.

32.     Plaintiffs' experiences mirror those of thousands of other owners of the Washing Machines.  Plaintiffs and many members of the Class have alerted Whirlpool to the mold/mildew problems by complaining to Defendant directly and/or to Defendant's authorized dealerships and service persons.  Indeed, the Internet is replete with references to the common and profound problems that consumers have experienced with the Machines, including, but not limited to, complaints in the following on-line forums:

http://www.my3cents.com/productReview.cgi?compid=226&product=duet+washer;

http://www.consumeraffairs.com/homeowners/whirlpool_washing_machine.html

33.     Far from innocuous or isolated, thousands of Washing Machine users have complained to Whirlpool and on Internet web sites about the uniform failures with the Machines.

34.     Whirlpool represented to Plaintiffs and members of the Class that the Washing Machines were reliable; that they were free from defects; and that they were of merchantable quality and workmanship.  Plaintiffs' experiences, mirroring those of countless other Washing Machine purchasers who have publicly recounted their problems with these models, reveal that these representations were false.

35.     In reality, Whirlpool knew that the Washing Machines were defective and unworkable for the purposes for which they were purchased in that they were susceptible to and likely to experience mold and mildew growth that Whirlpool was and remains unable to remedy. Although Whirlpool was aware of the problems with the Washing Machines early in their

product life cycle and in many cases before marketing and selling them, it never sought to warn its customers about those problems.

36.    In fact, in September 2007, Whirlpool disseminated information about the "potential" for buildup of "mold and mildew stains" in the washers and offered for sale another product. Affresh™ tablets, to supposedly combat this problem.  On the packaging for this product. Whirlpool misrepresented that Affresh "[r]emoves odor-causing residue in HE Washers[,]" and "[u]sed once a month, it keeps your machine fresh and clean by removing the odor-causing residue that can build up in all HE Washers."  This product did not, in fact, provide the promised remedy.  Through the sale of this product, Whirlpool gained additional profits, while failing to remedy the defect.

37.    Whirlpool knowingly concealed material facts regarding the Washing Machines, namely that they are inherently defective and unreliable, and are not of merchantable quality, with the intent that consumers would purchase these Machines even though they would not have in the absence of these acts of concealment.

38.    In the end, the harm caused by Defendant's false and misleading affirmative statements and omissions grossly outweighs any benefit that could be attributed to them.

39.    The Washing Machines purchased by Plaintiffs and Class members failed to work due to a defect in design (not resulting from the ordinary course of usage by Plaintiffs or Class members).

40.    Whirlpool failed to adequately design and/or test the Washing Machines to ensure that they were free from defects.  Before these models even reached the market, Whirlpool knew,

or was reckless in not knowing, that they (a) contained inherent defects; and (b) were not of merchantable quality.

41.    To this day, Defendant continues to conceal material information from users, consumers, and the public, through its customer service representatives, that (a) the Washing Machines are inherently defective; and (b) the Washing Machines are not of merchantable quality.

42.    All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Complaint.

## Plaintiff Pramila Gardner's Experiences With Her Washing Machine

43.    Plaintiff Gardner purchased one of the Washing Machines on or about December 27, 2004 and received delivery of that Machine on or about December 28, 2004.

44.    Plaintiff Gardner began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (affecting clothes and other items washed in the Machine) in May of 2006.

45.    Although Plaintiff Gardner followed the cleaning instructions from the Whirlpool website (www.whirlpool.com), ultimately this proved to be ineffective. Plaintiff Gardner's independent efforts of keeping the door to the Machine open, only washing clothing with hot or warm water, and running bleach through the Machine, did not relieve the serious mold/mildew problem that Plaintiff Gardner has experienced with the Machine. In addition, Plaintiff Gardner has tried to clean the inside of the Machine with Tilex® (a product advertised as a mold and mildew remover), however the mold and mildew continues to plague Plaintiff Gardner's Machine. Further, the Washing Machine smells like mildew most of the time. As a result of the

-13-

mold and mildew, Plaintiff Gardner's clothing smells like mildew after it is "washed" in the Machine.

## Plaintiff Karen Hollander's Experiences With Her Washing Machine

46.    Plaintiff Hollander purchased one of the Washing Machines on or about January 11, 2006 and received delivery of that Machine on or about January 16, 2006.

47.    Plaintiff Hollander began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (affecting clothes and other items washed in the Machine) several months after the purchase of her Washing Machine.

48.    Plaintiff Hollander called Whirlpool in or about December 2007. During the call, she raised the mold/mildew issue, but the Whirlpool representative only offered cleaning solutions, such as, using Affresh tablets. Plaintiff Hollander tried the Affresh tablets but ultimately this proved to be ineffective. Plaintiff Hollander's independent efforts of running a diluted Clorox solution through the Machine, following the procedures as suggested in the Whirlpool manual that came with the Machine, keeping the door to the Machine open and cleaning the rubber seal of the Machine with a cloth, also did not relieve the serious mold/mildew problem that Plaintiff Hollander has experienced with the Machine. In researching the issue, Plaintiff Hollander visited a retailer and learned of other similar complaints with the Washing Machines.

49.    Plaintiff Hollander purchased an extended warranty plan for her Machine on December 3, 2007 for $124.51. Whirlpool, however, refused to cover the mold/mildew problems with Plaintiff Hollander's Machine under the extended warranty.

-14-

**Plaintiff Rebecca Nordan's Experiences With Her Washing Machine**

50.     Plaintiff Nordan purchased one of the Washing Machines on or about April 21, 2005 and received delivery of that Machine on or about April 22, 2005.

51.     Plaintiff Nordan began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (affecting clothes and other items washed in the Machine) four months after the delivery of her Washing Machine.

52.     Although Plaintiff Nordan raised the mold/mildew issue with a Whirlpool representative in late 2005 through a telephone service call, the Whirlpool representative only offered cleaning solutions such as bleach and water mixture to run through the machine. Plaintiff Nordan's independent efforts of running a dishwasher detergent through the Machine, keeping the door to the Machine open and cleaning the rubber seal, glass door and detergent compartment tray of the Machine with a cloth and bleach solution, also did not relieve the serious mold/mildew problem that Plaintiff Nordan has experienced with the Machine. In researching the issue, Plaintiff Nordan learned of other similar complaints with the Washing Machines.

53.     Plaintiff called Whirlpool again in 2007 and in March 2008, and the representative offered the use of Affresh™ tablets. Plaintiff Nordan asked if the instruction to use Affresh™ tablets was in the manual that accompanied Plaintiff's Machine. Whirlpool responded by saying that this technique was not in the manual and that the Affresh™ tablets were invented after the problem started occurring. Plaintiff Nordan tried the Affresh™ tablets but ultimately this proved to be ineffective as well.

54.     Plaintiff Nordan purchased an extended warranty plan for her Machine for two years. Whirlpool, however, refused to come to Plaintiff Nordan's home to service her Machine's

serious mold/mildew problems under the extended warranty, although it offered to replace the gasket, at Plaintiff Nordan's expense. As a result of Whirlpool's response, Plaintiff Nordan did not renew her two year extended warranty plan with Whirlpool.

## Plaintiff Maggie O'Brien's Experiences With Her Washing Machine

55.     Plaintiff O'Brien purchased one of the Washing Machines on or about February 11, 2005 and received delivery of that Machine shortly thereafter.

56.     Plaintiff O'Brien began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (affecting clothes and other items washed in the Machine) soon after the purchase of her Washing Machine.

57.     As a result of Plaintiff O'Brien's complaints to Whirlpool, on or about January 13, 2006, a Whirlpool repairman came to Plaintiff O'Brien's home to look at the Machine. Due to the mold and mildew problem, the repairman replaced the rubber seal on the front of the Machine. The repairman also advised Plaintiff O'Brien to leave the door open on the Machine and to clean the Machine with soap. Neither the replacement of the rubber seal, nor the cleaning instructions were effective, as the mold and mildew problems continued to plague Plaintiff O'Brien's Machine.

58.     On or about February 22, 2006, Plaintiff O'Brien again complained to Whirlpool concerning the mold growth in her Washing Machine. Plaintiff O'Brien informed Whirlpool that she had been running bleach through the Machine and leaving the door open. Whirlpool responded by sending Plaintiff a set of cleaning instructions on how to prevent molding. At this time, Whirlpool recommended, "Select the 'heavy duty' cycle and 'hot' water. Start empty washer and at 7 to 8 minutes into the cycle, fill the detergent dispenser with BLEACH. At the

-16-

end of the cycle, open the door, gently roll the rubber gasket toward you and wipe the underside of the rubber gasket, the area directly under the gasket ("well" area), and the top of the gasket with bleach (1 cup bleach to a gallon hot water)." Plaintiff followed the instructions given to her by Whirlpool, however the mold continued to grow inside Plaintiff's Machine.

59.     Plaintiff O'Brien raised the mold/mildew issue again with a Whirlpool representative on September 17, 2007, the Whirlpool representative only offered cleaning solutions that ultimately proved to be ineffective, such as, using hot water with bleach, removing the clothes very soon after the cycle, leaving the door open to ensure that the unit does not dry out, periodically wiping the rubber seal and "well" area with bleach solution, and using Affresh™. Plaintiff O'Brien's efforts of running bleach through the Machine, using High Efficiency detergent and wiping the inside of the Machine with a cloth coated in bleach did not relieve the serious mold/mildew problem that Plaintiff O'Brien has experienced with the Machine.

## Plaintiff Tracie Snyder's Experiences With Her Washing Machine

60.     Plaintiff Snyder purchased one of the Washing Machines on or about June 4, 2005 and received delivery of that Machine on or about June 6, 2005.

61.     Plaintiff Snyder began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (affecting clothes and other items washed in the Machine) in approximately April 2007.

62.     Although Plaintiff Snyder raised the mold/mildew issue with Whirlpool representative, the Whirlpool representative only suggested that Plaintiff Snyder leave the door open on her Machine. Plaintiff Snyder has left the door open but ultimately this proved to be

-17-

ineffective. Plaintiff Snyder's independent efforts of running a diluted bleach solution through the Machine, running "Odoban®" through the Machine with her laundry, cleaning the rubber seal of the Machine with a cloth, cleaning behind the rubber seal by moving the seal away from the drum also did not relieve the serious mold/mildew problem that Plaintiff Snyder has experienced with the Machine. In researching the issue, Plaintiff Snyder visited a retailer and learned of other similar complaints with the Washing Machines.

63.     Plaintiff Snyder purchased an extended warranty plan on her Machine on June 11, 2006, which is valid through June 11, 2010. Whirlpool, however, refused to cover the mold/mildew problems with Plaintiff Snyder's Machine.

## Plaintiff Jane Werman's Experiences With Her Washing Machine

64.     Plaintiff Werman purchased one of the Washing Machines on or about February 15, 2004 and received delivery of that Machine in or about August 2004.

65.     Plaintiff Werman began to smell mildew emanating from the Machine after only the first couple months after delivery of her Washing Machine. Plaintiff Werman began to leave the door on the Machine open at all times. Plaintiff Werman also began to run bleach cycles through her Machine. Despite Plaintiff Werman's efforts, the mildew smell continued. Then, Plaintiff Werman began to experience mold and mildew accumulation in the Washing Machine, while continuing to experience mold and mildew odor problems (affecting clothes and other items washed in the Machine) approximately one and a half years after the delivery of her Washing Machine.

66.     Plaintiff Werman's independent efforts of cleaning the Machine by hand and continuing to run bleach through the Machine ultimately proved to be ineffective. In researching

-18-

the issue, Plaintiff Werman learned of similar complaints with the Washing Machines on the Internet. Through the Internet, Plaintiff Werman learned that some people were experiencing extensive mold and mildew growth behind the rubber seal on the Machine. Similar to the complaints on the Internet, when Plaintiff Werman pulled back the rubber seal on her Machine, the area behind the rubber seal was caked with mold. Currently, after every couple of loads of laundry, Plaintiff Werman cleans out the mold behind the rubber seal. However, Plaintiff Werman's efforts are to no avail, as the mold and mildew problem continues to plague Plaintiff Werman's Machine.

## Plaintiff Jeff Glennon's Experiences With His Washing Machine.

67.    Plaintiff Glennon purchased one of the Washing Machines on August 16, 2006 and took delivery of the Machine on or about August 22, 2006.

68.    Plaintiff Glennon began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (affecting clothes and other items washed in the Machine) within weeks of delivery of his Washing Machine.

69.    At the time of the purchase, Whirlpool failed to disclose that the Washing Machine was defective because it experienced and continues to experience mold and mildew growth and to produce mold/mildew odors in Plaintiff Glennon's home and on clothing and other items washed in the Machine.

70.    Plaintiff Glennon contacted Whirlpool numerous times concerning the problem with the mold and mildew in his Washing Machine. In response, Whirlpool representatives advised Plaintiff Glennon to run his Washing Machine on a hot cycle with bleach and to wipe

down the door and gasket on the unit. Plaintiff Glennon followed these recommendations, but continued to experience the mold and mildew problems.

71.     Whirlpool sent numerous repair representatives to Plaintiff Glennon's home to remedy the mold and mildew problems. Several of the Whirlpool representatives told Plaintiff Glennon that the mold and mildew problems that he was experiencing were widespread among Whirlpool's Washing Machines. One of the Whirlpool representatives advised Plaintiff Glennon to run a cycle of bleach and use the clean washer cycle. Plaintiff Glennon followed these recommendations, but continued to experience the mold and mildew problems.

72.     After ten service calls, Plaintiff Glennon eventually obtained a store exchange from PC Richard & Son. On or about November 27, 2007, Plaintiff Glennon had PC Richard & Son pickup his first Washing Machine, and deliver a replacement Washing Machine. Plaintiff Glennon has, at all times, used his Machines for their intended purpose.

73.     Within three months, Plaintiff Glennon noticed that the second machine similarly developed a foul mold/mildew odor as well as black mold. Plaintiff Glennon contacted Whirlpool again concerning the problem with the second machine. In response, Whirlpool advised Plaintiff Glennon to leave the door open, run hot cycles from time to time, and run cycles with the cleanser Afresh. Plaintiff Glennon followed these recommendations, but has continued to experience the mold and mildew problems.

**Plaintiff Andrea Strong's Experiences With Her Washing Machine.**

74.     Plaintiff Strong purchased one of the Washing Machines on November 19, 2004 and took delivery of the Machine on or about December 11, 2004.

-20-

75.    At the time of the purchase, Whirlpool failed to disclose that the Washing Machine was defective because it experienced and continues to experience mold and mildew growth and to produce mold/mildew odors in Plaintiff Strong's home and on clothing and other items washed in the Machine.

76.    Plaintiff Strong began to experience mold and mildew accumulation in the Washing Machine and on clothes that she had put through the Washing Machine, as well as mold/mildew odor problems (both escaping from the Machine and affecting clothes and other items washed in the Machine).

77.    Plaintiff Strong contacted Whirlpool concerning the problem with the mold and mildew in her Washing Machine. In response, the Whirlpool representative advised Plaintiff Strong to wipe and dry the boot on her Washing Machine, and to run empty cycles with the cleaner product Affresh. Plaintiff Strong complied with these recommendations, but has continued to experience the mold and mildew problems. The Whirlpool representative told Plaintiff Strong that the mold and mildew problems were caused by the failure of the Washing Machine to fully drain water after washing cycles.

## CLASS ACTION ALLEGATIONS

78.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of themselves and the following Class:

### Nationwide Class:

All persons or entities residing in the United States who purchased, not for resale, a Washing Machine ("Class").

-21-

79.    Plaintiffs also bring this action on behalf of the following Sub-Classes, as more fully set forth below and to the extent appropriate, in the alternative to the claims asserted on behalf of the Nationwide Class:

| | |
|---|---|
| **Arizona**: | All Class Members who purchased a Washing Machine, not for resale, in the State of Arizona. ("Arizona Class"). |
| **Florida**: | All Class Members who purchased a Washing Machine, not for resale, in the State of Florida. ("Florida Class"). |
| **Illinois**: | All Class Members who purchased a Washing Machine, not for resale, in the State of Illinois. ("Illinois Class"). |
| **Indiana**: | All Class Members who purchased a Washing Machine, not for resale, in the State of Indiana. ("Indiana Class"). |
| **Maryland**: | All Class Members who purchased a Washing Machine, not for resale, in the State of Maryland. ("Maryland Class"). |
| **New York**: | All Class Members who purchased a Washing Machine, not for resale, in the State of New York. ("New York Class"). |
| **North Carolina**: | All Class Members who purchased a Washing Machine, not for resale, in the State of North Carolina. ("North Carolina Class"). |
| **Texas**: | All Class Members who purchased a Washing Machine, not for resale, in the State of Texas. ("Texas Class"). |

80.    Excluded from the Nationwide Class and Sub-Classes ("Classes") are Defendant, its affiliates, employees, officers and directors, persons or entities which distribute or sell the Washing Machines, the Judge(s) assigned to this case, and attorneys of record. Plaintiffs reserve the right to amend the definitions of the Classes if discovery and further investigation reveals that the Classes should be expanded or otherwise modified.

81.   **Numerosity**: The members of the proposed Classes are so numerous that joinder of all members is impracticable. Each of the proposed Classes includes thousands of members. The precise number of members of each of the Classes can be ascertained through discovery, which will include Defendant's sales, warranty service and other records.

82.   **Commonality**: There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the members of each of the Classes. These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

       a.    Whether the Washing Machines are defective;

       b.    Whether Whirlpool knew that the Washing Machines were and are defective;

       c.    Whether Whirlpool omitted material facts and concealed facts from its communications and disclosures to Plaintiffs and the Class regarding the defects inherent in the Washing Machines;

       d.    Whether Whirlpool made false and/or misleading statements about the Machines;

       e.    Whether Whirlpool's false and/or misleading statements of facts and concealment of material facts regarding the Washing Machines were likely to deceive the public;

       f.    Whether, by the misconduct set forth in this Complaint, Whirlpool has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

-23-

deceptive acts or practices in connection with the advertising, marketing and sale of the Machines;

g.    Whether, by its conduct, Whirlpool violated various state consumer protection statutes;

h.    Whether, by its conduct, Whirlpool breached its warranty and/or extended warranties;

i.    Whether by its conduct, Whirlpool breached its implied warranties;

j.    Whether, by its conduct, Whirlpool has been unjustly enriched;

k.    Whether, as a result of Whirlpool's conduct, Plaintiffs and the Classes have suffered damages; and if so the appropriate amount thereof; and

l.    Whether, as a result of Whirlpool's misconduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

83.    **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and all Class members have been injured by the same wrongful practices in which Whirlpool has engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

84.    **Adequacy**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests which are contrary to or conflicting with the Classes.

85.   **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each Class member resulting from Whirlpool's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Classes would be proper.  Whirlpool has acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Classes as a whole is appropriate.

86.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

87.   Defendant has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

### Notice to Attorneys General of Action

-25-

88.    A copy of this Complaint shall be mailed to the Attorneys General,

Administrators, Commissioners, or other officers, as required by the laws of Texas pursuant to

Tex. Bus. & Com. Code § 17.501(a)(2).

### FIRST CAUSE OF ACTION
### Asserted on Behalf of the Nationwide Class Against Whirlpool
### (Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) - Written Warranty)

89.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

90.    Whirlpool's Washing Machines are "consumer products" as that term is defined

by 15 U.S.C. § 2301(1).

91.    Plaintiffs and Class members are "consumers" as that term is defined by 15

U.S.C. § 2301(3).

92.    Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C.

§ 2301(4) and (5).

93.    Defendant provided Plaintiffs and Class members with "written warranties" as

that term is defined by 15 U.S.C. § 2301(6).

94.    In its capacity as a warrantor, and by the conduct described herein, any attempt by

Defendant to limit the express warranties in a manner that would exclude coverage of the

defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise

limit, liability for the defective Washing Machines is null and void.

95.    All jurisdictional prerequisites have been satisfied herein.

-26-

96.    By Defendant's conduct as described herein, including Defendant's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written and promises, warranties, and representations.

97.    As a result of Defendant's breach of express warranties, Plaintiffs and Classes members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## SECOND CAUSE OF ACTION
**Asserted on Behalf of the Arizona, Florida, Illinois, Indiana, Maryland, New York, North Carolina, and Texas Sub-Classes Against Whirlpool**
**(Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) - Implied Warranty)**

98.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

99.    Whirlpool's Washing Machines are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

100.    Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

101.    Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

102.    Defendant provided Plaintiffs and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

103.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Defendant to limit the implied warranties in a manner that would exclude coverage of the

defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is void.

104.    All jurisdictional prerequisites have been satisfied herein.

105.    By Defendant's conduct as described herein, including Defendant's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

106.    As a result of Defendant's breach of implied warranties, Plaintiffs and Classes members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

### THIRD CAUSE OF ACTION
### Asserted on Behalf of the Florida Class
### (Violation of Florida's Deceptive and Unfair Trade Practices Act,
### F.S.A., 501.201 *et seq.* ("FDUTPA"))

107.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

108.    At all relevant times, Plaintiff Hollander and all members of the Florida Class were consumers within the meaning of FDUTPA.

109.    At all relevant times hereto, Whirlpool engaged in trade and/or commerce within the meaning of FDUTPA.

110.    The practices of Defendant violate FDUTPA for, *inter alia*, one or more of the following reasons:

a.      Whirlpool omitted and concealed material facts from its communications and disclosures to Plaintiff Hollander and all members of the Florida Class regarding the defect inherent in the Washing Machines;

b.      Whirlpool made false and/or misleading statements of material fact regarding the Washing Machines, which statements were likely to deceive the public; and

c.      Whirlpool knew, or were reckless in not knowing, that its statements about the Washing Machines were false and/or misleading.

111.    By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

112.    The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

113.    Had Whirlpool disclosed all material information regarding the Washing Machines to Plaintiff Hollander and all of the Florida Class members, they would not have purchased the Washing Machines.

114.    The foregoing acts and practices proximately caused Plaintiff Hollander and other members of the Florida Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

### FOURTH CAUSE OF ACTION
### Asserted on Behalf of the Illinois Class
### (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act,

## 815 ILCS 505/1 *et seq.* ("CFDBPA")

115.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

116.    At all relevant times, Plaintiff Werman and all members of the Illinois Class were consumers within the meaning of CFDBPA.

117.    At all relevant times hereto, Whirlpool engaged in trade and/or commerce within the meaning of CFDBPA.

118.    Despite knowing that the Washing Machines are manufactured and sold with an inherent defect, as described herein, that causes mold and/or mildew to accumulate within the Washing Machines, produces a moldy odor that permeates consumers' homes if the doors to the Washing Machines are left open, and produces a mold or mildew odor on clothes washed in the Machines, when it markets and sells the Machines, Whirlpool uniformly represents to customers and the general public that the Machines are free from defects and will perform in the manner and for the purpose that they are intended.

119.    Under all circumstances, Whirlpool's representations and/or omissions regarding the defect in the Washing Machines were misleading and deceptive, and Whirlpool intentionally made these misleading and deceptive representations and/or omissions (while knowing they were deceptive and misleading) for the sole purpose of deceiving Plaintiff Werman and other Illinois Class members.  Defendant intended that Plaintiff Werman rely on Whirlpool's deceptive and misleading practice.

-30-

120.    Whirlpool's conduct was unfair and deceptive and constituted an improper
concealment, suppression or omission of material facts, in violation of the CFDPA's prohibition
against unfair business practices.

121.    Whirlpool violated the CFDPA's prohibition against misrepresenting and omitting
material information during commercial transactions, as well as the CFDPA's prohibition against
unfair business practices.

122.    Whirlpool's misconduct, including the misrepresentations and/or concealment of
the defective condition of the Machines, as described in this Complaint, took place in the course
of trade or commerce in Illinois, and arose out of transactions that occurred at one or more of its
retail outlets in Illinois.

123.    As a direct and proximate result of Whirlpool's violations of the CFDPA,
Werman and other Class members suffered damages, in the form of, *inter alia*, monies spent to
repair the Washing Machines and/or diminution in value of the Washing Machines.

**FIFTH CAUSE OF ACTION**
**Asserted on Behalf of the Maryland Class**
**(Violation of Maryland Consumer Protection Act,**
**Md. Code Ann. § 13-303 *et seq.* ("MCPA"))**

124.    Plaintiffs incorporate by reference the allegations contained in all preceding
paragraphs of this Complaint as though set forth fully herein.

125.    Pursuant to the MCPA §§ 13-301(3), (9), deceptive trade practices include the
"[f]ailure to state a material fact if the failure deceives or tends to decive," and also include the
"knowing concealment, suppression, or omission of any material fact with the intent that a
consumer rely on the same."

126.   Whirlpool knew of the defect inherent in the Washing Machines.

127.   Whirlpool knew that the existence of a defect inherent in the Washing Machine was material to Plaintiff Nordan and the Maryland Class.

128.   Whirlpool failed to disclose that the Washing Machines were inherently defective to Plaintiff Nordan and the Maryland Class.

129.   Whirlpool's failure to disclose the material fact of the defect of the Washing Machines deceived Plaintiff Nordan and the Maryland Class.

130.   Whirlpool failed to disclose the defect in the Washing Machines with the intent that consumers would rely upon that omission to purchase the Washing Machines.

131.   Plaintiff Nordan and the Maryland Class have suffered injury as a result in that they purchased Washing Machines that they would not have otherwise purchased had they known of the defect.

132.   As a result, Plaintiff Nordan and the Maryland Class have suffered actual damages in the form of, *inter alia,* monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees, and costs of suit.

**SIXTH CAUSE OF ACTION**
**Asserted on Behalf of the North Carolina Class**
**(Violation of North Carolina Unfair and Deceptive Trade Practices Act §75-1.1 ("NCGS"))**

133.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

-32-

134.    Pursuant to NCGS §75-1.1(a), "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

135.    At all relevant times, Whirlpool's acts and commissions were in and affected commerce within the meaning of NCGS.

136.    Whirlpool omitted and concealed material facts from its communications and disclosures to Plaintiff Snyder and all members of the North Carolina Class regarding the defects inherent in the Washing Machine.

137.    Whirlpool's acts and omissions had a tendency or capacity to deceive Plaintiff Snyder and the North Carolina Class.

138.    Plaintiff Snyder and the North Carolina Class were injured by reason of Defendant's acts and omissions.

139.    Whirlpool's conduct as described herein was unfair, deceptive, violating of public policy, and substantially injurious to Plaintiff Snyder and the North Carolina Class.

140.    Plaintiff Snyder and the North Carolina Class have suffered actual damages in the form of, *inter alia* monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees, and costs of suit.

**SEVENTH CAUSE OF ACTION**
**Asserted on Behalf of the Texas Class**
**(Violation of Texas Deceptive Trade Practices - Consumer Protection Act, TEX. BUS &**
**COM CODE §17.41 *et seq.* ("DTPA"))**

-33-

141.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

142.    At all relevant times, Plaintiff Gardner and all members of the Texas Class were consumers within the meaning of DTPA.

143.    At all relevant times hereto, Whirlpool engaged in trade and/or commerce within the meaning of DTPA.

144.    The practices of Defendant violate DTPA for, *inter alia*, one or more of the following reasons

      a.    Whirlpool omitted and concealed material facts from its communications and disclosures to Plaintiff Gardner and all members of the Texas Class regarding the defect inherent in the Washing Machines;

      b.    Whirlpool made false and/or misleading statements of material fact regarding the Washing Machines, which statements were likely to deceive the public;

      c.    Whirlpool knew, or were reckless in not knowing, that their statements about the Washing Machines were false and/or misleading;

      d.    Whirlpool represented that a guarantee or warranty confers or involves rights or remedies which it does not have;

      e.    Whirlpool represented that the Washing Machines had sponsorship, approval, characteristics uses and benefits that they did not have; and

      f.    Whirlpool represented that the Washing Machines were of a particular standard. quality or grade, when they were not.

145.    By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

146.    The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

147.    Had Whirlpool disclosed all material information regarding the Washing Machines to Plaintiff Gardner and all of the Texas Class members, they would not have purchased the Washing Machines.

148.    The foregoing acts and practices proximately caused Plaintiff Gardner and other members of the Texas Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

## EIGHTH CAUSE OF ACTION
### Asserted on Behalf of the Arizona Class
### Violation of Arizona's Consumer Fraud Act (A.R.S. §§44-1521, *et seq.*)

149.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

150.    Arizona's Consumer Fraud Act ("CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or

-35-

damaged thereby, is declared to be an unlawful practice." Whirlpool's conduct, as described herein, is in violation of the CFA.

151.    Defendant violated the CFA when it represented, through its advertising, warranties and other express representations, that the Washing Machines had characteristics and benefits that they did not actually have.

152.    Whirlpool violated the CFA when it falsely represented, through its advertising, marketing, and other express representations, that the Washing Machines were of a certain quality or standard when they were not.

153.    Defendant violated the CFA by fraudulently concealing from and/or intentionally failing to disclose, to Plaintiff Strong and the Arizona Class, material information about the Washing Machines in a manner that was deceptive.

154.    Defendant violated the CFA by holding the Washing Machines out as superior in quality, when, in fact, they are defective.

155.    To this day, Whirlpool continues to violate the CFA by continuing to actively conceal material information about the Washing Machines and by representing to Plaintiff Strong and the members of the Arizona Class that the Washing Machines are free of defects and/or provide superior cleaning power.

156.    As a direct and proximate cause of Whirlpool's violations of the CFA, Plaintiff Strong and the Arizona Class have suffered injury in fact and/or actual damage, in that they purchased Washing Machines that produce mold and mildew and, thus, are inherently defective.

157.    Plaintiff Strong and the Arizona Class members relied on Defendant's misrepresentations. Had Defendant disclosed in its marketing and sales statements the true

-36-

quality of the Washing Machines, Plaintiff Strong and the Arizona Class would not have purchased, or would have paid significantly less for, the Washing Machines. Plaintiff Strong and the Arizona Class have suffered damages as a result.

158.    Plaintiff Strong and the Arizona Class members have suffered an injury in fact and lost money in that had Whirlpool disclosed the true nature and quality of the Washing Machines, they would not have purchased, or would have paid significantly less for, the Washing Machines.

159.    Plaintiff Strong, on behalf of herself and all others similarly situated, demands judgment against Whirlpool for injunctive relief in the form of restitution and/or proportional disgorgement of funds paid by Plaintiff Strong and the Arizona Class to purchase the Washing Machines and/or disgorgement of funds received by Defendant from the sale of the Washing Machines, along with interest, attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**Asserted on Behalf of the New York Class**
**(Violations of Section 349 of New York General**
**Business Law: Deceptive Acts And Practices)**

160.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

161.    Plaintiff Glennon and members of the New York Class are consumers in New York who purchased the defective Whirlpool front loading washing machines and bring this action pursuant to NY GBL §349.

162.    Whirlpool has engaged in deceptive practices in the sale of the defective front loading washing machines including: (1) selling washing machines with a design flaw that

caused mold and/or mildew to occur with normal use and/or created a substantial risk of this; and

(2) failing to disclose and/or concealing this known defect and risk.

163. The unfair and deceptive trade acts and practices of Whirlpool have directly, foreseeably and proximately caused damages and injury to Plaintiff Glennon and the other members of the New York Class.

### TENTH CAUSE OF ACTION
### Asserted on Behalf of the Florida Class
### (Breach of Express Warranty, F.S.A. § 672.313)

164. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

165. Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, has continued to market and sell these Machines with this express warranty.

166. Whirlpool also sold extended warranties to Plaintiff Hollander and some of the members of the Florida Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defect in the Washing Machines.

167. Whirlpool further warranted the stainless steel drums for their lifetime.

168. Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition in which they do not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

-38-

169.    Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff Hollander and the Florida Class.

170.    Whirlpool has received timely notice of the breaches of warranty alleged herein.

171.    In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines, including hundreds (if not thousands) from Florida residents. Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranties, even though it knows of the inherent defect in the Washing Machines.

172.    Whirlpool has failed to provide to Plaintiff Hollander or the Florida Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff Hollander and members of the Florida Class.

173.    As a result of Whirlpool's breaches of warranty, Plaintiff Hollander and the Florida Class have suffered damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### Asserted on Behalf of the Illinois Class
### (Breach of Express Warranty, 810 ILCS 5/2-313)

174.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

175.    Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, has continued to market and sell these Machines with this express warranty.

176. Whirlpool also sold extended warranties to some of the members of the Illinois Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defect in the Washing Machines.

177. Whirlpool further warranted the stainless steel drums for their lifetime.

178. Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition in which they do not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

179. Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff Werman and the Illinois Class.

180. Whirlpool has received timely notice of the breaches of warranty alleged herein.

181. In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines, including hundreds (if not thousands) from Illinois residents. Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranties, even though it knows of the inherent defect in the Washing Machines.

182. Whirlpool has failed to provide to Plaintiff Werman or the Illinois Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff Werman and members of the Illinois Class.

-40-

183.   Plaintiff Werman and the Illinois Class have complied with the terms of Whirlpool's warranty.

184.   As a result of Whirlpool's breaches of warranty, Plaintiff Werman and the Illinois Class have suffered damages in an amount to be determined at trial.

### TWELFTH CAUSE OF ACTION
### Asserted on Behalf of the Indiana Class
### (Breach of Express Warranty, IC 26-1-2-313)

185.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

186.   Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, has continued to market and sell these Machines with this express warranty.

187.   Whirlpool also sold extended warranties to some of the members of the Indiana Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defect in the Washing Machines.

188.   Whirlpool further warranted the stainless steel drums for their lifetime.

189.   Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition in which they do not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

190.   Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff O'Brien and the Indiana Class.

-41-

191.    Whirlpool has received timely notice of the breaches of warranty alleged herein.

192.    In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines, including hundreds (if not thousands) from Indiana residents. Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranties, even though it knows of the inherent defect in the Washing Machines.

193.    Whirlpool has failed to provide to Plaintiff O'Brien or the Indiana Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff O'Brien and members of the Indiana Class.

194.    Plaintiff O'Brien and the Indiana Class have complied with the terms of Whirlpool's warranty.

195.    As a result of Whirlpool's breaches of warranty, Plaintiff O'Brien and the Indiana Class have suffered damages in an amount to be determined at trial.

### THIRTEENTH CAUSE OF ACTION
### Asserted on Behalf of the Maryland Class
### (Breach of Express Warranty, Md. Code § 2-313)

196.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

197.    Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, has continued to market and sell these Machines with this express warranty.

-42-

198.    Whirlpool also sold extended warranties to some of the members of the Indiana Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defect in the Washing Machines.

199.    Whirlpool further warranted the stainless steel drums for their lifetime.

200.    Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition in which they do not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

201.    Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff Nordan and the Maryland Class.

202.    Whirlpool has received timely notice of the breaches of warranty alleged herein.

203.    In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines, including hundreds (if not thousands) from Maryland residents. Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranties, even though it knows of the inherent defect in the Washing Machines.

204.    Whirlpool has failed to provide to Plaintiff Nordan or the Maryland Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff Nordan and members of the Maryland Class.

-43-

205.    Plaintiff Nordan and the Maryland Class have complied with the terms of Whirlpool's warranty.

206.    As a result of Whirlpool's breaches of warranty, Plaintiff Nordan and the Maryland Class have suffered damages in an amount to be determined at trial.

### FOURTEENTH CAUSE OF ACTION
### Asserted on Behalf of the North Carolina Class
### (Breach of Express Warranty, N.C.G.S.A. § 25-2-313)

207.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

208.    Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, has continued to market and sell these Machines with this express warranty.

209.    Whirlpool also sold extended warranties to some of the members of the North Carolina Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defect in the Washing Machines.

210.    Whirlpool further warranted the stainless steel drums for their lifetime.

211.    Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition in which they do not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

212.    Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff Snyder and the North Carolina Class.

-44-

213.    Whirlpool has received timely notice of the breaches of warranty alleged herein.

214.    In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines, including hundreds (if not thousands) from North Carolina residents. Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranties, even though it knows of the inherent defect in the Washing Machines.

215.    Whirlpool has failed to provide to Plaintiff Snyder or the North Carolina Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff Snyder and members of the North Carolina Class.

216.    Plaintiff Snyder and the North Carolina Class have complied with the terms of Whirlpool's warranty.

217.    As a result of Whirlpool's breaches of warranty, Plaintiff Snyder and the North Carolina Class have suffered damages in an amount to be determined at trial.

### FIFTEENTH CAUSE OF ACTION
### Asserted on Behalf of the Texas Class
### (Breach of Express Warranty, Tex. Bus. & Com. Code Ann. § 2-313)

218.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

219.    Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, has continued to market and sell these Machines with this express warranty.

-45-

220.    Whirlpool also sold extended warranties to some of the members of the Texas Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defect in the Washing Machines.

221.    Whirlpool further warranted the stainless steel drums for their lifetime.

222.    Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition in which they do not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

223.    Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff Gardner and the Texas Class.

224.    Whirlpool has received timely notice of the breaches of warranty alleged herein.

225.    In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines, including hundreds (if not thousands) from Texas residents.  Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranties, even though it knows of the inherent defect in the Washing Machines.

226.    Whirlpool has failed to provide to Plaintiff Gardner or the Texas Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff Gardner and members of the Texas Class.

227. Plaintiff Gardner and the Texas Class have complied with the terms of Whirlpool's warranty.

228. As a result of Whirlpool's breaches of warranty, Plaintiff Gardner and the Texas Class have suffered damages in an amount to be determined at trial.

## SIXTEENTH CAUSE OF ACTION
### Asserted on Behalf of the Arizona Class
### Breach of Express Warranty Under Arizona's Uniform Comm. Code (A.R.S. § 47-2313)

229. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

230. Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, has continued to market and sell these Machines with this express warranty.

231. Whirlpool also sold extended warranties to some of the members of the Arizona Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defect in the Washing Machines.

232. Whirlpool further warranted the stainless steel drums for their lifetime.

233. Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition in which they do not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

234. Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff Strong and the Arizona Class.

235.    Whirlpool has received timely notice of the breaches of warranty alleged herein.

236.    In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines, including hundreds (if not thousands) from Arizona residents.  Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranties, even though it knows of the inherent defect in the Washing Machines.

237.    Whirlpool has failed to provide to Plaintiff Strong or the Arizona Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff Strong and members of the Arizona Class.

238.    Plaintiff Strong and the Arizona Class have complied with the terms of Whirlpool's warranty.

239.    As a result of Arizona's breaches of warranty, Plaintiff Strong and the Arizona Class have suffered damages in an amount to be determined at trial.

### SEVENTEENTH CAUSE OF ACTION
#### Asserted on Behalf of the New York Class
#### Breach of Express Warranty under the New York Uniform Commercial Code

240.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

241.    Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, has continued to market and sell these Machines with this express warranty.

242. Whirlpool also sold extended warranties to some of the members of the New York Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defect in the Washing Machines.

243. Whirlpool further warranted the stainless steel drums for their lifetime.

244. Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition in which they do not meet the warranty obligations undertaken by Whirlpool and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

245. Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiff Glennon and the New York Class.

246. Whirlpool has received timely notice of the breaches of warranty alleged herein.

247. In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines, including hundreds (if not thousands) from New York residents. Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranties, even though it knows of the inherent defect in the Washing Machines.

248. Whirlpool has failed to provide to Plaintiff Glennon or the New York Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiff Glennon and members of the New York Class.

-49-

249.    Plaintiff Glennon and the New York Class have complied with the terms of Whirlpool's warranty.

250.    As a result of Whirlpool's breaches of warranty, Plaintiff Glennon and the New York Class have suffered damages in an amount to be determined at trial.

### EIGHTEENTH CAUSE OF ACTION
### Asserted on Behalf of the Illinois Class
### (Breach of Implied Warranty of Merchantability, 810 Ill. Comp. Stat. 5/2-314)

251.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

252.    Plaintiff Werman and the members of the Illinois Class are "buyers" as that term is defined in 810 Ill. Comp. Stat. 5/2-103.

253.    Whirlpool is a "seller" as that term is defined in 810 Ill. Comp. Stat. 5/2-103.

254.    The Washing Machines are "goods" as that term is defined in 810 Ill. Comp. Stat. 5/2-105.

255.    Whirlpool is a merchant in the sale of the Washing Machines to Plaintiff Werman and the members of the Illinois Class pursuant to 810 Ill. Comp. Stat. 5/2-104. Whirlpool manufactures, markets and sells the Washing Machines. Thus, Whirlpool provided Plaintiff Werman and the Illinois Class members with an implied warranty that the Washing Machines are merchantable and fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing Machines are defective in that they contain a serious design defect that causes the Washing Machines to accumulate mold and mildew within the Washing Machines and to

produce a moldy odor that permeates consumers' homes and clothing. Accordingly, clothing is not cleaned in the Machines.

256. The alleged defects are so basic that they render the Washing Machines unfit for the ordinary purpose of cleaning clothing and other articles.

257. Whirlpool knew or had reason to know that Plaintiff Werman and the Illinois Class members purchased the Washing Machines to effectively wash their clothing and other articles.

258. The Washing Machines are not adequately packaged and labeled, and Whirlpool has concealed or otherwise failed to disclose the defective nature of the Washing Machines.

259. The Washing Machines do not conform to the promises and affirmations uniformly issued by Defendant in its sales and marketing materials and warranties.

260. Plaintiff Werman and the Illinois Class members have used the Washing Machines for their intended and ordinary purpose of cleaning clothing and other articles.

261. Plaintiff Werman and the Illinois Class members have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

262. Members of the Class have provided timely notice to Defendant regarding the problems they experienced with the Washing Machines and, notwithstanding such notice, Defendant has failed and refused to offer Plaintiff Werman and the Illinois Class an effective remedy.

263. In addition, Defendant has received, on information and belief, thousands of

-51-

complaints and other notices from consumers advising them of the defects associated with the
Washing Machines.

264.    By virtue of the conduct described herein, Defendant breached the implied
warranty of merchantability.

265.    Plaintiff Werman and the Illinois Class members have been damaged as a direct
and proximate result of Whirlpool's breach of the implied warranty.

### NINETEENTH CAUSE OF ACTION
### Asserted on Behalf of the Maryland Class
### (Breach of Implied Warranty of Merchantability, Md. Code §2-314)

266.    Plaintiffs incorporate by reference the allegations contained in all preceding
paragraphs of this Complaint as though set forth fully herein.

267.    Plaintiff Nordan and the members of the Maryland Class are "buyers" as that term
is defined in Md. Code §2-103. Plaintiff Nordan and Members of the Maryland Class are
persons whom the Defendant might reasonably expect to use or be affected by the Washing
Machines.

268.    Whirlpool is a "seller" as that term is defined in Md. Code §2-103.

269.    The Washing Machines are "goods" as that term is defined in Md. Code §2-105.

270.    Whirlpool also is a "merchant" in the sale of the Washing Machines to Plaintiffs
and the Maryland Class as that term is defined in Md. Code §2-104. Thus, Whirlpool provided
Plaintiff Nordan and the Maryland Class with an implied warranty that the Washing Machines
are merchantable and fit for the ordinary purposes for which they were sold. The Washing
Machines are not fit for the ordinary purpose of cleaning clothing and other articles, because,
*inter alia*, the Washing Machines are defective in that they contain a serious design defect that

causes the Washing Machines to accumulate mold and mildew within the Washing Machines and to produce a moldy odor that permeates consumers' homes and clothing.

271. The alleged defects are so basic that they render the Washing Machines unfit for the ordinary purpose of cleaning clothing and other articles.

272. Whirlpool knew or had reason to know that Plaintiff Nordan and the Maryland Class members purchased the Washing Machines to effectively wash their clothing and other articles.

273. The Washing Machines are not adequately packaged and labeled, and Whirlpool has concealed or otherwise failed to disclose the defective nature of the Washing Machines.

274. The Washing Machines do not conform to the promises and affirmations uniformly issued by Defendant in its sales and marketing materials and warranties.

275. Plaintiffs and the Class members have used the Washing Machines for their intended and ordinary purpose of cleaning clothing and other articles.

276. Plaintiff and members of the Maryland Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

277. Plaintiff Nordan has provided timely notice to Defendant of the defect in her Washing Machine and the breach of the implied warranty of merchantability covering the Washing Machine and requested that Whirlpool repair the defect. In addition, upon information and belief, members of the Maryland Class also notified Whirlpool of the defect in their Washing Machines and the breach of the implied warranty of merchantability covering those Washing

-53-

Machines. Notwithstanding this notice, Defendant has failed and refused to offer Plaintiff Nordan and the Maryland Class an effective remedy.

278. By virtue of the conduct described herein, Defendant breached the implied warranty of merchantability.

279. Plaintiff Nordan and the Maryland Class have suffered damages that were directly and proximately caused by the defective Washing Machines. Moreover, had Plaintiff Nordan and the Maryland Class known the true facts about the defect in the Washing Machines, they would not have purchased the Washing Machines or would have paid less for the Machines.

## TWENTIETH CAUSE OF ACTION
### Asserted on Behalf of the Texas Class
### (Breach of Implied Warranty of Merchantability, Tex. Bus. & Com. Code §2.314)

280. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

281. Plaintiff Gardner and the members of the Texas Class are "buyers" as that term is defined in TEX. BUS. & COM. CODE §2.103. Plaintiff Gardner and Members of the Texas Class are persons whom the Defendant might reasonably expect to use or be affected by the Washing Machines.

282. Whirlpool is a "seller" as that term is defined in TEX. BUS. & COM. CODE §2.103.

283. The Washing Machines are "goods" as that term is defined in TEX. BUS. & COM. CODE §2-105.

284. Whirlpool also is a "merchant" in the sale of the Washing Machines to Plaintiff Gardner and the Texas Class as that term is defined in TEX. BUS. & COM. CODE §2.104.

Thus, Whirlpool provided Plaintiff Gardner and the Texas Class with an implied warranty that the Washing Machines are merchantable and fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing Machines are defective in that they contain a serious design defect that causes the Washing Machines to accumulate mold and mildew within the Washing Machines and to produce a moldy odor that permeates consumers' homes and clothing.

285. The alleged defects are so basic that they render the Washing Machines unfit for the ordinary purpose of cleaning clothing and other articles.

286. Whirlpool knew or had reason to know that Plaintiff Gardner and the Texas Class members purchased the Washing Machines to effectively wash their clothing and other articles.

287. The Washing Machines are not adequately packaged and labeled, and Whirlpool has concealed or otherwise failed to disclose the defective nature of the Washing Machines.

288. The Washing Machines do not conform to the promises and affirmations uniformly issued by Defendant in its sales and marketing materials and warranties.

289. Plaintiff Gardner and the Texas Class have used the Washing Machines for their intended and ordinary purpose of cleaning clothing and other articles.

290. Plaintiff Gardner and members of the Texas Class have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

291. Plaintiff Gardner has provided timely notice to Defendant of the defect in her Washing Machine and the breach of the implied warranty of merchantability covering the

Washing Machine and requested that Whirlpool repair the defect. In addition, upon information and belief, members of the Texas Class also notified Whirlpool of the defect in their Washing Machines and the breach of the implied warranty of merchantability covering those Washing Machines. Notwithstanding this notice, Defendant has failed and refused to offer Plaintiff Gardner and the Maryland Class an effective remedy.

292.    By virtue of the conduct described herein, Defendant breached the implied warranty of merchantability.

293.    Plaintiff Gardner and the Texas Class have suffered damages that were directly and proximately caused by the defective Washing Machines. Moreover, had Plaintiff Gardner and the Texas Class known the true facts about the defect in the Washing Machines, they would not have purchased the Washing Machines or would have paid less for the Machines.

## TWENTY-FIRST CAUSE OF ACTION
### Asserted on Behalf of the New York Class
### Breach of Implied Warranty of New York's Uniform Commercial Code (U.C.C. §2-314)

294.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

295.    Whirlpool is, and at all relevant times was, a merchant of the Washing Machines. By operation of law, Whirlpool impliedly warranted that the Washing Machines were of merchantable quality.

296.    Plaintiff Glennon and the New York Class members purchased the Washing Machines within the State of New York with the reasonable expectation that the Washing Machines would be free of defects.

-56-

297.    Whirlpool breached its warranties, as set forth above, by supplying the Washing Machines in a condition where they do not perform the most basic and essential functions of a washing machine and, thus, are not fit for their ordinary purpose.

298.    Whirlpool has received timely notice of the breaches of warranty alleged herein. Whirlpool has received, upon information and belief, thousands of complaints and other notices from its consumers, including Plaintiff Glennon, advising it of the defects in the Washing Machines.

299.    Whirlpool has failed and refused to remedy this breach of implied warranty by rendering the Washing Machines merchantable, either through repair, replacement or otherwise.

300.    Whirlpool caused the limited remedy of repair or replacement of parts to fail of and in its essential purpose by unreasonably refusing and delaying the repair or replacement of its Washing Machines, such that it had the effect of impairing the usefulness of the product for a substantial and unreasonable length of time.

301.    Whirlpool has failed and refused to provide to Plaintiff Glennon or the New YOrk Class, as a warranty replacement, with a washing machine that conforms to the qualities and characteristics that it has expressly warranted are possessed by the Washing Machines.

302.    Applying any warranty limitation to avoid the need to repair the particular defect would be unconscionable in that, *inter alia*, the Washing Machines contained an inherent defect that was already present at the time of purchase and Whirlpool knew, or was reckless in not knowing, about this defect, which could not be discovered by Plaintiff Glennon and members of the New York Class at the time of purchase, and purchasers lacked any meaningful choice with respect to the warranty terms.

303.    As a result of Whirlpool's breach of the implied warranty of merchantability, Plaintiff Glennon and the New York Class have suffered actual damages in amounts to be determined by the trier of fact.

304.    Plaintiff Glennon, on behalf of himself and all others similarly situated, seeks actual damages (including, but not limited to, diminishment in value), consequential and incidental damages from Defendant, as well as attorneys' fees, costs and expenses.

### TWENTY-SECOND CAUSE OF ACTION
### Asserted on Behalf of the Florida Class
### (Unjust Enrichment)

305.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

306.    In the alternative, Whirlpool has been unjustly enriched by the purchases of the Washing Machines by Plaintiff Hollander and the Florida Class.

307.    Plaintiff Hollander and the Florida Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff Hollander and the Florida Class regarding the nature and quality of the Washing Machines while profiting from this deception.

308.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Whirlpool to retain the benefit of these profits that it unfairly has obtained from Plaintiff Hollander and the Florida Class.

-58-

309.    Plaintiff Hollander and the Florida Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

## TWENTY-THIRD CAUSE OF ACTION
### Asserted on Behalf of the Illinois Class
### (Unjust Enrichment)

310.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

311.    In the alternative, Whirlpool has been unjustly enriched by the purchases of the Washing Machines by Plaintiff Werman and the Illinois Class.

312.    Plaintiff Werman and the Illinois Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff Werman and the Illinois Class regarding the nature and quality of the Washing Machines while profiting from this deception.

313.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Whirlpool to retain the benefit of these profits that it unfairly has obtained from Plaintiff Werman and the Illinois Class.

314.    Plaintiff Werman and the Illinois Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

## TWENTY-FOURTH CAUSE OF ACTION
### Asserted on Behalf of the Indiana Class
### (Unjust Enrichment)

-59-

315.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

316.    In the alternative, Whirlpool has been unjustly enriched by the purchases of the Washing Machines by Plaintiff O'Brien and the Indiana Class.

317.    Plaintiff O'Brien and the Indiana Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff O'Brien and the Indiana Class regarding the nature and quality of the Washing Machines while profiting from this deception.

318.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Whirlpool to retain the benefit of these profits that it unfairly has obtained from Plaintiff O'Brien and the Indiana Class.

319.    Plaintiff O'Brien and the Indiana Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

### TWENTY-FIFTH CAUSE OF ACTION
#### Asserted on Behalf of the Maryland Class
#### (Unjust Enrichment)

320.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

321.    In the alternative, Whirlpool has been unjustly enriched by the purchases of the Washing Machines by Plaintiff Nordan and the Maryland Class.

322.    Plaintiff Nordan and the Maryland Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff Nordan and the Maryland Class regarding the nature and quality of the Washing Machines while profiting from this deception.

323.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Whirlpool to retain the benefit of these profits that it unfairly has obtained from Plaintiff Nordan and the Maryland Class.

324.    Plaintiff Nordan and the Maryland Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

## TWENTY-SIXTH CAUSE OF ACTION
### Asserted on Behalf of the North Carolina Class
#### (Unjust Enrichment)

325.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

326.    In the alternative, Whirlpool has been unjustly enriched by the purchases of the Washing Machines by Plaintiff Snyder and the North Carolina Class.

327.    Plaintiff Snyder and the North Carolina Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff Snyder and the North Carolina Class regarding the nature and quality of the Washing Machines while profiting from this deception.

328.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Whirlpool to retain the benefit of these profits that it unfairly has obtained from Plaintiff Snyder and the North Carolina Class.

329.    Plaintiff Snyder and the North Carolina Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

**TWENTY-SEVENTH CAUSE OF ACTION**
**Asserted on Behalf of the Texas Class**
**(Unjust Enrichment)**

330.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

331.    In the alternative, Whirlpool has been unjustly enriched by the purchases of the Washing Machines by Plaintiff Gardner and the Texas Class.

332.    Plaintiff Gardner and the Texas Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff Gardner and the Texas Class regarding the nature and quality of the Washing Machines while profiting from this deception.

333.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Whirlpool to retain the benefit of these profits that it unfairly has obtained from Plaintiff Gardner and the Texas Class.

334.    Plaintiff Gardner and the Texas Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Asserted on Behalf of the Arizona Class**
**(Unjust Enrichment)**

,335.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

336.    In the alternative, Whirlpool has been unjustly enriched by the purchases of the Washing Machines by Plaintiff Strong and the Arizona Class.

337.    Plaintiff Strong and the Arizona Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff Strong and the Arizona Class regarding the nature and quality of the Washing Machines while profiting from this deception.

338.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Whirlpool to retain the benefit of these profits that it unfairly has obtained from Plaintiff Strong and the Arizona Class.

339.    Plaintiff Strong and the Arizona Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

## TWENTY-NINTH CAUSE OF ACTION
### Asserted on Behalf of the New York Class
### (Unjust Enrichment)

340.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

341.    In the alternative, Whirlpool has been unjustly enriched by the purchases of the Washing Machines by Plaintiff Glennon and the New York Class.

342.    Plaintiff Glennon and the New York Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiff Glennon and the New York Class regarding the nature and quality of the Washing Machines while profiting from this deception.

343.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit Whirlpool to retain the benefit of these profits that it unfairly has obtained from Plaintiff Glennon and the New York Class.

344.    Plaintiff Glennon and the New York Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for a judgment against Defendant as follows:

a.    For an order certifying the Classes, pursuant to Federal Rule of Civil

Procedure 23(b)(2) and 23(b)(3), appointing Plaintiffs as representatives of the Classes, and

appointing the law firms representing Plaintiffs as counsel for the Classes;

b.    For all recoverable compensatory and other damages sustained by

Plaintiffs and the Classes;

c.    For payment of costs of suit herein incurred;

d.    For both pre-judgment and post-judgment interest on any amounts

awarded;

e.    For payment of reasonable attorneys' fees and expert fees as may be

allowable under applicable law; and

f.    For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY

Plaintiffs, by and through their attorneys, hereby make formal demand for a trial by jury

of the facts and issues involved in this complaint.

Dated: June 20, 2008                                    Respectfully submitted,

Joseph Patrick Shea
Glenn Orr
Law Offices of Joseph Patrick Shea
2400 N. Western Avenue, Suite 205
Chicago, Illinois 60647
Telephone: (773) 365-0040
Facsimile: (773) 772-2421

James E. Miller
Patrick A. Klingman
SHEPHERD FINKELMAN MILLER

& SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com

Steven A. Schwartz
Daniel B. Scott
CHIMICLES & TIKELLIS, LLP
One Haverford Centre,
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
steveschwartz@chimicles.com
danielscott@chimicles.com

Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (619) 234-7334
kleser@sfmslaw.com

Scott R. Shepherd (IL Bar No. 6190949)
James C. Shah
Natalie Finkelman Bennett
Nathan Zipperian
SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
sshepherd@sfmslaw.com
jshah@sfmslaw.com
nfinkelman@sfmslaw.com
nzipperian@sfmslaw.com

Ronald S. Kravitz
Matthew Borden
LINER YANKELEVITZ SUNSHINE
& REGENSTREIF LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone: (415) 489-7700
Facsimile: (415) 489-7701
Rkravitz@linerlaw.com
Mborden@linerlaw.com

Anthony L. Vitullo
FEE, SMITH, SHARP & VITULLO, LLP
13155 Noel Road, Suite 1000
Dallas, TX 75420
Telephone: (972) 934-9100
Facsimile: (972) 934-9200
lvitullow@feesmith.com

Marc L. Newman
David H. Fink
Adele Ice-King
THE MILLER LAW FIRM, P.C.
The Miller Building
950 West University Drive
Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
mln@millerlawpc.com
dhf@millerlawpc.com
Aik@millerlawpc.com

**Attorneys for Plaintiffs and the Proposed
Classes**