# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PRAMILA GARDNER, JEFF GLENNON, ) Civil Action No. 08CV3555
KAREN P. HOLLANDER, REBECCA )
NORDAN, MAGGIE O'BRIEN, )
TRACIE SNYDER, ANDREA STRONG, ) Judge Kendall
JANE WERMAN, Individually And On ) Magistrate Judge Brown
Behalf Of All Others Similarly Situated, )
 )
   Plaintiffs, )
 )
v. )
 )
WHIRLPOOL CORPORATION, )
 )
   Defendant. )
 )
 )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT, OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT OF PLAINTIFFS' CLAIMS**

Table of Contents

Page

Table of Authorities ................................................................................... iii

INTRODUCTION ....................................................................................... 1

STATEMENT OF FACTS ........................................................................... 2

    A.    Plaintiffs' Alleged Experiences with Their Duet Washers ........................ 2

    B.    Whirlpool's Alleged Misrepresentations and Material Omissions ............ 4

    C.    Plaintiffs' Duet Washers' Warranty Provisions ......................................... 6

ARGUMENT ............................................................................................... 7

I.    PLAINTIFFS FAIL TO PLEAD COGNIZABLE CLAIMS UNDER ANY OF
THE RELEVANT CONSUMER PROTECTION STATUTES ........................... 7

    A.    Plaintiff Strong Fails to State a Claim Under the Arizona Consumer
Fraud and Deceptive Business Practices Act ............................................ 7

        1.    Plaintiff Strong fails to plead with the requisite particularity
any false or misleading statement by Whirlpool ............................ 8

        2.    Plaintiff Strong's allegation that Whirlpool did not disclose the
alleged defect in her Duet washer is not sufficiently particular ..... 9

    B.    Plaintiffs Fail to Plead with Particularity Their Claims Under the
Consumer Fraud Statutes of Florida, Illinois, Maryland, North
Carolina, and Texas ............................................................................... 10

    C.    Plaintiff Glennon Fails to State a Claim Under the New York General
Business Law ......................................................................................... 11

    D.    Plaintiffs' Misrepresentation and Omission Theories Ignore the Fact
That Whirlpool Did Disclose the Potential for Mold, Mildew, and
Associated Odors to Accumulate in Duet Washers That Are Not
Properly Maintained ............................................................................... 12

II.    PLAINTIFFS FAIL TO STATE ACTIONABLE CLAIMS FOR BREACH
       OF WRITTEN OR IMPLIED WARRANTY.......................................................    13

       A.    Under Illinois' Choice-of-Law Rules, the Laws of Plaintiffs'
             Respective Home States Apply to Their Warranty Claims ......................    13

       B.    Plaintiffs' Warranty Claims Fail Because Plaintiffs Have Not Alleged
             That They Gave Whirlpool Appropriate Notice of a Breach of
             Warranty .................................................................................................    15

             1.    Plaintiffs' allegations regarding the notice provided by
                   Plaintiffs Gardner, Hollander, O'Brien, and Nordan are
                   inadequate to plead a warranty claim under Texas, Florida,
                   Indiana, and Maryland law .............................................................    16

             2.    Plaintiffs Glennon and Strong do not allege that they provided
                   Whirlpool with timely notice of an alleged breach of warranty ....    18

             3.    Plaintiff Snyder does not allege facts showing that the policies
                   behind the notice requirement have been fulfilled.........................    19

       C.    Plaintiffs Werman and Glennon Do Not Allege Privity with
             Whirlpool, as Required to State an Implied-Warranty Claim in Illinois
             and New York............................................................................................    20

       D.    Plaintiffs' Express-Warranty Claims Fail Because They Have Not
             Alleged a Violation of Any Specific Warranty Provision .........................    21

III.   PLAINTIFFS FAIL TO STATE CLAIMS FOR UNJUST ENRICHMENT........    22

IV.    ALTERNATIVELY, PLAINTIFFS SHOULD BE REQUIRED TO
       PROVIDE A MORE DEFINITE STATEMENT OF THEIR CLAIMS ...............    25

CONCLUSION.............................................................................................................    25

Table of Authorities

<u>Cases</u>                                                                                                    <u>Page</u>

*Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*,
648 N.E.2d 971 (Ill. App. Ct., 1995) ........................................................ 23

*Anabaldi v. Sunbeam*,
651 F. Supp. 1343 (N.D. Ill. 1987) .......................................................... 14n

*Angel v. Goodman Mfg. Co., L.P.*,
No. 07-CV-0462, 2008 WL 2673353 (N.D. Okla. June 28, 2008)................... 16

*Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*,
58 N.Y.2d 993 (N.Y. 1983) ................................................................... 20n

*Austin Hatcher Realty, Inc. v. Arnold*,
No. COA07-1377, 2008 WL 2246675 (N.C. Ct. App. June 3, 2008) ............... 23n

*Barbara's Sales, Inc. v. Intel Corp.*,
857 N.E.2d 717 (Ill. App. Ct. 2006) ........................................................ 14

*Bank of Am. Corp. v. Gibbons*,
918 A.2d 565 (Md. Ct. App. 2007)........................................................... 23n

*Bayh v. Sonnenburg*,
573 N.E.2d 398 (Ind. 1991) ................................................................... 23n

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007)........................................................................... 11,22

*Beshears v. Provident Life & Accident Ins. Co.*,
No. CV-07-00292, 2007 WL 1438738 (D. Ariz. May 15, 2007) ..................... 8

*Booe v. Shadrick*,
369 S.E.2d 554 (N.C. 1988)..................................................................... 24n

*Bryant v. Adams*,
448 S.E.2d 832 (N.C. Ct. App. 1994)........................................................ 19

*Cannon v. Metro Ford, Inc.*,
242 F. Supp. 2d 1322 (S.D. Fla. 2002) ...................................................... 10

*Chanay v. Chittenden*,
563 P.2d 287 (Ariz. 1977)................................................................................. 24

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
516 N.E.2d 190 (N.Y. 1987)............................................................................ 24n

*County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*,
747 A.2d 600 (Md. 2000) ................................................................................ 24n

*Courtesy Enters., Inc. v. Richards Labs.*,
457 N.E.2d 572 (Ind. Ct. App. 1983)................................................................ 17

*Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*,
351 So. 2d 351 (Fla. Ct. App. 1977).................................................................. 17

*Echo, Inc. v. Whitson Co.*,
52 F.3d 702 (7th Cir. 1995) .............................................................................. 13

*Ellis v. Allstate Ins. Co.*,
No. 06 C 4571, 2006 WL 3524409 (N.D. Ill. Dec. 5, 2006) .............................. 10

*ExxonMobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
328 F. Supp. 2d 443 (S.D.N.Y. 2004)................................................................ 11

*Finch v. Ford Motor Co.*,
327 F. Supp. 2d 942 (N.D. Ill. 2004) ................................................................ 20

*Firemen's Annuity & Benefit Fund v. Mun. Employees', Officers', & Officials' Fund*,
579 N.E.2d 1003 (Ill. App. Ct. 1991) .............................................................. 23n

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000)............................................................................... 24n

*Gordon v. Ford Motor Co.*,
657 N.Y.S.2d 43 (N.Y. App. Div. 1997) .......................................................... 21n

*Grismore v. Capitol One F.S.B.*,
No. CV 05-2460-PHX-SMM, 2007 WL 841513 (D. Ariz. Mar. 16, 2007) ..................... 8

*Hasek v. DaimlerChrysler Corp.*,
745 N.E.2d 627 (Ill. App. Ct. 2001) ................................................................. 21

*In re Air Bag Prods. Liab. Litig.*,
7 F. Supp. 2d 792 (E.D. La. 1998).................................................................... 16

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
288 F.3d 1012 (7th Cir. 2002) ........................................................................ 13n

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*,
241 F.R.D. 305 (S.D. Ill. 2007) ..................................................................... 14n

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ................... 14-15

*Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l. Corp.*,
432 N.E.2d 999 (Ill. App. Ct. 1982) ............................................................... 24n

*Int'l Paper Co. v. Margrove, Inc.*,
348 N.Y.S.2d 916 (N.Y. Sup. Ct. 1973) .......................................................... 18

*Jepson, Inc. v. Makita Corp.*,
34 F.3d 1321 (9th Cir. 1994) ......................................................................... 2n

*Johnson v. Wheeler*,
492 F. Supp. 2d 492 (D. Md. 2007) ............................................................... 10

*Jones v. Hoosman*,
No. 05-C-2909, 2006 WL 1302524 (N.D. Ill. May 9, 2006) ............................ 25

*Kincaid v. Lazar*,
405 N.E.2d 615 (Ind. Ct. App. 1980) ............................................................ 24n

*Kuehn v. Stanley*,
91 P.3d 346 (Ariz. Ct. App. 2004) ................................................................ 8

*Kron Med. Corp. v. Collier Cobb & Assocs., Inc.*,
420 S.E.2d 192 (N.C. Ct. App. 1992) ........................................................... 10

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
326 F. Supp. 2d 434 (S.D.N.Y. 2004) ........................................................... 11,12

*Lilly v. Ford Motor Co.*,
No. 00 C 7372, 2002 WL 507126 (N.D. Ill. Apr. 3, 2002) ............................ 13n

*Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*,
No. 04 C 6631, 2005 WL 2284305 (N.D. Ill. Sept. 15, 2005) ........................ 2n

*Mazzuocola v. Thunderbird Prods. Corp.*,
No. 90-CV-0405, 1995 WL 311397 (E.D.N.Y. May 16, 1995) ....................... 21n

*Ocean Commc'ns, Inc. v. Bubeck*,
956 So. 2d 1222 (Fla. Ct. App. 2007)............................................................... 24n

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E.2d 741 (N.Y. 1995).............................................................................. 11

*Pace v. Sagebrush Sales Co.*,
560 P.2d 789 (Ariz. 1977)................................................................................... 18

*Patel v. Holiday Hospitality Franchising, Inc.*,
172 F. Supp. 2d 821 (N.D. Tex. 2001) .............................................................. 10

*Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F.3d 508 (2d Cir. 2005)............................................................................... 11

*Rothe v. Maloney Cadillac, Inc.*,
518 N.E.2d 1028 (Ill. 1988)................................................................................ 20

*Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*,
899 So. 2d 1222 (Fla. Ct. App. 2005) ................................................................ 22n

*Shaw v. Hyatt Int'l Corp.*,
461 F.3d 899 (7th Cir. 2006) .............................................................................. 24

*Sichel v. Unum Provident Corp.*,
230 F. Supp. 2d 325 (S.D.N.Y. 2002)................................................................ 11

*Smith v. Butler*,
311 A.2d 813 (Md. Ct. App. 1973)..................................................................... 17

*Tex. Carpenters Health Benefit Fund v. Philip Morris, Inc.*,
21 F. Supp. 2d 664 (E.D. Tex. 1998).................................................................. 23n

*Thomas v. Bombardier-Rotax Motorenfabrik, GmhB*,
869 F. Supp. 551 (N.D. Ill. 1994)...................................................................... 20

*Trustmark Ins. Co. v. Bank One, Ariz., NA*,
48 P.3d 485 (Ariz. Ct. App. 2002)..................................................................... 22n

*Uni\*Quality, Inc. v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir. 1992) .............................................................................. 8

*Vantassell-Matin v. Nelson*,
741 F. Supp. 698 (N.D. Ill. 1990)...................................................................... 14

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) ........................................................................... 5n

*Voelker v. Porsche Cars N. Am., Inc.*,
353 F.3d 516 (7th Cir. 2003) ........................................................................... 14n

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986) ...................................................................... 13-14

*Weaver v. Chrysler Corp.*,
172 F.R.D. 96 (S.D.N.Y. 1997) ....................................................................... 11,12

*Whitman Realty Group, Inc. v. Galano*,
838 N.Y.S.2d 585 (N.Y. App. Div. 2007) ........................................................ 23n

*Williamson v. Allstate Ins. Co.*,
204 F.R.D. 601 (D. Ariz. 2001) ....................................................................... 9,10

<u>Statutes and Regulations</u>

U.C.C. § 2-607 ................................................................................................. 15n

A.R.S. §§ 44-1521, *et seq* .............................................................................. 7

N.Y. Gen. Bus. Law § 349 ............................................................................... 11

Tex. Bus. & Com. Code § 2.607 ...................................................................... 16

Fed. R. Civ. P. 8 .............................................................................................. 11,22

Fed. R. Civ. P. 9 .............................................................................................. *passim*

Fed. R. Civ. P. 12 ............................................................................................ 2,11,22, 24,25

Fed. R. Civ. P. 23 ............................................................................................ 13

## <u>INTRODUCTION</u>

Plaintiffs Pramila Gardner, Jeff Glennon, Karen Hollander, Rebecca Nordan, Maggie O'Brien, Tracie Snyder, Andrea Strong, and Jane Werman ("Plaintiffs"), have filed a putative class action complaint ("Complaint") against Whirlpool Corporation ("Whirlpool") purportedly on behalf of all purchasers of Duet®, Duet HT®, and Duet Sport® front-loading washing machines (collectively, "Duet washers" or "Duets").  (Compl. ¶¶ 1-2.)  Plaintiffs allege that "a serious design defect" in the Duet washers causes them "to (a) accumulate mold and mildew within the Washing Machines, (b) produce a moldy odor that permeates consumers' homes if the doors to the Washing Machines are left open, (c) produce a mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to the extent to and for the purpose for which the Washing Machines were advertised, marketed and sold."  (*Id.* ¶ 2.)  Plaintiffs allege that Whirlpool made "false and misleading statements" about the Duet washers, "concealed material facts regarding" these alleged problems with the Duet washers, and failed to "warn" consumers about these alleged problems.  (*Id.* ¶¶ 23, 26, 31.)  Based on these allegations, Plaintiffs assert claims for violation of the Magnuson-Moss Warranty Act ("MMWA"), violation of all but one of Plaintiffs' respective home states' consumer protection statutes, breach of written and implied warranties, and unjust enrichment.[1]

Plaintiffs fail to plead their statutory fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  Plaintiffs' vague and conclusory allegations concerning the existence and nature of the alleged "design defects," as well as Plaintiffs' failure to identify with specificity Whirlpool's false or misleading statements concerning the washers, fall far short of the particularity required by Rule 9(b).  Plaintiffs' Complaint illustrates the need to impose heightened pleading standards in a consumer fraud case such as this one.  That is because <u>every</u> line of mass-produced product of any complexity will have some percentage of units that require maintenance or repair during the life of the product.  Absent a requirement that plaintiffs plead with particularity that such maintenance or repair was caused by the defendant's

---

[1] Plaintiffs filed the Complaint on behalf of two types of putative classes: (i) a nationwide class consisting of all purchasers of Duet washers (Compl. ¶ 78), and (ii) eight subclasses consisting of all purchasers of Duet washers who reside in Plaintiffs' home states (*id.* ¶ 79).

having fraudulently sold a defective product, virtually every product launch could be followed by baseless, expensive, and extortionate class litigation.[2]

The Court also should dismiss, pursuant to Rule 12(b)(6), all of Plaintiffs' claims for failure to state a claim upon which relief can be granted. The Complaint fails to recite facts that, if true, would support Plaintiffs' purported claims for consumer fraud, breach of warranty, or unjust enrichment. Plaintiffs' claims for breach of written and implied warranties fail because Plaintiffs have not adequately alleged facts that, if proven, could show that Plaintiffs provided to Whirlpool appropriate notice of an alleged breach of warranty. Further, certain of Plaintiffs lack the required contractual privity that is necessary to state a claim for breach of warranty when purely economic loss is sought as damages. Finally, Plaintiffs' unjust enrichment claims fail because they have not alleged facts that, if true, show that Whirlpool's conduct was wrongful in any way, and because the Complaint itself establishes that the subject matter of this litigation is governed by written warranties between Whirlpool and Plaintiffs.

Alternatively, the Court should dismiss the Complaint without prejudice pursuant to Rules 9(b) and 12(e), and require Plaintiffs to provide a more definite statement of their claims so that Whirlpool can adequately defend itself.

## STATEMENT OF FACTS

### A.    Plaintiffs' Alleged Experiences with Their Duet Washers

Plaintiffs allege that they bought their Duet washers between February 2004 and August 2006, and that their Duets subsequently "began to experience mold and mildew accumulation." (Compl. ¶¶ 43-77.) Plaintiffs do not plead which specific Duet models they bought (*e.g.*, *id.* ¶ 43 ("Plaintiff Gardner purchased one of the Washing Machines . . . .")), and allege only the time frames in which they bought their washers. Plaintiffs' allegations differ concerning the time of purchase, the written warranty or service contract (or both) that each received or bought, the problems each allegedly experienced with his or her washer, the repairs required, if any, and his or her communications with Whirlpool, if any:

---

[2] *See, e.g.*, *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (9th Cir. 1994) (observing that one of the purposes of Rule 9(b)'s heightened pleading requirement is to "minimize 'strike suits' and 'fishing expeditions'"); *Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*, No. 04 C 6631, 2005 WL 2284305, at *2 (N.D. Ill. Sept. 15, 2005) ("The purpose of Rule 9(b) in regards to fraud claims, 'is to minimize the extortionate impact that a baseless claim of fraud can have . . . .'" (citations omitted)).

- Plaintiff Pramila Gardner, a Texas resident, bought a Duet washer in December 2004, and experienced mold and mildew accumulation in her machine in May 2006. (Compl. ¶¶ 43-44.) She alleges that she followed "cleaning instructions" located on Whirlpool's website, but that these steps "proved to be ineffective." (*Id*. ¶ 45.) She also alleges that she tried to "clean the inside of" her Duet washer with Tilex®, but that "mold and mildew continues to plague" her washer, and that "clothing smells like mildew after it is 'washed' in the Machine." (*Id.*)

- Plaintiff Karen Hollander, a Florida resident, bought her Duet in January 2006, and experienced mold and mildew accumulation in her machine "several months" later. (Compl. ¶¶ 46-47.) She alleges that she called Whirlpool about the problem in December 2007, and "the Whirlpool representative" to whom she spoke "only offered cleaning solutions, such as, using Affresh tablets," but these steps "proved to be ineffective." (*Id.* ¶ 48.) She alleges further that she ran "a diluted Clorox solution through her Machine . . . as suggested in the Whirlpool manual that came with the Machine," that she kept the washer door open, and cleaned the rubber seal of the machine with a cloth, but that these steps did not solve the problem. (*Id.*) She claims that she bought an extended warranty in December 2007 for $124.51, but that Whirlpool did not "cover the mold/mildew problems" under the extended warranty. (*Id.* ¶ 49.)

- Plaintiff Rebecca Nordan, a Maryland resident, bought her Duet in April 2005, and she first experienced mold and mildew accumulation in the machine in August 2005. (Compl. ¶¶ 50-51.) She alleges that she called a Whirlpool representative "in late 2005" about the problems, and the representative "only offered cleaning solutions," but these solutions "did not relieve the serious mold/mildew problem." (*Id.* ¶ 52.) Plaintiff Nordan alleges that she called Whirlpool "again in 2007 and in March 2008," and the Whirlpool representative "offered the use of Affresh™ tablets" to clean her machine, which she alleges did not remedy the problem. (*Id.* ¶ 53.) She alleges further that "Whirlpool" told her that "this technique was not in the [owner's] manual and that Affresh™ tablets were invented after the problem started occurring." (*Id.*) She also alleges that she bought an extended warranty, but Whirlpool "refused" to service her machine under the contract, "although it offered to replace the gasket, at Plaintiff Nordan's expense." (*Id.* ¶ 54.)

- Plaintiff Maggie O'Brien, an Indiana resident, bought her Duet in February 2005, and "soon after" experienced mold and mildew problems. (Compl. ¶¶ 55-56.) In January 2006, a "Whirlpool repairman" replaced "the rubber seal on the front of her Machine" and advised her to clean her washer "with soap" and to leave the door open. (*Id.* ¶ 57.) In February 2006, she again complained about the mold-mildew problem, and Whirlpool sent her "a set of cleaning instructions on how to prevent molding." (*Id.* ¶ 58.) She alleges that she followed the instructions but "the mold continued to grow inside [her] Machine." (*Id.* ¶¶ 58-59.) In September 2007, she alleges that she contacted Whirlpool again about the same problem, and that a Whirlpool representative offered her "cleaning solutions that ultimately proved to be ineffective." (*Id.* ¶ 59.)

- Plaintiff Tracie Snyder, a North Carolina resident, bought her Duet in June 2005, and first experienced mold and mildew accumulation in April 2007. (Compl. ¶¶ 60-61.) She contacted a Whirlpool representative, who told her only to "leave the door open," which

was ineffective.  (*Id.* ¶ 62.)  She also alleges that her "independent efforts" to clean the washer, including "running 'Odoban®' through the Machine," did not resolve the problem.  (*Id.*)  She alleges that she bought an extended warranty on June 11, 2006, but Whirlpool "refused to cover the mold/mildew problems" under the contract.  (*Id.* ¶ 63.)

- Plaintiff Jane Werman, an Illinois resident, alleges that she bought her Duet in February 2004, she first began "to smell mildew emanating from the Machine after only the first couple of months," and she "began to leave the door open on the Machine at all times" and to run bleach cycles.  (Compl. ¶ 65.)  She alleges that she undertook "independent efforts" to remedy the problem, including "cleaning the Machine by hand and continuing to run bleach cycles," but that these efforts did not remedy the mold and mildew problem.  (*Id.* ¶¶ 65-66.)  She learned through the Internet that "some people were experiencing extensive mold and mildew growth behind the rubber seal on the Machine," and that she has experienced mold-mildew accumulation in that location.  (*Id.*)

- Plaintiff Jeff Glennon, a New York resident, bought his Duet in August 2006, and he first experienced mold and mildew "within weeks of delivery of his Washing Machine."  (Compl. ¶¶ 67-68).  He contacted Whirlpool representatives "numerous times," and the representatives instructed him to run his Duet on a hot water cycle with bleach and to wipe clean the door and gasket.  (*Id.* ¶ 70.)  He alleges that "Whirlpool sent numerous repair representatives" to his home to remedy his problem, and these representatives "told Plaintiff Glennon that the mold and mildew problems that he was experiencing were widespread among" Duet washers.  (*Id.* ¶ 71.)  He continued to complain about these issues and eventually received a replacement machine in November 2007.  (*Id.* ¶¶ 71-72.)  He further alleges that he contacted Whirlpool again, this time about a mold-mildew problem with the replacement Duet washer, and Whirlpool representatives told him to leave the door open, run hot water cycles, and run cycles with Affresh tables, which measures have been ineffective. (*Id.* ¶ 73.)

- Plaintiff Andrea Strong, an Arizona resident, bought her Duet in November 2004, but does not state when her machine first developed a mold-mildew problem.  (Compl. ¶¶ 74-76).  She contacted Whirlpool about the mold-mildew problem, and Whirlpool representatives instructed her to "wipe and dry the boot" and "run empty cycles with the cleaner product Affresh."  (*Id.* ¶ 77.)  These remedies did not resolve her "mold and mildew problems."  (*Id.*)

Plaintiffs allege that they have suffered actual damages because they "overpaid for the Machines because the value of the Machines was diminished at the time they were sold to consumers" and because they "have been forced to replace clothes, towels and other items" that were damaged by the washer.  (Compl. ¶¶ 28-29.)

## B.    Whirlpool's Alleged Misrepresentations and Material Omissions

Plaintiffs allege that, "in conjunction with each sale" of a Duet, Whirlpool has "marketed, advertised and warranted" that the Duets "would not accumulate mold, mildew, and emit associated odors."  (Compl. ¶ 21.)  The 344 paragraphs of the Complaint, however, do not identify a single statement by Whirlpool—much less "the who, what, when, where, and how"—

that was either false or misleading due to the omission of a material fact.  (*See id.* ¶¶ 1-344.)
Plaintiffs allege further that, contrary to these unspecified statements, Whirlpool "knew and was
aware, prior to marketing and selling the machines" (*id.* ¶ 26), that "serious design defects" cause
the Duets to accumulate mold and mildew and produce associated odors (*id.* ¶ 2).  Plaintiffs also
allege that Whirlpool knew when it made its unidentified statements that "an unacceptable
percentage" of Duets had "become effectively unusable."  (*Id.* ¶ 27.)  Plaintiffs do not plead what
"unacceptable percentage" of Duets have manifested noticeable mold-mildew to such an extent
that the machines have "become effectively unusable."[3]

        In addition to the alleged (but as yet unspecified) affirmative misrepresentations,
Plaintiffs plead that Whirlpool "has refused, and continues to refuse, to warn consumers about
the drainage defect inherent in the machines," and that Whirlpool "has sat silently while
consumers have purchased these defective products and continues to sit silently today as an
unacceptable percentage of the Washing Machines become effectively unusable."  (*Id.* ¶ 27; *see
also id.* ¶ 26 ("Whirlpool failed and refused to warn its customers of the serious defect.").)

        Although Plaintiffs admit that the "Whirlpool manual that came with" the Duet washers
includes cleaning "procedures" (*id.* ¶ 48), Plaintiffs' misrepresentation and omission allegations
ignore the extent of the information in certain washer models' Use & Care Guides concerning
the potential for mold-mildew and associated odors to develop if the washers are not properly
operated and maintained.[4]  For example, the Use & Care Guide that accompanied certain model
years of Duet HT® washers states that "Washer Odor" can result from a consumer's failure to

---

[3] The Complaint also contains allegations suggesting that Whirlpool's representation that the Duet
washers are "ENERGY STAR" compliant <u>might</u> be misleading.  (Compl. ¶ 22.)  Plaintiffs do not actually
allege that such representations are false or misleading.  Instead, Plaintiffs allege only that, "on
information and belief," the Energy Star rating does "not tak[e] into account the extra loads necessary to
run through the Machines in order to attempt to clean the Machines."  (*Id.*)  Because Plaintiffs do not
allege that Whirlpool's Energy Star statement is actually false or misleading, and because Plaintiffs do not
appear to base any of their purported claims on such a statement, Whirlpool will not address these
superfluous allegations in this motion to dismiss.

[4] The Duets' various owner's manuals are properly before the Court because Plaintiffs refer to the
owner's manuals—and the written warranty contained therein—in their pleading (*e.g.*, Compl. ¶¶ 48, 53),
and the limited nature of the written warranties is central to Plaintiffs' claims.  *See, e.g.*, *Venture Assocs.
Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches
to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's
complaint and are central to her claim.").

clean their washer in accordance with the washer care instructions, failure to use high-efficiency detergent, or failure to leave the washer door open between uses. (*See* Duet HT® Use & Care Guide at 22, Sept. 2005, attached hereto as Ex. 1.)  Similar language appears in certain other models' owner's manuals, along with instructions for "Cleaning Your Washer" and "to maintain washer freshness." (*Id.* at 19-20; Duet® Use & Care Guide at 22, Sept. 2006, attached hereto as Ex. 2; Duet Sport® Use & Care Guide at 23, Jan. 2006, attached hereto as Ex. 3.)  Most of the manuals also state:  "Using regular detergent will likely result in washer errors, longer cycle times and reduced rinsing performance.  It may also result in component failures and noticeable mold or mildew." (Ex. 1 at 12; *see also* Ex. 2 at 12; Ex. 3 at 12.)[5]

Plaintiffs admit that Whirlpool has publicly disclosed "cleaning instructions" for the Duet washers on its website. (Compl. ¶ 45.)  Plaintiffs also admit that Whirlpool has informed them in post-sale communications of the potential for mold-mildew to develop in the machines, has provided Plaintiffs with information and instructions regarding how to remediate mold-mildew in their machines, and has released the Affresh™ cleaning product that is designed to remediate mold-mildew in high-efficiency washers. (*Id.* ¶¶ 22, 36, 48, 52, 53, 57-59, 62, 70-73, 77.)

### C.    Plaintiffs' Duet Washers' Warranty Provisions

With respect to Whirlpool's written warranties, Plaintiffs allege in pertinent part, that "[i]n recognition of the anticipated useful life of the Machine, Whirlpool expressly warranted the stainless steel drum of the Washing Machine for its lifetime." (*Id.* ¶ 22.)  Plaintiffs further allege that Whirlpool was obligated to repair the alleged defects "at no charge." (*Id.* ¶ 21.)  These allegations, however, are false and misleading.  First, none of the Duet Sport® washers are covered by a lifetime warranty on the stainless steel drum. (*E.g.*, Ex. 3 at 26; Duet Sport HT® Use & Care Guide at 26, Mar. 2006, attached hereto as Ex. 4.)  Second, only certain of the Duet® and Duet HT® models are covered by a lifetime limited warranty on the stainless steel drum. (*Compare, e.g.*, Duet HT® Use & Care Guide at 21, Sept. 2002, attached hereto as Ex. 5, *with*

---

[5]  The information that Whirlpool included in owner's manuals evolved throughout the putative class period.  Because Plaintiffs have not alleged which specific washer models they bought, Whirlpool cannot determine which specific owner's manuals are at issue.

Ex. 1 at 25, *and* Ex. 2 at 25.)[6]  Third, with respect to the Duet® and Duet HT® models that did

come with a lifetime limited warranty on the stainless steel drum, the warranty provides that

Whirlpool will not pay "[a]ny labor costs during the limited warranty period[]" (*e.g.*, Ex. 5 at

21), so Plaintiffs cannot credibly claim that Whirlpool had an obligation to repair their washers

"at no charge" (Compl. ¶ 21).

## ARGUMENT

### I.     PLAINTIFFS FAIL TO PLEAD COGNIZABLE CLAIMS UNDER ANY OF THE RELEVANT CONSUMER PROTECTION STATUTES

Plaintiffs purport to assert claims under the consumer protection statutes of Arizona,

Florida, Illinois, Maryland, New York, North Carolina, and Texas,[7] alleging that Whirlpool made

affirmative misrepresentations and material omissions concerning the Duet washers.  (Compl.

¶¶ 107-63.)  For the reasons set forth below, Plaintiffs' vague and conclusory allegations

regarding Duet washers' alleged "defects" and Whirlpool's alleged misrepresentations and

omissions about such alleged defects fail to state a claim under any of the relevant consumer

protection statutes.

#### A.     Plaintiff Strong Fails to State a Claim Under the Arizona Consumer Fraud and Deceptive Business Practices Act

Plaintiff Strong claims that Whirlpool violated the Arizona Consumer Fraud and

Deceptive Business Practices Act, A.R.S. §§ 44-1521, *et seq*. ("Arizona Fraud Act"), by

representing, "through its advertising, marketing, and other express representations," that the

Duet washers were of a certain standard or quality when they were not (Compl. ¶ 152), and by

"fraudulently concealing and/or intentionally failing to disclose" material information about the

Duet washers (*id.* ¶ 153).  To succeed on a claim under the Arizona Fraud Act, a plaintiff must

prove:  (1) "a false promise or misrepresentation made in connection with the sale or

advertisement of merchandise," and (2) "consequent and proximate injury resulting from the

---

[6]  Whirlpool did not offer the lifetime limited warranty on the stainless steel wash drum for Duet HT® washers sold after August 2005 (Ex. 1 at 25) or for Duet® washers sold after September 2006 (Ex. 2 at 25).  Accordingly, Plaintiffs Hollander and Glennon would have received a lifetime warranty on the stainless steel drum only if they bought a Duet® model, but not if they bought a Duet HT® or a Duet Sport® model.  (Compl. ¶¶ 6, 12, 46, 67.)

[7]  Plaintiffs have not asserted a claim for violation of Indiana's consumer protection statute.

promise." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004). An Arizona Fraud Act claim must be pled with particularity under Rule 9(b). *Beshears v. Provident Life & Accident Ins. Co.*, No. CV-07-00292, 2007 WL 1438738, at *3 (D. Ariz. May 15, 2007) (dismissing Arizona Fraud Act claim and finding that "Plaintiff has not described the allegedly false promises or misrepresentations with the particularity required by Rule 9(b)").

### 1.     Plaintiff Strong fails to plead with the requisite particularity any false or misleading statement by Whirlpool

To the extent that Plaintiff Strong purports to base her Arizona Fraud Act claim on any allegedly false or misleading statement contained in Whirlpool's "advertising, marketing, and other express representations" (*id.* ¶ 152), she has not pled her claim with the particularity required by Rule 9(b). That is because Plaintiff Strong has failed to identify <u>any</u> specific statement or representation to which she personally was exposed that was false or misleading. Instead, Plaintiff Strong pleads only highly generalized allegations that Whirlpool claimed "through its advertising, marketing, and other express representations, that the [Duet washers] were of a certain quality of standard when they were not." (*Id.* ¶ 152.) Such vague and conclusory allegations fall far short of the particularity required by Rule 9(b). *See Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (a plaintiff must "plead the who, what, when, where, and how of the alleged fraud"). The Complaint does not specify the time, place, or medium in which any allegedly false or misleading statement was communicated, nor does the Complaint contain any specific allegations concerning the content of any allegedly false or misleading statement. (*See* Compl. ¶¶ 1-344.) Plaintiff Strong also fails to identify any statement that she personally read, heard, or otherwise received, let alone that such statement actually deceived her and thus proximately caused her harm. (*See id.*) As a result, Plaintiff Strong has not pled her Arizona Fraud Act claim with the particularity required by Rule 9(b). *See Beshears*, 2007 WL 1438738, at *3 ("The complaint . . . fails to describe the content of the alleged misrepresentations and why they were false."); *Grismore v. Capitol One F.S.B.*, No. CV 05-2460-PHX-SMM, 2007 WL 841513, at *6-7 (D. Ariz. Mar. 16, 2007) (dismissing Arizona Fraud Act claim because the complaint "failed to plead the times, dates, places, and other details surrounding the allegedly fraudulent conduct").

### 2.    Plaintiff Strong's allegation that Whirlpool did not disclose the alleged defect in her Duet washer is not sufficiently particular

Plaintiff Strong also purports to base her Arizona Fraud Act claim on Whirlpool's alleged nondisclosure of material information about the Duet washers.  (Compl. ¶¶ 153, 155.)  The Complaint alleges that Whirlpool failed to disclose that the Duet washers have a "serious design defect" that causes mold-mildew accumulation and associated odors in Duets (*id.* ¶ 2), and also that Whirlpool failed to disclose that the alleged mold-mildew problem has caused an "unacceptable percentage of the [Duet washers to] become effectively unusable" (*id.* ¶ 27).

To state an Arizona Fraud Act claim based on an alleged omission, Plaintiff Strong must plead with particularity the material fact(s) that Whirlpool allegedly knew and did not disclose. *See Williamson v. Allstate Ins. Co.*, 204 F.R.D. 601, 644 (D. Ariz. 2001) ("[I]n order for a complaint to allege fraud with the requisite particularity . . . the plaintiff must set forth an explanation as to why the . . . omission complained of was false or misleading" (quotation marks and citation omitted)).  Plaintiffs' allegations concerning the alleged design defect and the alleged risk or likelihood of its manifestation are far too vague and conclusory to satisfy the requirements of Rule 9(b).

First, the Complaint does not contain any description of the alleged defect.  Plaintiffs allege—"[u]pon information and belief"—only that the stainless steel wash drums "play a role" in the alleged defect (Compl. ¶ 24), but Plaintiffs plead no specific facts that might explain how the drums contribute to any alleged mold-mildew problem.[8]  (*Id.* ¶¶ 1-344.)  Thus, the Complaint contains no specific factual allegations that, if true, would prove that Duet washers share a design defect that should have been disclosed to each Plaintiff.

Second, the Complaint contains no particularized allegation that, if true, would prove that the alleged risk of mold and mildew buildup was so "serious" that Whirlpool owed Plaintiffs a duty to disclose that risk.  Instead, Plaintiffs make conclusory allegations that "many members" of the purported class have alerted Whirlpool to the alleged defects, (*id.* ¶ 32), and that an "unacceptable percentage" of Duet washers have "become effectively unusable," (*id.* ¶ 27).  Plaintiffs do not allege with particularity what types of failures were known to occur, what the

---

[8]  It is readily apparent from their facially inadequate allegations that Plaintiffs have not conducted the due diligence required to allege, consistent with Rule 11, that <u>all</u> Duet washers are defective.

cause or causes of these failures were, how many such failures Whirlpool was aware of at any given point of time (particularly in relation to the number of units sold during the same period), or when Whirlpool supposedly learned of the unspecified "serious design defect." (*Id.* ¶¶ 1-344.) Nor do Plaintiffs identify what "unacceptable percentage" of Duet washers have allegedly become "effectively unusable." Plaintiffs make no effort to define what they consider to be an "acceptable" failure or repair rate as compared to a rate that is so "high" as to impose on Whirlpool a duty to disclose the rate. (*See id.*) The absence of such particularized allegations requires dismissal here. *See Williamson*, 204 F.R.D. at 644.

**B.    Plaintiffs Fail to Plead with Particularity Their Claims Under the Consumer Fraud Statutes of Florida, Illinois, Maryland, North Carolina, and Texas**

The above analysis applies with equal force to Plaintiffs' claims for violations of the consumer protection statutes of Florida, Illinois, Maryland, North Carolina, and Texas, because claims asserted under those statutes also must be pled with particularity. *See, e.g.*, *Cannon v. Metro Ford, Inc.*, 242 F. Supp. 2d 1322, 1332 (S.D. Fla. 2002) (dismissing Florida Deceptive and Unfair Trade Practices Act claim for failure to plead with particularity the circumstances constituting the purported fraud); *Ellis v. Allstate Ins. Co.*, No. 06 C 4571, 2006 WL 3524409, at *7 (N.D. Ill. Dec. 5, 2006) (dismissing claim under the Illinois Fraud Act for failure to plead violation with particularity); *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007) (granting motion to dismiss the plaintiffs' claims under the Maryland Consumer Protection Act; plaintiffs are "obliged to identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments, specifying which Defendant or Defendants is or are supposedly responsible for those statements or omissions"); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) ("Claims alleging violations of the [Texas Deceptive Trade Practices - Consumer Protection Act] are subject to the requirements of Rule 9(b)."); *cf. Kron Med. Corp. v. Collier Cobb & Assocs., Inc.*, 420 S.E.2d 192, 196-97 (N.C. Ct. App. 1992) (holding that a defendant's failure to disclose a material fact may be actionable under the North Carolina Unfair and Deceptive Trade Practices Act, but such non-disclosure "must, under the conditions existing, amount to <u>fraud</u>" (emphasis added).) Accordingly, for the reasons stated above with respect to the Arizona Fraud Act, Plaintiffs' claims for consumer fraud under the consumer protection statutes of Florida, Illinois, Maryland, North Carolina, and Texas fail as a matter of law.

**C.    Plaintiff Glennon Fails to State a Claim Under the New York General Business Law**

Plaintiff Glennon has failed to plead a violation of the New York General Business Law, N.Y. Gen. Bus. Law § 349 ("New York Fraud Act"). "To state a cause of action under § 349, a plaintiff must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *ExxonMobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004). A defendant's actions qualify as "deceptive acts and practices" only if they are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). The requirement that the alleged deceptive acts or practices be "consumer-oriented" means that the acts "must have a broad impact on consumers at large." *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004).

A plaintiff is not required to allege fraud to plead a violation of the New York Fraud Act, so the particularity requirements of Rule 9(b) do not apply. *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). However, "to state a claim under the provision plaintiff must allege with <u>some specificity</u> the allegedly deceptive acts or practices that form the basis for the claim." *Lava Trading*, 326 F. Supp. 2d at 438 (emphasis added); *see also id.* ("conclusory allegations . . . are not sufficient to state a claim under Section 349 <u>in the absence of factual allegations in support thereof</u>" (emphasis added)); *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 330-31 (S.D.N.Y. 2002) (dismissing a section 349 claim where the pleading was stated in wholly conclusory terms); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (dismissing New York Fraud Act claim because it was "pleaded upon information and belief, lacked specificity, and alleged mere conclusions"); *accord Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007) (dismissing an inadequately pled claim under Federal Rules of Civil Procedure 8(a) and 12(b)(6); "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Plaintiff Glennon alleges that Whirlpool violated the New York Fraud Act by "failing to disclose and/or concealing" that the Duets contain "design flaws that caused mold and/or mildew to occur with normal use and/or created a substantial risk of this." (Compl. ¶ 162.) As shown above, however, Plaintiffs' conclusory "design flaw" allegations are asserted only on

"information and belief" (*id.* ¶ 24), and the Complaint lacks any specific facts in support of the claim that Duets share a design defect that should have been disclosed to consumers (*id.* ¶¶ 1-344). Likewise, the Complaint pleads no specific facts that, if true, would prove that there was a "substantial risk" that the Duets might accumulate mold or mildew and that such risk was known or should have been known by Whirlpool before Plaintiff Glennon bought his washer. (*Id.*) The absence of any such factual allegations is fatal to Plaintiff Glennon's New York Fraud Act claim. *See Lava Trading*, 326 F. Supp. 2d at 438; *Weaver*, 172 F.R.D. at 100.

> **D.    Plaintiffs' Misrepresentation and Omission Theories Ignore the Fact That Whirlpool <u>Did</u> Disclose the Potential for Mold, Mildew, and Associated Odors to Accumulate in Duet Washers That Are Not Properly Maintained**

Plaintiffs falsely allege that Whirlpool, "[i]n conjunction with each sale," affirmatively stated that the Duet washers "would not accumulate mold, mildew, and emit associated odors" (Compl. ¶ 21), and that Whirlpool "has sat silently" and "continues to sit silently" regarding the potential for Duet washers to accumulate mold and mildew and emit associated odors (*id.* ¶ 27). In truth, the owner's manuals that accompanied many Duet models—including washers sold during the time period when Plaintiffs Hollander and Glennon bought their washers—contained several disclosures regarding the potential for mold-mildew and associated odors to develop in Duet washers if high-efficiency detergent is not used and if the washers are not properly cleaned and maintained. (Ex. 2 at 11, 12, 18, 22; Ex. 3 at 12, 13, 18, 23; Ex. 4 at 12, 13, 18, 23.)

Further, contrary to Plaintiffs' allegation that Whirlpool "continues to sit silently today" about the potential for Duets to accumulate mold-mildew (Compl. ¶ 27), Plaintiffs admit that Whirlpool has informed some of them of the potential for noticeable mold-mildew to develop in the machines and also admit that Whirlpool has provided several Plaintiffs with detailed instructions about how to remediate noticeable mold-mildew or odor in their machines. (*Id.* ¶¶ 22, 36, 48, 52, 53, 57-59, 62, 70-73, 77.) For example, Plaintiff Gardner states that she "followed the cleaning instructions from the Whirlpool website (www.whirlpool.com)" in attempting to remediate her mold-mildew issue. (*Id.* ¶ 45.) Plaintiff Hollander alleges that when she called Whirlpool about her mold-mildew issue, a Whirlpool representative told her about Affresh™ tablets and "offered cleaning solutions." (*Id.* ¶ 48.) Plaintiff O'Brien states that, in response to her complaint about mold-mildew, Whirlpool "responded by sending Plaintiff [O'Brien] a set of cleaning instructions on how to prevent molding." (*Id.* ¶ 58.)

## II.     PLAINTIFFS FAIL TO STATE ACTIONABLE CLAIMS FOR BREACH OF WRITTEN OR IMPLIED WARRANTY

### A.     Under Illinois' Choice-of-Law Rules, the Laws of Plaintiffs' Respective Home States Apply to Their Warranty Claims

In addition to their statutory consumer fraud claims, Plaintiffs assert claims for violation of the MMWA on behalf of a putative nationwide class for breach of Whirlpool's written warranties (Compl. ¶¶ 93-101), and on behalf of all seven subclasses for breach of implied warranty (*id.* ¶¶ 102-110).  The Court, sitting in diversity, must apply Illinois' choice-of-law rules to determine which state's or states' laws apply to Plaintiffs' warranty claims.  *Echo, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995).  Here, the applicable choice-of-law principles require the application of 51 jurisdictions' warranty laws to Plaintiffs' MMWA claim for breach of written warranty.

As an initial matter, by pleading consumer fraud, warranty, and unjust enrichment claims under their respective home state's substantive laws, Plaintiffs impliedly admit that their respective home state's laws apply to their respective individual implied-warranty and express-warranty claims and that these substantive laws differ in material respects.  (*See* Compl. ¶¶ 111-344.)[9]  Moreover, a claim for violation of the MMWA "calls for the application of state written and implied warranty law, not the creation of additional federal law."  *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986).  In *Walsh*, the D.C. Circuit rejected the plaintiffs' argument that state law was inapplicable to claims under the MMWA and remanded the case for an examination as to whether variations in state warranty laws prohibit a finding of predominance that would permit class certification under Rule 23(b)(3).  *Id.*  As to the written warranty claims, the *Walsh* court explained that, although the MMWA provided a self-contained definition of "written warranty" that did not reference state law (in contrast to the subsection defining "implied warranty"), the reason for the self-contained definition was because Congress "ultimately decided that oral warranties need not be covered in the federal legislation unless and

---

[9]  *See also In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018-19 (7th Cir. 2002) (reversing certification of nationwide class because the laws of 50 states and the District of Columbia would apply to class claims for fraudulent concealment, breach of warranty, consumer fraud, and unjust enrichment and because such laws vary substantially); *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 507126, at *2-3 (N.D. Ill. Apr. 3, 2002) (denying certification of unjust enrichment and consumer fraud claims because litigation would be unmanageable due to application of varying laws).

until they become 'more prevalent.'  Because the state law term 'express warranty' did not suit

the limited federal purpose, Congress supplied a definition—one confined to 'written

warranty'—that did." *Id*. at 1015.  Given Congress's intent that the MMWA not displace state

warranty law beyond the Act's explicit prescriptions, the *Walsh* court concluded that "state

warranty law lies at the base of all warranty claims under Magnuson-Moss." *Id*. at 1016.[10]

If, as here, there are conflicts of law among the various jurisdictions, Illinois subscribes

to the Restatement of Conflict of Laws' "most significant contacts" approach to ascertain which

law to apply. *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 702-03 (N.D. Ill. 1990).  Under this

approach, each state's contacts must be evaluated using a three-step "interest" analysis:  First,

isolate the individual issues in the case; next, identify the policies embraced in the law of

competing states; finally, examine the contacts of the respective jurisdictions to determine which

state has a superior connection with the occurrence or transaction, and thus a superior interest in

having its law applied to the dispute.  *See id.*  The considerations include "(1) the place where the

injury occurred, (2) the place where the conduct occurred, (3) the parties' domiciles, nationality,

place of incorporation, and place of business, and (4) the place where the parties' relationship is

centered." *Barbara's Sales, Inc. v. Intel Corp.*, 857 N.E.2d 717, 722 (Ill. App. Ct. 2006).

The district court's decision in *In re Sears, Roebuck & Co. Tools Marketing & Sales*

*Practices Litigation*, Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006),

is instructive here.[11]  There, citizens of several states, on behalf of themselves and others

throughout the United States, sued Sears for alleged deceptive marketing of its Craftsman® tools.

*Id.* at *1.  Ruling on Sears' motion to dismiss the unjust enrichment claim, the Court concluded

that it was required to apply the laws of the various states where the plaintiffs bought their tools:

---

[10]  *See also Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) ("Because [the implied warranty provisions of the Act] do not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson-Moss Act therefore hinges entirely on the applicable state law."); *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 315 (S.D. Ill. 2007) (holding that breach of express warranty claims brought under MMWA are controlled by state law and require a choice-of-law analysis).

[11]  *See also Anabaldi v. Sunbeam*, 651 F. Supp. 1343, 1344-45 (N.D. Ill. 1987) (under Illinois' choice-of-law principles, Pennsylvania warranty law applied to case involving defective fryer, even though the defendant had its principal place of business in Illinois).

> The place of the injury here (or, in unjust enrichment terms, the place where plaintiffs allegedly "conferred" the benefit on defendant) is the plaintiffs' home states where they purchased Sears's tools. The place where the parties' relationship is centered is the plaintiffs' home states as well. Plaintiffs saw the allegedly misleading advertising in those states, and they purchased the tools (which were located there) in those states as well. Plaintiffs contend that the relationship is centered in Illinois because plaintiffs purchased the tools "by virtue of" Sears's nationwide advertisements, which were conceived of and sent from Illinois. . . . This characterization rings hollow. The relationship arose from plaintiffs' purchases of Craftsman tools, which occurred in plaintiffs' home states.

*Id.* at *2 (citation omitted). The Court found that, although Sears was headquartered in Illinois, the plaintiffs' respective home states have an interest in regulating the business that takes place within their borders. *Id.* at *3.

Here, Illinois' choice-of-law rules advise that the laws of the states of purchase—including all 50 states and the District of Columbia for the written-warranty claim—apply to the MMWA claims. Members of the putative nationwide class acquired their respective Duet washers in all 50 states and the District of Columbia. The buyers presumably experienced a defect, if at all, and were exposed to Whirlpool's marketing and sales activity, if any, within their home states' borders. Even though Whirlpool is headquartered in Michigan, Whirlpool sells its washers throughout the country. Lastly, Whirlpool and the putative class members encountered each other in the consumers' respective home states; the putative class members did not need to travel to or contact Whirlpool in Illinois or Michigan to buy their washers. Thus, the most important factors in this case—the place of sale, delivery, use, and alleged injury, and the center of the parties' relationship—show that each of the 51 jurisdictions has the strongest interest in applying its own warranty laws to disputes between its residents and Whirlpool.

### B. Plaintiffs' Warranty Claims Fail Because Plaintiffs Have Not Alleged That They Gave Whirlpool Appropriate Notice of a Breach of Warranty

Plaintiffs' claims for breach of written and implied warranties, except Plaintiff Werman's claims under Illinois law, fail because Plaintiffs have not pled, consistent with their respective home states' warranty statutes (and consequently the MMWA), that they provided Whirlpool with the statutorily required, timely notice of a breach of warranty.[12]

---

[12] Pre-suit notice is a substantive requirement of warranty law under U.C.C. § 2-607, however, the 51 jurisdictions have developed markedly differing standards as to what constitutes sufficient notice to the

Here, the Complaint generically alleges that Whirlpool "received timely notice of the breaches of warranty alleged herein." (Compl. ¶¶ 170, 180, 191, 202, 213, 235, 246.) In addition, Plaintiffs plead that they engaged in different written or oral communications with various Whirlpool representatives. (*Id.* ¶¶ 43-77.) The Complaint's vignettes about each Plaintiff's alleged experiences with his or her Duet washer omit any mention of whether, when, and how each Plaintiff provided Whirlpool (or anyone else) with appropriate notice of an alleged breach of warranty, or any communication to Whirlpool of his or her intent to initiate settlement negotiations or a lawsuit. (*Id.*) For example, Plaintiffs allege that they were unsuccessful in their efforts to remediate the mold-mildew problems in their washers (*id.*), but they do not allege that they informed Whirlpool of that fact, much less that they told anyone that they considered those events to constitute a breach of warranty (*id.* ¶¶ 43-77, 164-304). Indeed, <u>none</u> of the eight Plaintiffs states facts showing that he or she actually notified Whirlpool that the efforts undertaken to remediate the alleged mold-mildew problems were unsuccessful (*i.e.*, that the alleged defect could not be cured).[13] (*Id.* ¶¶ 43-77.) Thus, the Complaint does not sufficiently plead that Plaintiffs provided Whirlpool with appropriate notice of an alleged breach of warranty.

### 1. Plaintiffs' allegations regarding the notice provided by Plaintiffs Gardner, Hollander, O'Brien, and Nordan are inadequate to plead a warranty claim under Texas, Florida, Indiana, and Maryland law

Texas law requires Plaintiff Gardner to notify Whirlpool of the alleged breach of warranty or be barred from any remedy. Tex. Bus. & Com. Code § 2.607(c)(1); *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 804 (E.D. La. 1998) (applying Texas law and dismissing implied-warranty claim in part because the plaintiff did not give the required notice). Plaintiff Gardner does not allege that she <u>ever</u> contacted Whirlpool about the problems she experienced. (Compl. ¶¶ 43-45.) For that reason alone, her warranty claim should be dismissed. *See Angel v. Goodman Mfg. Co., L.P.*, No. 07-CV-0462, 2008 WL 2673353, at *6-7 (N.D. Okla. June 28, 2008) (granting summary judgment on Texas warranty class claim against air conditioner manufacturer because the plaintiff failed to provide pre-suit notice to anyone in the chain of

---

seller. (*See, e.g.*, App. of State Authorities in Supp. of Def.'s Mot. to Strike Pls.' Class Allegations, attached as Ex. 11 to Def.'s Mem. in Supp. of Mot. to Strike.)

[13] Plaintiff Glennon alleges that he notified his retailer of his inability to remediate the mold-mildew problem in his first Duet washer and that the retailer replaced his machine. (Compl. ¶ 72.)

distribution).  Therefore, the Court should dismiss the warranty claims asserted under Texas law, as well as the MMWA claims for Duet washers sold in Texas.

Under Florida law, Plaintiff Hollander is required to "set forth factual allegations designating the basis" for each element of his claim for breach of warranty, including, "[n]otice to seller of breach."  *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc*., 351 So. 2d 351, 352-53 (Fla. Ct. App. 1977).  Plaintiff Hollander has failed to allege any "factual allegations" showing that she appropriately notified Whirlpool of a breach.  Plaintiff Hollander allegedly called Whirlpool around December 2007 to "raise the mold/mildew issue," and she received advice from a Whirlpool representative on "cleaning solutions" for her alleged problem, "such as, using Affresh tablets."  (Compl. ¶ 48.)  She does not allege that she ever contacted Whirlpool after that, that she provided Whirlpool with notice that the "cleaning solutions" did not remedy her mold-mildew problem, or that she demanded a free repair, a replacement machine, or any other remedy.  (*See id.*)  Just as the court in *Dunham-Bush* dismissed the warranty claim because the complaint failed to plead facts showing that the required pre-suit notice had been given, Plaintiff Hollander has offered no allegations showing that she notified Whirlpool that her mold-mildew issues persisted, much less that Whirlpool had breached any warranty.  (*See id*. ¶¶ 46-49.)  Therefore, the Court should dismiss the warranty claims asserted under Florida law, as well as the MMWA claims for Duet washers sold in Florida.

Similarly, the laws of Indiana and Maryland require Plaintiffs O'Brien and Nordan to plead and prove that they gave Whirlpool adequate pre-suit notice.  *Courtesy Enters., Inc. v. Richards Labs*., 457 N.E.2d 572, 579 (Ind. Ct. App. 1983) ("Notice of breach of warranties is a substantive condition precedent to recovery for an asserted breach. . . .  Courtesy failed to provide notice.  That failure waived Courtesy's right to assert breach under the statute."); *Smith v. Butler*, 311 A.2d 813, 816 (Md. Ct. App. 1973) (under Maryland law, "the bringing of litigation itself is not regarded as notice").  As in the case of Plaintiff Hollander, Plaintiffs O'Brien and Nordan do not allege that they told Whirlpool, before filing suit, that Whirlpool's attempts to address their concerns were ultimately unsuccessful (Compl. ¶¶ 50-59), much less that they expressed an intent to "assert a breach of warranty claim" against Whirlpool, as contemplated by the notice requirement.  *Courtesy Enters*., 457 N.E.2d at 578.

**2.      Plaintiffs Glennon and Strong do not allege that they provided Whirlpool with timely notice of an alleged breach of warranty**

Under New York law, Plaintiff Glennon must allege that he notified Whirlpool of a claimed breach of warranty within a reasonable time. *Int'l Paper Co. v. Margrove, Inc.*, 348 N.Y.S.2d 916, 919 (N.Y. Sup. Ct. 1973). The *International Paper* court granted summary judgment to a seller on a breach-of-warranty counterclaim, based on the untimeliness of the pre-suit notice: "other than defendant's claimed oral objections, nothing was done to notify plaintiff of a claimed breach until service of its answer and counterclaim, five months after final delivery and acceptance. . . . Under the circumstances of this case such a lapse of time is not a 'reasonable time.'" *Id.* Here, Plaintiff Glennon alleges that he first began to experience mold and mildew odors "within weeks of delivery of his" Duet washer, around August 22, 2006. (Compl. ¶¶ 67-68.) The only specific date that is associated with Plaintiff Glennon's post-sale communications, however, is November 27, 2007, when Plaintiff Glennon received a replacement Duet washer from his retailer, PC Richard & Son. (*Id.* ¶ 72.) Then, within approximately three months, he noticed that his replacement machine had developed a mold-mildew odor and he contacted Whirlpool "concerning the problem with the second machine." (*Id.* ¶ 73.) Whirlpool gave Plaintiff Glennon routine maintenance and cleaning instructions, which Plaintiff Glennon contends were ineffective, but he does not allege that he ever notified Whirlpool of his inability to remedy the odor problem in his second machine or that he demanded a repair, replacement, refund, or other warranty remedy for his second machine. (*Id.*) The first time that Whirlpool heard from Plaintiff Glennon again was when he joined in this action. Consequently, the Complaint contains no allegations that, if true, would show that Plaintiff Glennon provided Whirlpool with timely pre-suit notice of a breach. Therefore, the Complaint's New York law warranty claims, as well as the MMWA claim based on Duet washers sold in New York, should be dismissed.

For similar reasons, Plaintiff Strong has failed to state a warranty claim under Arizona law. Plaintiff Strong was required to provide pre-suit notice of a breach within "a reasonable time of discovering the breach." *Pace v. Sagebrush Sales Co.*, 560 P.2d 789, 791 (Ariz. 1977). Failure to plead facts that, if true, would prove she gave timely notice of the alleged breach requires dismissal of Plaintiff Strong's warranty claims. *See id.* at 791-93 (affirming summary judgment on warranty claims for failure to provide timely pre-suit notice of breach). Plaintiff Strong pleads that she bought her washer more than three-and-a-half years ago, in December

2004, but she fails to identify either the approximate date when her Duet first "began to experience mold and mildew accumulation" (Compl. ¶ 76) or the approximate date when she "contacted Whirlpool concerning the problem with the mold and mildew" in her Duet (*id.* ¶ 77). Moreover, Plaintiff Strong does not allege facts showing that she notified Whirlpool that its recommended maintenance and cleaning steps were ineffective in remedying her problem. (*Id.*) Nor does she allege that she demanded that Whirlpool repair, replace, or repurchase her Duet or otherwise remedy the alleged breach of warranty. (*Id.*) Accordingly, Plaintiff Strong has failed to allege any facts that, if true, would demonstrate that she provided to Whirlpool timely notice of a breach. The Complaint's Arizona warranty claims, as well as the MMWA claim based on Duets sold in Arizona, should be dismissed.

### 3.    Plaintiff Snyder does not allege facts showing that the policies behind the notice requirement have been fulfilled

Under North Carolina law, Plaintiff Snyder may provide notice of a breach of warranty by means of a timely filed legal complaint if, but only if, she shows that "the policies behind the [notice] requirement have not been frustrated and, instead, have been fulfilled." *Bryant v. Adams*, 448 S.E.2d 832, 844 (N.C. Ct. App. 1994) (quotation marks omitted). According to *Bryant*,

> The policies behind the notice provision are (1) to enable the seller to make efforts to cure the breach by making adjustments or replacements in order to minimize the buyer's damages and the seller's liability; (2) to afford the seller a reasonable opportunity to learn the facts so that he may adequately prepare for negotiation and defend himself in a suit; and (3) to provide a seller with a terminal point in time for liability.

*Id.* Here, Plaintiff Snyder pleads no facts showing that her filing of the Complaint fulfills the policies behind the notice provision. (Compl. ¶¶ 60-63.) She generically alleges that she contacted Whirlpool once, on some unspecified date during the past three-plus years, and "raised the mold/mildew issue." (*Id.* ¶ 62.) In response to that one communication, Whirlpool offered advice on how to deal with the mold-mildew issue. (*Id.*) She does not allege that she ever told Whirlpool that its advice was ineffective, or that she otherwise demanded a repair, replacement, or reimbursement of the Duet's purchase price, as contemplated by the first policy behind the notice provision. (*Id.* ¶¶ 60-63; *Bryant*, 448 S.E.2d at 844.) Further, Plaintiff Snyder admits that she bought an extended warranty that covered her machine for four years after the initial one-year warranty period, but she does not allege that she actually bought the extended warranty

from Whirlpool (rather than from one of the many third parties that sell appliance warranties), that she demanded that Whirlpool repair or replace her Duet under the extended warranty, or that she ever contacted Whirlpool to enable Whirlpool (or the retailer) to make efforts to cure the breach.  (Compl. ¶¶ 62-63.)  Nor does Plaintiff Snyder allege that she provided any substantial input to Whirlpool during her one communication that would have afforded Whirlpool a "reasonable opportunity to learn the facts," much less "provide [Whirlpool] with a terminal point in time for liability."  *Id.*  Therefore, the Complaint's North Carolina warranty claims, as well as the MMWA claim based on Duet washers sold in North Carolina, should be dismissed.

### C.    Plaintiffs Werman and Glennon Do Not Allege Privity with Whirlpool, as Required to State an Implied-Warranty Claim in Illinois and New York

"Generally plaintiffs suing for breach of warranty in Illinois must establish both vertical and horizontal privity," and the Illinois Supreme Court has "held that privity is required when the plaintiff is suing to recover for purely economic injury."  *Thomas v. Bombardier-Rotax Motorenfabrik, GmhB*, 869 F. Supp. 551, 556 & n.7 (N.D. Ill. 1994); *see also Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988) (holding that a plaintiff must be in vertical privity with the seller in order to bring a claim for economic damages for breach of implied warranty under Illinois' UCC).  Privity also is required to assert warranty claims based on Illinois substantive law under the MMWA.  *See Finch v. Ford Motor Co*., 327 F. Supp. 2d 942, 946 (N.D. Ill. 2004) ("As the Finches purchased the vehicle from Rosen, not directly from Ford, they lack the necessary privity of contract for a claim of breach of implied warranty under Magnuson-Moss.").

Plaintiff Werman's allegations definitively show that she is <u>not</u> in privity with Whirlpool, because she alleges that she bought her machine from ABT Electronics, Inc. in Glenview, Illinois, not from Whirlpool directly.  (Compl. ¶ 10.)  The Court should dismiss Plaintiff Werman's Illinois implied-warranty claim as a matter of law, as well as the MMWA claim for breach of implied warranty for Duets sold in Illinois.

Similarly, New York law requires Plaintiff Glennon to allege privity of contract with Whirlpool to state a claim for breach of implied warranty.[14]   Plaintiff Glennon alleges that he

---

[14] *See Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc.*, 58 N.Y.2d 993, 995 (N.Y. 1983) ("In addition, on the facts of this case, there being no privity between the purchaser and the defendant there can be no

bought his Duet from the retailer PC Richard & Son in Greenvale, New York, not from Whirlpool directly.  (*Id.* ¶ 12.)  Accordingly, the lack of contractual privity bars Plaintiff Glennon's New York implied-warranty claim, and the MMWA implied-warranty claim based on the sale of Duet washers in New York should be dismissed.

D.     **Plaintiffs' Express-Warranty Claims Fail Because They Have Not Alleged a Violation of Any Specific Warranty Provision**

Plaintiffs' claims for breach of written warranty rest on the vague and conclusory allegation that Whirlpool "breached its written warranty, as set forth above, by supplying the [Duet washers] in a condition which does not meet the warranty obligations undertaken by Whirlpool, and by failing to repair or replace the defect and/or defective parts."  (Compl. ¶¶ 179, 189, 199, 209, 219, 229, 239.)  These generic allegations are not sufficient to plead that Whirlpool failed to honor any specific written warranty.  *See, e.g.*, *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 638 (Ill. App. Ct. 2001).

Because express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the parties.  *Id.* at 634.  In *Hasek*, the plaintiff's burden at trial was to prove both that the engine noise was caused by a defect in material, workmanship, or factory preparation, and that DaimlerChrysler breached its promise to repair or replace the defective parts under the U.C.C.  *Id.* at 635.  Because the plaintiffs were unable to prove that the engine knock they experienced resulted from a defect in materials, workmanship, or factory preparation, they were unable to establish a breach of the express warranty.  *Id.* at 638.

Here, the closest the Complaint comes to identifying a specific warranty provision that Whirlpool allegedly breached—when the Complaint is construed most favorably to Plaintiffs—is in the allegations that (i) Whirlpool "expressly warranted the stainless steel drum of the Washing Machines for its lifetime" (Compl. ¶ 20), (ii) the stainless steel drum somehow "play[s] a role" in the alleged "accumulation of mold and mildew" (*id.* ¶ 24), and (iii) "Whirlpool was obligated . . .

_____

implied warranty."); *Gordon v. Ford Motor Co.*, 657 N.Y.S.2d 43, 43 (N.Y. App. Div. 1997) ("Defendant correctly argues that there can be no implied warranty absent privity between itself and plaintiffs"); *Mazzuocola v. Thunderbird Prods. Corp.*, No. 90-CV-0405, 1995 WL 311397, at *2 (E.D.N.Y. May 16, 1995) (observing that New York, in "maintaining what appears to be the majority position, requires privity").

to repair the defect at no charge" (*id.* ¶ 21).  As noted above, however, Plaintiffs' vague and conclusory defect allegations are not sufficient to plead that the alleged "defect" has anything to do with the stainless steel wash drum.  (*See* Argument, Part I.A.2, *supra.*)  Further, the lifetime limited warranty that accompanied certain Duet® and Duet HT® models states that the customer will be charged for labor after the first year (*e.g.*, Ex. 5 at 21), so Plaintiffs cannot credibly claim that Whirlpool had an obligation to repair their washers "at no charge" or that Whirlpool breached its warranty obligations by declining to do so.  Still further, none of the Duet Sport® models are covered by a lifetime warranty on the stainless steel drum (*e.g.*, Ex. 3 at 26; Ex. 4 at 26), and only certain of the Duet® and Duet HT® models are covered by a lifetime limited warranty on the stainless steel drum (*e.g.*, Ex. 1 at 25; Ex. 2 at 25; Ex. 5 at 21).  Accordingly, Plaintiffs Hollander and Glennon would only have received a lifetime warranty on the stainless steel drum if they bought a Duet® model, but not if they bought a Duet HT® or Duet Sport® model.  (*See* Compl. ¶¶ 6, 12, 46, 67.)

Thus, Plaintiffs fail to state an actionable express-warranty claim because the Complaint does not include any facts that, if true, would show that Whirlpool breached any identifiable warranty provision.  *See Twombly*, 127 S. Ct. at 1965 & n.3 (dismissing an inadequately pled claim under Rules 8(a) and 12(b)(6) because the rules "contemplate the statement of circumstances, occurrences, and events in support of the claim presented and [do] not authorize a pleader's bare averment that he wants relief and is entitled to it"); *id.* at 1965-66 ("a formulaic recitation of the elements of a cause of action will not do").  Pursuant to Rule 12(b)(6), the Court should dismiss Counts I and X-XVII.

## III.    PLAINTIFFS FAIL TO STATE CLAIMS FOR UNJUST ENRICHMENT

Although the relevant states have formulated the elements and required proof to support a claim for unjust enrichment differently, generally speaking, Plaintiffs and each putative class member must prove that Whirlpool collected money or a benefit from each of them and that it would be "wrong," "inequitable," or "unjust" for Whirlpool to retain that benefit.[15]  Here,

---

[15]   *See Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002) ("To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy."); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. Ct. App. 2005) ("The elements of a cause of

Plaintiffs' unjust enrichment claims are based on the theory that Whirlpool "unjustly" collected money from them.  (Compl. ¶¶ 305-44.)  For the reasons stated above, however, the Complaint contains no well-pled <u>facts</u> that, if true, would show that Whirlpool's conduct was "wrongful" in any meaningful way.  (*See* Argument, Part I, *supra*.)  Absent particularized allegations that Whirlpool engaged in some wrongful conduct, Plaintiffs' unjust enrichment claims fail as a matter of law.  *See, e.g.*, *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995) (affirming summary judgment for defendants where the plaintiffs failed to allege that defendants engaged in "unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence").

Plaintiffs' unjust enrichment claims also fail as a matter of law because the Complaint admits that written warranties govern Plaintiffs' respective relationships with Whirlpool. Specifically, Plaintiffs' unjust enrichment claims incorporate by reference the preceding paragraphs of the Complaint that include allegations concerning the existence of an express contract between Whirlpool and each Plaintiff (Compl. ¶¶ 305, 310, 315, 320, 325, 330, 335, 340), including the repeated allegation that Whirlpool provided a written warranty that covered

---

action for unjust enrichment are:  (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." (quotation marks omitted)); *Firemen's Annuity & Benefit Fund v. Mun. Employees', Officers', & Officials' Fund*, 579 N.E.2d 1003, 1007 (Ill. App. Ct. 1991) ("[A] plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience."); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) ("To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."); *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 569 (Md. Ct. App. 2007) ("Under Maryland law, '[a] claim of unjust enrichment is established when:  (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.'" (citation omitted) (alteration in original)); *Austin Hatcher Realty, Inc. v. Arnold*, No. COA07-1377, 2008 WL 2246675, at *5 (N.C. Ct. App. June 3, 2008) ("To state a claim for unjust enrichment, the plaintiff's allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous."); *Whitman Realty Group, Inc. v. Galano*, 838 N.Y.S.2d 585, 587 (N.Y. App. Div. 2007) ("To prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant benefited at the plaintiff's expense and that equity and good conscience require restitution."); *Tex. Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998) ("The plaintiff must establish that the defendant received money 'which in equity and good conscience belongs to the plaintiff.'" (citation omitted)).

the allegedly defective part (*id.* ¶¶ 167, 177, 188, 199, 210, 221, 232, 243).  The laws of Arizona, Florida, Illinois, Indiana, Maryland, North Carolina, Texas, and New York adhere to the general principle that "[t]here can be no implied contract where there is an express contract between the parties in reference to the same subject matter."  *Chanay v. Chittenden*, 563 P.2d 287, 290 (Ariz. 1977).[16]  Thus, courts have routinely dismissed unjust enrichment claims where the plaintiff has alleged claims for both unjust enrichment and breach of contract.  *E.g.*, *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (affirming the dismissal of the plaintiffs' unjust enrichment claim under Rule 12(b)(6): "Shaw fails to present a claim for unjust enrichment, because that is unavailable where the claim rests on the breach of an express contract.").

Here, Whirlpool does not dispute that an express contract governed the parties' relationships with respect to the subject matter of this lawsuit, though Whirlpool denies that it breached any such agreement.  Accordingly, Plaintiffs are precluded as a matter of law from bringing claims for unjust enrichment arising out of the same "defect" allegations that underlie their claims for breach of express warranty.

---

[16]  *See also Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Ct. App. 2007) ("Defendants correctly state that a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."); *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982) ("The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests."); *Kincaid v. Lazar*, 405 N.E.2d 615, 619 (Ind. Ct. App. 1980) ("The existence of a valid express contract for services, however, precludes implication of a contract covering the same subject matter.  The rights of the parties are controlled by the contract and under such circumstances recovery cannot be had on the theory of quantum meruit."); *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 610 (Md. 2000) ("We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists."); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."); *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988) ("If there is a contract between the parties the contract governs the claim and the law will not imply a contract."); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory.").

## IV.    ALTERNATIVELY, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT OF THEIR CLAIMS

In the alternative, Plaintiffs should be required to provide a more definite statement of their claims.  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b) serves important purposes in fraud actions by "protect[ing] defendants from the harm of false accusations, minimiz[ing] 'fishing expeditions,' and provid[ing] defendants with adequate notice" so that they may prepare proper defenses.  *Jones v. Hoosman*, No. 05-C-2909, 2006 WL 1302524, at *1 (N.D. Ill. May 9, 2006) (granting motion to dismiss for failure to plead fraudulent concealment with requisite particularity).  For the reasons discussed in Argument Part I above, Plaintiffs' conclusory defect allegations and their similarly vague misrepresentation and omission allegations do not satisfy Rule 9(b)'s specificity and particularity requirements.

Under Rule 12(e), where a complaint "is so vague or ambiguous that a defendant cannot reasonably be required to frame a responsive pleading, the defendant may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e).  For Whirlpool to properly defend itself against Plaintiffs' claims, and to determine the appropriate scope of class discovery, Plaintiffs must plead particularized facts showing exactly what they contend Whirlpool knew about the Duet washers that Whirlpool should have disclosed to Plaintiffs, when Whirlpool knew or should have known about such "facts," what specific statements each Plaintiff received or heard that were either false or misleading due to a material omission, who specifically made each such statement to Plaintiffs, when and where such statements were made, and how such statements proximately caused each Plaintiff's damages.  None of these facts, much less all of them, are pled in Plaintiffs' Complaint.

## <u>CONCLUSION</u>

For all these reasons, Whirlpool requests that the Court dismiss Plaintiffs' Complaint.

Dated:  August 23, 2008

Respectfully submitted,

s/ Michael T. Williams
Michael T. Williams
Kara J. Rosenthal

Galen D. Bellamy
Wheeler Trigg Kennedy LLP
1801 California Street, Suite 3600
Denver, CO  80202-2617
Telephone: (303) 244-1800
Facsimile:  (303) 244-1879

and

Bradley B. Falkof
Brad Rago
Barnes & Thornburg LLP
1 North Wacker Drive, Suite 4400
Chicago, IL  60606
Telephone: (312) 214-8304
Facsimile:  (312) 759-5646

Attorneys for Defendant Whirlpool Corporation

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that, on this 23rd day of August, 2008, a copy of the foregoing was filed electronically with the Federal Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

- **Galen D. Bellamy**
  bellamy@wtklaw.com

- **Glenn Edward Orr**
  glorr4@yahoo.com

- **Brad Eric Rago**
  brad.rago@btlaw.com,smarschke@btlaw.com

- **Kara Jean Rosenthal**
  rohe@wtklaw.com

- **Evan B. Stephenson**
  stephenson@wtklaw.com,wallace@wtklaw.com

- **Michael T. Williams**
  williams@wtklaw.com,mallett@wtklaw.com,kemezis@wtklaw.com

**Manual Notice List**

**Natalie Finkelman Bennett**
Shepherd Finkelman Miller & Shah, LLC
35 East State Street
Media, PA 19063

**Matthew B. Borden**
Liner Yankelevitz Sunshine & Regenstreif LLP
199 Fremont Street
Suite 2000
San Francisco, CA 94105-2255

**Karen M. Leser-Grenon**
Shepherd Finkelman Miller & Shah, LLC
401 West A Street
Suite 2350
San Diego, CA 92101

**James E. Miller**
Shepherd Finkelman Miller & Shah, LLC
65 Main Street
Chester, CT 06412

**Daniel B. Scott**
Chimicles & Tikellis LLP
One Haverford Centre
Haverford, PA 19041

**James C. Shah**
Shepherd Finkelman Miller & Shah
35 E State Street
Media, PA 19063

**Schwartz A Steven**
Chimicles & Tikellis LLP
One Haverford Centre
Haverford, PA 19041

s/ Michael T. Williams

# EXHIBIT 1







# FRONT-LOADING AUTOMATIC WASHER

Use & Care Guide

For questions about features, operation/performance,
parts, accessories or service call: **1-800-253-1301**

In Canada, call: **1-800-807-6777**

or visit our website at
**www.whirlpool.com or www.whirlpool.ca**

# LAVADORA AUTOMÁTICA DE CARGA FRONTAL

Manual de Uso y Cuidado

Si tiene preguntas respecto a las características, funcionamiento,
rendimiento, partes, accesorios o servicio técnico, llame al:
**1-800-253-1301**

o visite nuestro sitio web en
**www.whirlpool.com o www.whirlpool.ca**

# LAVEUSE AUTOMATIQUE À CHARGEMENT FRONTAL

Guide d'utilisation
et d'entretien

Au Canada, pour assistance, installation ou service, composer le :
**1-800-807-6777**

ou visitez notre site internet à
**www.whirlpool.ca**

Table of Contents / Índice / Table des matières .... 2



Designed to use only HE
High Efficiency Detergent

Diseñada para utilizar
solamente detergente de
alta eficacia

Conçue pour l'utilisation
d'un détergent haute
efficacité seulement



461970229031
✔ 8182750

5. Select the desired OPTIONS. Not all options are available with all cycles. See "Options."

6. Select the desired MODIFIERS. Not all modifiers are available with all cycles and options. See "Modifiers."

7. If desired, select the END OF CYCLE SIGNAL. The signal is helpful when you are washing items that should be removed from the washer as soon as it stops. Select LOUDER, SOFTER or OFF.

8. **To begin the wash cycle immediately**
Select HOLD TO START.

   ■ If you do not select HOLD TO START within 5 minutes of choosing a cycle, the washer automatically shuts off.

   ■ When the wash cycle is complete, the CYCLE COMPLETE status light glows, the door unlocks, and the wash load can be removed from the washer. The washer powers down automatically 5 minutes after the cycle is complete and the CYCLE COMPLETE light goes off. To power down the washer manually after the wash cycle is complete, select PAUSE/CANCEL once.

9. **To begin the wash cycle later**
Select DELAY WASH until the desired delay time (in hours) shows in the Estimated Time Remaining display. Select START. The countdown to the wash cycle will show in the display window.

   ■ When delaying a cycle, use only powdered detergents in the main wash compartment since liquid detergents may seep out of the compartment during Delay, before the wash cycle begins.

---

## Using the Dispenser

Your new washer has a dispenser drawer with four separate compartments for your laundry products—two are for detergent, one is for liquid chlorine bleach, and one is for liquid fabric softener. Laundry products are diluted and dispensed automatically at the proper time during the wash cycle, making it unnecessary for you to return to the washer during the cycle to add them.

It is normal for small amounts of water to remain in the dispensers when the wash cycle is complete.

Do not put laundry additives directly into the wash tub. Always use the proper dispensers when adding laundry products.

### Choosing the Right Detergent

Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

### To fill dispenser compartments

1. Pull out the dispenser drawer.

2. Add the desired laundry product to the proper compartment.

3. Push in the dispenser drawer slowly and completely (to avoid a spill).



*Dispenser*

*A. Prewash detergent compartment*
*B. Separator*
*C. Main Wash detergent compartment*
*D. Dispenser release lever*
*E. Chlorine bleach compartment*
*F. Fabric softener compartment*

### Prewash detergent compartment

(Letter A in Dispenser Illustration)

Add detergent to this compartment when using the Prewash option or Auto Soak. Liquid or powdered detergent may be used in this compartment. The detergent will automatically be dispensed during Prewash if the Prewash option is selected or during the soak time if Auto Soak is selected.

■ Using only HE High Efficiency detergent, add ⅓ the recommended amount to the Prewash compartment and ⅔ the recommended amount to the Main Wash compartment.

■ Do not fill beyond the "MAX" level.

### Main Wash detergent compartment

(Letter C in Dispenser Illustration)

Add liquid or powdered detergent to this compartment for your main wash cycle. The detergent separator must always be in place, either in the front or back position.

**IMPORTANT:** If you are using the Prewash, Soak or Delay option, powdered detergent must be used in the Main Wash compartment, since liquid detergents may seep out of the Main Wash compartment before the main wash begins.

■ Do not fill beyond the "MAX" level. Use the detergent manufacturer's recommended amount for load size.

■ Liquid or powdered color-safe bleach may be added to the Main Wash compartment along with the same type of detergent, liquid or powdered.

# WASHER CARE

## Cleaning Your Washer

### Cleaning the door seal

1. Open the washer door and remove any clothing or items from the washer.

2. Inspect the gray colored seal between the door opening and the basket for stained areas. Pull back the seal to inspect all areas under the seal and to check for foreign objects.



*A. Seal*

3. If stained areas are found, wipe down these areas of the seal, using the procedure that follows.

   a) Mix a dilute solution, using ¾ cup (177.4 mL) of liquid chlorine bleach, and 1 gal. (3.8 L) of warm tap water.

   b) Wipe the seal area with the dilute solution, using a damp cloth.

   c) Let stand 5 minutes.

   d) Wipe down area thoroughly with a dry cloth and let the washer interior air dry with door open.

**IMPORTANT:**

■ Wear rubber gloves when cleaning for prolonged periods.

■ Refer to the bleach manufacturer's instructions for proper use.

### Washer Monthly Maintenance Procedure

Your washer has a special cycle stored within the machine's programming. Pressing a specific combination of buttons will access this cleaning cycle. The cycle uses higher water volumes in combination with liquid chlorine bleach to thoroughly clean the inside of your washing machine.

**NOTES:**

■ Read these instructions completely before beginning the cleaning process.

■ If necessary, the cleaning cycle may be interrupted by pressing the PAUSE/CANCEL button. However, this will not immediately stop the cycle. The machine will display "int" (interrupt) and continue with several rinse and drain steps to ensure that all remaining bleach is rinsed from the unit.

### Begin procedure

1. Open the washer door and remove any clothing or items from the washer.

2. Be sure the door is closed.

3. Open the dispenser drawer and remove the detergent divider from the Main Wash detergent compartment. See "Using the Dispenser" for instructions. No laundry products will be added at this time; you will be required to add only liquid chlorine bleach, at a later step.

4. To enter the cycle, a specific combination of buttons must be pressed.

   ■ Select the POWER button.

   ■ Select the RINSE/SPIN button.

   ■ Select LOW SPIN Speed.

   ■ Select Warm/Cold WATER TEMPERATURE.

   ■ Set the End of Cycle Signal to softer.

   ■ Push EXTRA RINSE button 4 times within 5 seconds to start the cycle. The door will lock, and filling will begin.

      **NOTE:** The water in the unit will dispense for a moment, then the door will unlock, lock again, and then the cycle will continue.

   ■ The machine will fill and run a short sensing cycle. This will take approximately 3 minutes.

5. The washer will provide 4 short tones. Check the Estimated Time Remaining display for the codes indicated below.

   a) If the washer displays the letters "Ab" (Add Bleach) in the Estimated Time Remaining display, you will hear 4 short tones. Proceed to Step 6.

   b) If the washer displays the letters "rL" (Remove Load) in the Estimated Time Remaining display, an error tone will sound. The door will unlock.

      ■ Open the door and remove the items from the washer.

      ■ Continue the cycle by pressing the START button.

         **NOTE:** The water in the unit will dispense for a moment, then the door will unlock, lock again, and then the cycle will continue with another check for items in the washer.

      ■ The machine will fill and run a short cycle to determine whether any items have been left in the washer. This will take approximately 3 minutes.

      ■ The washer will repeat Step 5 until it can determine that there are no items in the washer and will display "Ab" (add bleach).

6. Add liquid chlorine bleach.

   a) If using the maintenance procedure for the first time, open the dispenser drawer and immediately add 1 cup (236.6 mL) liquid chlorine bleach to the Main Wash detergent compartment. The liquid chlorine bleach should immediately flow out of the dispenser.

   b) If doing a monthly maintenance procedure, open the dispenser drawer and immediately add ⅓ cup (78.8 mL) liquid chlorine bleach to the Main Wash detergent compartment. The liquid chlorine bleach should immediately flow out of the dispenser.

      **NOTES:**

      ■ Water will be flowing into the dispenser drawer when the bleach is added. This is normal.

      ■ Do not add any detergent to this cleaning cycle. Use of more than 1 cup (236.6 mL) of bleach will cause product damage over time.

7. Once the cleaning cycle has begun, allow the cycle to complete. An estimated cycle time will appear on the display.

8. After the cleaning cycle is complete, leave the door open, slightly, to allow for better ventilation and drying of washer interior.

19

9. Replace the detergent compartment divider.

### Always do the following to maintain washer freshness

■ Use only HE High Efficiency detergent.

■ Leave the door slightly open after each cycle to allow for better ventilation and drying of washer interior.

■ Run this procedure using ⅓ cup (78.8 mL) of liquid chlorine bleach.

■ If the procedure does not sufficiently improve the machine freshness, evaluate your installation and usage conditions for other causes.

### Cleaning the exterior

Use a soft damp cloth or sponge to wipe up any spills. Occasionally wipe the outside of your washer to keep it looking new. Use mild soap and water. Do not use abrasive products.

### Cleaning the dispenser drawer

The dispenser drawer is removable for easy cleaning.

1. Unlock the dispenser drawer by pressing the Release Lever in the Prewash compartment. See "Using the Dispenser." Remove the drawer.

2. Remove the inserts (the siphon from the softener and bleach compartments and the separator).

3. Wash the parts under running water.

4. Replace the inserts and return the dispenser to the drawer.

### Water Inlet Hoses

Replace inlet hoses after five years of use to reduce the risk of hose failure. Periodically inspect and replace inlet hoses if bulges, kinks, cuts, wear or leaks are found.

When replacing your inlet hoses, record the date of replacement.

### Vacation, Storage, and Moving Care

Install and store your washer where it will not freeze. Because some water may stay in the hoses, freezing can damage your washer. If storing or moving your washer during freezing weather, winterize it.

### Non-use or vacation care:

Operate your washer only when you are at home. If you will be on vacation or not using your washer for an extended period of time, you should:

■ Unplug washer or disconnect power.

■ Turn off the water supply to the washer. This helps avoid unintended flooding (due to a water pressure surge) while you are away.

■ Slightly open door to provide ventilation.

### To winterize washer:

1. Put 1 qt (1 L) of R.V.-type antifreeze in the drum.

2. Run washer on a DRAIN/SPIN cycle.

3. Unplug washer or disconnect power.

4. Shut off both water faucets.

5. Disconnect water inlet hoses from faucets and drain.

### To use washer again:

1. Flush water pipes. Reconnect water inlet hoses to faucets. Turn on both water faucets.

---

### ⚠WARNING



**Electrical Shock Hazard**

Plug into a grounded 3 prong outlet.

Do not remove ground prong.

Do not use an adapter.

Do not use an extension cord.

Failure to follow these instructions can result in death, fire, or electrical shock.

---

2. Plug in washer or reconnect power.

3. Run the washer through the NORMAL/CASUAL cycle. Measure ¼ the manufacture's recommended amount of HE High Efficiency detergent for a medium size loads.

### To transport the washer:

1. If washer will be moved during freezing weather, put in 1 qt (1 L) of R.V.-type antifreeze in the drum. Run washer on a DRAIN/SPIN cycle.

2. Unplug the power cord.

3. Disconnect the drain hose from the drain system and attach to rear panel clips.

4. Shut off both water faucets.

5. Disconnect the water inlet hoses from faucets, then drain the hoses and clip them to the rear panel of the washer.

**IMPORTANT:** Call service. Do not reuse transport bolts. Unit must be transported in the upright position. To avoid suspension and structural damage to your washer, it must be properly set up for relocation by a certified technician.

### Reinstalling the washer

1. Follow the "Installation Instructions" to locate, level and connect the washer.

2. Run the washer through the NORMAL/CASUAL cycle. Measure ¼ the manufacture's recommended amount of HE High Efficiency detergent for a medium size loads.

## Washer stops

■  **Check the following:**
Is the power cord plugged into a grounded 3 prong outlet?

Is there power at the plug?
Check electrical source or call electrician.

Has a household fuse blown, or has a circuit breaker tripped?
Replace the fuse or reset the circuit breaker. If the problem
continues, call electrician.

Are you using an extension cord?
Do not use an extension cord.

## Washer won't drain or spin

■  **Is the drain hose clogged, or the end of the drain hose
more than 96" (2.4 m) above the floor?**

■  **Is your voltage low?**
Check electrical source or call electrician. Do not use an
extension cord.

■  **Is the "SUD" routine active?**
Cycle will complete once extra suds are removed.

■  **Is the load balanced?**
A single or bulky item may cause imbalance. Add more items
or redistribute the load.

## Washer makes noise or vibrates

■  **Is the washer level?**
The washer must be level. The four feet should be properly
installed, and the nuts should be tightened against the
washer cabinet.

As water is drained from the washer, you may hear air being
pulled through the pump. This happens during the end of
draining. It is normal.

■  **Are you washing items with metal snaps, buckles or
zippers?**
You may hear metal items touching the washer drum. This is
normal.

■  **Is washer installed on a sturdy and solid floor?**
Refer to the "Installation Instructions" for flooring
requirements. Noise and vibration may be reduced by placing
a piece of ¾" (19.1 mm) plywood underneath your washer.
The plywood may extend underneath both washer and dryer
to keep them at equal heights.

## Washer leaks

■  **Check household plumbing for leaks.**

## Dispensers clogged or leaking

■  **Are the laundry products in the correct dispenser
compartment?**
Add the correct amounts of detergent, fabric softener or
liquid chlorine bleach to the correct compartments. Add
powdered or liquid color-safe bleach to the Main Wash
compartment. Be sure to match powdered color-safe bleach
with powdered detergent or match liquid color-safe bleach
with liquid detergent.

■  **Is the detergent separator in the correct position?**
Separator should be in the front position when using liquid
detergent and in the back position when using powdered
detergent.

## Washer odor

■  **See "Cleaning Your Washer" in "Washer Care".**

■  **Are you using HE detergent?**
Use of non-HE detergent can cause a film residue which can
result in odor.

■  **Did you leave the door open after use?**
This washer has a tight seal to avoid water leaks. To avoid
odors leave the door open to allow the washer to dry
between uses.

## Load too wet

■  **Did you use the right cycle for the load being washed?**
Select a cycle with a higher spin speed.

■  **Did you wash a single item or bulky items or have you
overloaded the washer?**
A single item, bulky items, or overloading may cause
imbalance. Add items or try to evenly distribute your wet
laundry in the drum, and start a DRAIN/SPIN cycle. If the
laundry is still wet, take half of the load out of the washer and
try again.

## Residue or lint on load

■  **Did you add detergent to the dispenser?**
For best results, add detergent to the detergent
compartment. Do not add detergent to the washer drum.

■  **Did you sort properly?**
Sort lint givers (towels, chenille) from lint takers (corduroy,
synthetics). Also sort by color.

■  **Did you overload the washer?**
Do not overload the washer. The washer can be fully loaded,
but not tightly packed. The wash load must be balanced. Lint
can be trapped in the load if overloaded.

# WHIRLPOOL CORPORATION MAJOR APPLIANCE WARRANTY

## ONE YEAR LIMITED WARRANTY

For one year from the date of purchase, when this major appliance is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter 'Whirlpool') will pay for FSP ® replacement parts and repair labor to correct defects in materials or workmanship. Service must be provided by a Whirlpool designated service company.

## ITEMS WHIRLPOOL WILL NOT PAY FOR

1. Service calls to correct the installation of your major appliance, to instruct you how to use your major appliance, to replace or repair house fuses or to correct house wiring or plumbing.

2. Service calls to repair or replace appliance light bulbs, air filters or water filters. Those consumable parts are excluded from warranty coverage.

3. Repairs when your major appliance is used for other than normal, single-family household use.

4. Damage resulting from accident, alteration, misuse, abuse, fire, flood, acts of God, improper installation, installation not in accordance with electrical or plumbing codes, or use of products not approved by Whirlpool.

5. Any food loss due to refrigerator or freezer product failures.

6. Replacement parts or repair labor costs for units operated outside the United States or Canada.

7. Pickup and delivery. This major appliance is designed to be repaired in the home.

8. Repairs to parts or systems resulting from unauthorized modifications made to the appliance.

9. Expenses for travel and transportation for product service in remote locations.

10. The removal and reinstallation of your appliance if it is installed in an inaccessible location or is not installed in accordance with published installation instructions.

## DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES

CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW. WHIRLPOOL SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. SOME STATES AND PROVINCES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR LIMITATIONS ON THE DURATION OF IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS, SO THESE EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS, WHICH VARY FROM STATE TO STATE OR PROVINCE TO PROVINCE.

Outside the 50 United States and Canada, this warranty does not apply. Contact your authorized Whirlpool dealer to determine if another warranty applies.

If you need service, first see the "Troubleshooting" section of the Use & Care Guide. After checking "Troubleshooting," additio nal help can be found by checking the "Assistance or Service" section or by calling Whirlpool. In the U.S.A., call **1-800-253-1301**. In Canada, call **1-800-807-6777**.                                                                                                      8/05

**Keep this book and your sales slip together for future reference. You must provide proof of purchase or installation date for in-warranty service.**

Write down the following information about your major appliance to better help you obtain assistance or service if you ever need it. You will need to know your complete model number and serial number. You can find this information on the model and serial number label located on the product.

Dealer name_____

Address _____

Phone number_____

Model number _____

Serial number _____

Purchase date _____

**461970229031**
© 2005 Whirlpool Corporation.
All rights reserved.
Todos los derechos reservados.
Tous droits réservés.

® Registered Trademark/TM Trademark of Whirlpool, U.S.A., Whirlpool Canada LP
licensee in Canada
The Woolmark symbol is a registered trademark of The Woolmark Company.
® Marca registrada/TM Marca de comercio de Whirlpool, EE.UU., Uso Bajo licencia de
Whirlpool Canada LP en Canadá
El símbolo Woolmark es una marca registrada de The Woolmark Company.
® Marque déposée/TM Marque de commerce de Whirlpool, U.S.A., Emploi Licencié par
Whirlpool Canada LP au Canada
Le symbole Woolmark est une marque de commerce déposée de The Woolmark Company.



9/05
Printed in Germany
Impreso en Alemania
Imprimé en Allemagne

# EXHIBIT 2





## FRONT-LOADING AUTOMATIC WASHER

### Use & Care Guide

For questions about features, operation/performance,
parts, accessories or service call: **1-800-253-1301**

In Canada, call: **1-800-807-6777**

or visit our website at
**www.whirlpool.com** or **www.whirlpool.ca**

## LAVADORA AUTOMÁTICA DE CARGA FRONTAL

### Manual de uso y cuidado

Si tiene preguntas respecto a las características, funcionamiento,
rendimiento, partes, accesorios o servicio técnico, llame al:
**1-800-253-1301**

En Canadá, llame al: **1-800-807-6777**

o visite nuestro sitio web en
**www.whirlpool.com o www.whirlpool.ca**

## LAVEUSE AUTOMATIQUE À CHARGEMENT FRONTAL

### Guide d'utilisation et d'entretien

Au Canada, pour assistance, installation ou service, composez le :
**1-800-807-6777**

ou visitez notre site internet à
**www.whirlpool.ca**

Table of Contents/Índice/Table des matières ....... 2



Designed to use only HE
High Efficiency Detergent

Diseñada para utilizar
solamente detergente de
alto rendimiento

Conçue pour l'utilisation
d'un détergent haute
efficacité seulement



461970235721
✓8183052

# WASHER USE



**NOTE:** The panel shown above may be different from that of your model.

## Starting Your Washer



### ⚠ WARNING

**Fire Hazard**

**Never place items in the washer that are dampened with gasoline or other flammable fluids.**

**No washer can completely remove oil.**

**Do not dry anything that has ever had any type of oil on it (including cooking oils).**

**Doing so can result in death, explosion, or fire.**

**WARNING:** To reduce the risk of fire, electric shock, or injury to persons, read the IMPORTANT SAFETY INSTRUCTIONS before operating this appliance.

The following is a guide to using your washer. Please refer to specific sections of this manual for more detailed information.

Do not store laundry products on the top surface of this washer. Vibration is normal during operation.

## Using the Proper Detergent

Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

### First Wash Cycle Without Laundry

Before washing clothes for the first time, if not completed during the final installation step, choose the Normal/Casual cycle and run it without clothes. Use only HE High Efficiency detergent. Use ½ the manufacturer's recommended amount for a medium-sized load. This initial cycle serves to ensure the interior is clean before washing clothes.

### For All Wash Cycles

1. Open the washer door by pulling on the handle. Sort laundry according to color and type of fabric. Place a load of sorted clothes in the washer. Do not overload washer. Overloading can cause poor cleaning.
   - The washer can be fully loaded, but not tightly packed. Washer door should close easily.
   - Mix large and small items and avoid washing single items. Load evenly.
   - Wash small items, such as infant socks, in mesh garment bags. It is recommended that more than one garment bag be used, and that each garment bag be filled with equal amounts of material.
   - When unloading garments, check under the gray rubber seal at the front of the tub for small items.

2. Close the washer door by pushing it firmly until the lock clicks. The washer door will remain locked during the wash cycle.
   **NOTES:**
   - After any wash cycle is completed, the door must be opened and then closed before a new cycle can begin.
   - The door can be opened only if PAUSE/CANCEL is selected while the Add A Garment light is glowing or if the cycle has been canceled.
   - See "To cancel a cycle" in "Changing, Cycles, Options and Modifiers" section.

3. Open the dispenser drawer and add laundry products to the detergent, bleach, or fabric softener compartments. Close drawer slowly to avoid spills. See "Using the Dispenser."

4. Turn on the washer by selecting POWER. Select one of the cycles by turning the cycle selector. The indicator light for the selected cycle will glow green. When selecting a wash cycle, the preset options and modifiers (such as Water Temp, Spin Speed, and Soil Level) for the selected cycle will glow green. Selectable options will glow amber. If an option or modifier is unavailable with a selected cycle, the light will not illuminate.

11

The display shows the estimated time remaining. The preset settings provide the recommended fabric care for the selected cycle. See "Cycles."

5. Select the desired Options. Not all options are available with all cycles. See "Options."

6. Select the desired modifiers such as Water Temp, Spin Speed and Soil Level. Not all modifiers are available with all cycles and options. See "Modifiers."

7. If desired, select the CYCLE SIGNAL. The signal is helpful when you are washing items that should be removed from the washer as soon as it stops. Select Loud, Soft or Off.

8. If desired, select the BUTTON SOUND. This feature makes a sound each time a button is pressed. Select Loud, Soft or Off.

9. Select and hold START for approximately 1 second.

   ■ If you do not select START within 5 minutes of choosing a cycle, the washer automatically shuts off.

   ■ When the wash cycle is complete, the DONE status light glows, the door unlocks, and the wash load can be removed from the washer. The washer powers down automatically 60 minutes after the cycle is complete and the DONE light goes off. To power down the washer manually after the wash cycle is complete, select PAUSE/CANCEL once.

10. To use the same cycle again, press POWER first, then select START.

11. **To begin the wash cycle later**

    Select DELAY WASH until the desired delay time (in hours) shows in the Estimated Time Remaining display. Select START. The countdown to the wash cycle will show in the display window.

    **IMPORTANT:** When delaying a cycle, use only powdered detergents in the main wash compartment since liquid detergents may seep out of the compartment during Delay Wash, before the wash cycle begins.

## Using the Dispenser

Your new washer has a dispenser drawer with four separate compartments for your laundry products—two are for detergent, one is for liquid chlorine bleach, and one is for liquid fabric softener. Laundry products are diluted and dispensed automatically at the proper time during the wash cycle, making it unnecessary for you to return to the washer during the cycle to add them.

It is normal for small amounts of water to remain in the dispensers when the wash cycle is complete.

Do not put laundry products directly into the wash tub. Always use the proper dispensers when adding laundry products.

### Choosing the Right Detergent

Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

### To fill dispenser compartments

1. Pull out the dispenser drawer.

2. Add the desired laundry product to the proper compartment.

3. Push in the dispenser drawer slowly and completely (to avoid a spill).



**Dispenser**

*A. Prewash detergent compartment*
*B. Detergent type selector*
*C. Main Wash detergent compartment*
*D. Dispenser release lever*
*E. Chlorine bleach compartment*
*F. Fabric softener compartment*

**Prewash detergent compartment**
(Letter A in Dispenser Illustration)

Add detergent to this compartment when using the Prewash option or Presoak. Liquid or powdered detergent may be used in this compartment. The detergent will automatically be dispensed during Prewash if the Prewash option is selected or during the soak time if Presoak is selected.

   ■ Using High Efficiency (HE) detergent, add ⅓ the recommended amount to the Prewash compartment and ⅔ the recommended amount to the Main Wash compartment.

   ■ Do not fill beyond the "MAX" level.

**Main Wash detergent compartment**
(Letters B & C in Dispenser Illustration)

Add liquid or powdered HE detergent to this compartment for your main wash cycle. The detergent type selector (B) must always be in the correct position for the detergent type used.

**IMPORTANT:** If you are using the Prewash, Presoak or Delay Wash option, powdered detergent must be used in the Main Wash compartment, since liquid detergents may seep out of the Main Wash compartment before the main wash begins.

   ■ Do not fill beyond the "MAX" level. Use the detergent manufacturer's recommended amount for load size.

   ■ Liquid or powdered color-safe bleach may be added to the Main Wash compartment along with the same type of detergent, liquid or powdered.

# LAUNDRY TIPS

## Preparing clothes for washing

Follow these recommendations to help you prolong the life of your garments.

- Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

- Close zippers, snaps, and hooks to avoid snagging other items. Remove pins, buckles, and other hard objects to avoid scratching the washer interior. Remove non-washable trim and ornaments.

- Empty pockets and turn them inside-out.

- Turn down cuffs; brush away lint and dirt.

- Turn synthetic knits inside-out to avoid pilling.

- Tie strings and sashes so they will not tangle.

- Mend tears, loose hems, and seams.

- Treat spots and stains.

- Stained or wet garments should be washed promptly for best results.

- Mix large and small items, avoid washing single items, and load evenly.

- Wash small items, such as infant socks, in a mesh garment bag. To create a balanced load it is recommended that more than one garment bag be used, and that each garment bag be filled with equal amounts of material.

  **NOTE:** If you are washing only small items, it is recommended that more than one mesh garment bag be used, and that each garment bag be filled with equal amounts of material.

## Sorting

- Separate heavily soiled items from lightly soiled ones, even if they would normally be washed together. Separate lint-givers (towels, chenille) from lint-takers (corduroy, synthetics, permanent press). When possible, turn lint-givers inside-out.

- Separate dark colors from light colors, colorfast items from noncolorfast items.

- Sort by fabric and construction (sturdy cottons, knits, delicate items).

## Unloading

- Remove clothes from washer after the cycle is completed. Metal objects such as zippers, snaps, and buckles may rust if left in the washer basket for a long time.

- When unloading garments, occasionally check under the gray colored seal at the front of the tub for small items.

## Loading

### Loading suggestions

**Heavy Work Clothes**

| | |
|---|---|
| 4 jeans | 2 sweatpants |
| 4 workpants | 2 sweatshirts |
| 4 workshirts | |

**Towels**

| | |
|---|---|
| 10 bath towels | 14 washcloths |
| 10 hand towels | |

**Mixed Load**

| | |
|---|---|
| 3 sheets (1 king, 2 twin) | 9 T-shirts |
| 4 pillowcases | 9 shorts |
| 3 shirts | 10 handkerchiefs |
| 3 blouses | |

**Quick Wash**

| | |
|---|---|
| (2-3 garments) | 2 dress shirts |
| | 1 pair dress pants |

## Washer stops

- **Check the following:**
  Is the power cord plugged into a grounded 3 prong outlet?

  Is there power at the plug?
  Check electrical source or call an electrician.

  Has a household fuse blown, or has a circuit breaker tripped?
  Replace the fuse or reset the circuit breaker. If the problem
  continues, call an electrician.

  Are you using an extension cord?
  Do not use an extension cord.

## Washer won't drain or spin

- **Is the drain hose clogged, or the end of the drain hose
  more than 96" (2.4 m) above the floor?**

- **Is your voltage low?**
  Check electrical source or call electrician. Do not use an
  extension cord.

- **Is the "SUD" routine active?**
  Cycle will complete once extra suds are removed.

- **Is the load balanced?**
  A single or bulky item may cause imbalance. Add more items
  or redistribute the load.

## Washer makes noise or vibrates

- **Is the washer level?**
  The washer must be level. The four feet should be properly
  installed, and the nuts should be tightened against the
  washer cabinet.

- **Is the washer gurgling or humming?**
  As water is drained from the washer, you may hear air being
  pulled through the pump. This happens during the end of
  draining. It is normal.

- **Are you washing items with metal snaps, buckles or
  zippers?**
  You may hear metal items touching the washer drum. This is
  normal.

- **Is washer installed on a sturdy and solid floor?**
  Refer to the "Installation Instructions" for flooring
  requirements. Noise and vibration may be reduced by placing
  a piece of ¾" (19.1 mm) plywood underneath your washer.
  The plywood may extend underneath both washer and dryer
  to keep them at equal heights.

## Washer leaks

- **Check household plumbing for leaks.**

## Dispensers clogged or leaking

- **Are the laundry products in the correct dispenser
  compartment?**
  Add the correct amounts of detergent, fabric softener or
  liquid chlorine bleach to the correct compartments. Add
  powdered or liquid color-safe bleach to the Main Wash
  compartment. Be sure to match powdered color-safe bleach
  with powdered detergent or match liquid color-safe bleach
  with liquid detergent.

- **Is the detergent type selector in the correct position?**
  Selector should be in the lower position when using liquid
  detergent and in the upper position when using powdered
  detergent.

## Washer odor

- **See "Cleaning Your Washer."**

- **Are you using HE detergent?**
  Use of non-HE detergent can cause a film residue which can
  result in odor.

- **Did you leave the door open after use?**
  This washer has a tight seal to avoid water leaks. To avoid
  odors leave the door open to allow the washer to dry
  between uses.

## Load too wet

- **Did you use the right cycle for the load being washed?**
  Select a cycle with a higher spin speed.

- **Did you wash a single item or bulky items or have you
  overloaded the washer?**
  A single item, bulky items, or overloading may cause
  imbalance. Add items or try to evenly distribute your wet
  laundry in the drum, and start a DRAIN/SPIN cycle. If the
  laundry is still wet, take half of the load out of the washer and
  try again.

## Residue or lint on load

- **Did you add detergent to the dispenser?**
  For best results, add detergent to the detergent
  compartment. Do not add detergent to the washer drum.

- **Did you sort properly?**
  Sort lint givers (towels, chenille) from lint takers (corduroy,
  synthetics). Also sort by color.

- **Did you overload the washer?**
  Do not overload the washer. The washer can be fully loaded,
  but not tightly packed. The wash load must be balanced. Lint
  can be trapped in the load if overloaded.

- **Check the following:**
  Was paper or tissue left in pockets?

- **Did you use enough HE detergent?**
  Use enough detergent to remove lint and hold it in
  suspension. Use only HE detergent. Follow the
  manufacturer's instructions to determine the amount of
  detergent to use.

- **Is your water colder than 60°F (15.6°C)?**
  Wash water colder than 60°F (15.6°C) may not completely
  dissolve the detergent.

- **Are you using a low-speed wash cycle?**
  Powdered detergents may not dissolve well in a slow-speed
  cycle. For best results, use liquid detergent for slow-speed
  cycles such as Delicate, Hand Washables, Silk and Wool.

# WHIRLPOOL CORPORATION MAJOR APPLIANCE WARRANTY

## ONE YEAR LIMITED WARRANTY

For one year from the date of purchase, when this major appliance is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Parts and repair labor to correct defects in materials or workmanship. Service must be provided by a Whirlpool designated service company. This limited warranty applies only when the major appliance is used in the country in which it was purchased.

## ITEMS WHIRLPOOL WILL NOT PAY FOR

1. Service calls to correct the installation of your major appliance, to instruct you how to use your major appliance, to replace or repair house fuses or to correct house wiring or plumbing.
2. Service calls to repair or replace appliance light bulbs, air filters or water filters. Those consumable parts are excluded from warranty coverage.
3. Repairs when your major appliance is used for other than normal, single-family household use.
4. Damage resulting from accident, alteration, misuse, abuse, fire, flood, acts of God, improper installation, installation not in accordance with electrical or plumbing codes, or use of products not approved by Whirlpool.
5. Any food loss due to refrigerator or freezer product failures.
6. Replacement parts or repair labor costs for units operated outside the United States or Canada.
7. Pickup and delivery. This major appliance is designed to be repaired in the home.
8. Repairs to parts or systems resulting from unauthorized modifications made to the appliance.
9. Expenses for travel and transportation for product service in remote locations.
10. The removal and reinstallation of your appliance if it is installed in an inaccessible location or is not installed in accordance with published installation instructions.
11. Replacement parts or repair labor costs when the major appliance is used in a country other than the country in which it was purchased.

## DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES

CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW. WHIRLPOOL SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. SOME STATES AND PROVINCES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR LIMITATIONS ON THE DURATION OF IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS, SO THESE EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS, WHICH VARY FROM STATE TO STATE OR PROVINCE TO PROVINCE.

Outside the 50 United States and Canada, this warranty does not apply. Contact your authorized Whirlpool dealer to determine if another warranty applies.

If you need service, first see the "Troubleshooting" section of the Use & Care Guide. After checking "Troubleshooting," additional help can be found by checking the "Assistance or Service" section or by calling Whirlpool. In the U.S.A., call **1-800-253-1301**. In Canada, call **1-800-807-6777**.                                                                                                            12/05

---

**Keep this book and your sales slip together for future reference. You must provide proof of purchase or installation date for in-warranty service.**

Write down the following information about your major appliance to better help you obtain assistance or service if you ever need it. You will need to know your complete model number and serial number. You can find this information on the model and serial number label located on the product.

Dealer name _____

Address _____

Phone number _____

Model number _____

Serial number _____

Purchase date _____



M0614

**461970235721**
© 2006 Whirlpool Corporation.
All rights reserved.
Todos los derechos reservados.
Tous droits réservés.

® Registered Trademark/TM Trademark of Whirlpool, U.S.A., Whirlpool Canada LP
licensee in Canada
The Woolmark symbol is a registered trademark of The Woolmark Company.
® Marca registrada/TM Marca de comercio de Whirlpool, EE.UU., usada bajo licencia de
Whirlpool Canada LP en Canadá
El símbolo Woolmark es una marca registrada de The Woolmark Company.
® Marque déposée/TM Marque de commerce de Whirlpool, U.S.A., Emploi licencié par
Whirlpool Canada LP au Canada
Le symbole Woolmark est une marque déposée de The Woolmark Company.



9/06
Printed in Germany or Mexico
Impreso en Alemania o México
Imprimé en Allemagne ou Mexique

# EXHIBIT 3





# FRONT-LOADING AUTOMATIC WASHER

## Use & Care Guide

For questions about features, operation/performance,
parts, accessories or service call: **1-800-253-1301**

In Canada, call: **1-800-807-6777**

or visit our website at
**www.whirlpool.com or www.whirlpool.ca**

# LAVEUSE AUTOMATIQUE À CHARGEMENT FRONTAL

## Guide d'utilisation et d'entretien

Au Canada, pour assistance, installation ou service, composez le :
**1-800-807-6777**

ou visitez notre site internet à
**www.whirlpool.ca**

Table of Contents/Table des matières .................. 2



Designed to use only HE
High Efficiency Detergent

Conçue pour l'utilisation
d'un détergent haute
efficacité seulement



8540910A

# WASHER USE



## Starting Your Washer



**⚠ WARNING**

**Fire Hazard**

Never place items in the washer that are dampened with gasoline or other flammable fluids.

No washer can completely remove oil.

Do not dry anything that has ever had any type of oil on it (including cooking oils).

Doing so can result in death, explosion, or fire.

**WARNING:** To reduce the risk of fire, electric shock, or injury to persons, read the IMPORTANT SAFETY INSTRUCTIONS before operating this appliance.

The following is a guide to using your washer. Please refer to specific sections of this manual for more detailed information.

Do not store laundry additives on the top surface of this washer. Vibration is normal during operation.

## Using the Proper Detergent

Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times, and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

### First Wash Cycle Without Laundry

Before washing clothes for the first time, if not completed during the final installation step, choose the Normal/Casual cycle and run it without clothes. Use only HE High Efficiency detergent. Use ½ the manufacturer's recommended amount for a medium-sized load. This initial cycle serves to ensure the interior is clean before washing clothes.

### For All Wash Cycles

1. **To load washer**
   Open the washer door by pulling on the handle. Sort laundry according to color and type of fabric. Place a load of sorted clothes in the washer. Do not overload washer. Overloading can cause poor cleaning.

   - The washer can be fully loaded, but not tightly packed. Washer door should close easily.
   - Mix large and small items. Avoid washing a single item. Load evenly.
   - Wash small items such as infant socks in mesh garment bags. It is recommended that more than one garment bag be used and that each garment bag be filled with equal amounts of material.
   - When unloading garments, occasionally check under the rubber rim at the front of the tub for small items.

2. Close the washer door by pushing it firmly until the lock clicks. The washer door will remain locked during the wash cycle.

   **NOTE:** After any wash cycle is completed, the door must be opened and then closed before a new cycle can begin. The door can be opened only if PAUSE/CANCEL is selected while the ADD A GARMENT light is illuminated or if the cycle has been canceled. See "To cancel a cycle" in the "Changing Cycles and Options Section."

3. Open the dispenser drawer and add laundry additives to the detergent, bleach, or fabric softener compartments. Close drawer slowly to avoid spills. See "Using the Dispenser."

4. Turn on the washer by selecting POWER. Select one of the cycles by turning the cycle selector. The indicator light for the selected cycle will illuminate. When selecting a Wash Cycle, the preset Modifiers and Options, Water Temp, and Spin Speed for the selected cycle will illuminate. The preset settings provide the recommended fabric care for the selected cycle. See "Wash Cycles."

5. Select the desired OPTIONS. Not all Options are available with all cycles. See "Options."

6. If desired, select the END OF CYCLE SIGNAL. The signal is helpful when you are washing items that should be removed from the washer as soon as it stops. Press END OF CYCLE SIGNAL to select ON or OFF.

7. **To begin the wash cycle immediately**
   Select and hold START (for approximately 1 second).
   - If you do not select START within 5 minutes of choosing a cycle, the washer automatically shuts off.
   - When the wash cycle is complete, the CYCLE COMPLETE status light illuminates, the door unlocks, and the wash load can be removed from the washer. The washer powers down automatically 5 minutes after the cycle is complete and the CYCLE COMPLETE light goes off. To power down the washer manually after the wash cycle is complete, select PAUSE/CANCEL once.

8. **To begin the wash cycle later**
   Select DELAY WASH until the desired delay time (in hours) is displayed. Select START. The countdown to the wash cycle will show in the display window.

   **IMPORTANT:** When delaying a cycle, use only powdered detergents in the main wash compartment since liquid detergents may seep out of the compartment during Delay, before the wash cycle begins.

## Using the Dispenser

Your new washer has a dispenser drawer with three separate compartments for your laundry additives—one is for detergent, one is for liquid chlorine bleach, and one is for liquid fabric softener. Laundry additives are diluted and dispensed automatically at the proper time during the wash cycle, making it unnecessary for you to return to the washer during the cycle to add them.

It is normal for small amounts of water to remain in the dispensers when the wash cycle is complete.

Do not put laundry additives directly into the wash tub. Always use the proper dispensers when adding laundry additives.

### Choosing the Right Detergent

Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times, and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

### To fill dispenser compartments

1. Pull out the dispenser drawer.
2. Add the desired laundry additives to the proper compartment.

3. Push in the dispenser drawer slowly and completely (to avoid a spill).



**Dispenser**

*A. Dispenser release lever*
*B. Main Wash detergent compartment*
*C. Liquid chlorine bleach compartment*
*D. Fabric softener compartment*

### Main Wash detergent compartment
(Letter B in Dispenser Illustration)

Add liquid or powdered HE detergent to this compartment for your main wash cycle.

- Powdered color-safe bleach may be added to the Main Wash compartment along with the powdered detergent.

- Liquid detergent: Measure the amount of liquid detergent with the measurement device which comes with the detergent. Add no more than the manufacturer's recommended amount. The liquid detergent flows immediately into the washer.

- Powdered detergent: Measure the amount of powdered detergent with the measurement device which comes with the detergent. Add no more than the manufacturer's recommended amount.

**NOTE:** Overfilling could cause an oversudsing condition.

### Chlorine bleach compartment
(Letter C in Dispenser Illustration)

Add NO MORE THAN ⅔ cup (160 mL) liquid chlorine bleach to this compartment. The bleach will be automatically diluted and dispensed at the best time during the first rinse after the wash cycle. This compartment cannot dilute powdered bleach.

- Use only liquid chlorine bleach in this dispenser. Do not use this dispenser to add powdered chlorine or any form of color-safe bleach to your load.

- Always measure liquid chlorine bleach. Use a measuring cup with a pour spout; do not guess. Follow the manufacturer's directions for proper use.

- Do not fill beyond the "MAX" level.

   **NOTE:** Overfilling could cause garment damage.

# LAUNDRY TIPS

## Preparing clothes for washing

Follow these recommendations to help you prolong the life of your garments.

- Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

- Close zippers, snaps, and hooks to avoid snagging other items. Remove pins, buckles, and other hard objects to avoid scratching the washer interior. Remove non-washable trim and ornaments.

- Empty pockets and turn them inside-out.

- Turn down cuffs; brush away lint and dirt.

- Turn synthetic knits inside-out to avoid pilling.

- Tie strings and sashes so they will not tangle.

- Mend tears, loose hems, and seams.

- Treat spots and stains.

- Stained or wet garments should be washed promptly for best results.

- Mix large and small items, avoid washing single items, and load evenly.

- Wash small items, such as infant socks, in a mesh garment bag. To create a balanced load it is recommended that more than one garment bag be used, and that each garment bag be filled with equal amounts of material.

  **NOTE:** If you are washing only small items, it is recommended that more than one mesh garment bag be used, and that each garment bag be filled with equal amounts of material.

## Sorting

- Separate heavily soiled items from lightly soiled ones, even if they would normally be washed together. Separate lint-givers (towels, chenille) from lint-takers (corduroy, synthetics, permanent press). When possible, turn lint-givers inside-out.

- Separate dark colors from light colors, colorfast items from noncolorfast items.

- Sort by fabric and construction (sturdy cottons, knits, delicate items).

## Unloading

- Remove clothes from washer after the cycle is completed. Metal objects such as zippers, snaps, and buckles may rust if left in the washer basket for a long time.

- When unloading garments, occasionally check under the rubber rim at the front of the tub for small items.

## Loading

### Loading suggestions (maximum size loads)

**Heavy Work Clothes**

| | |
|---|---|
| 2 pair pants | 3 pair jeans |
| 3 shirts | 1 coverall |

**Mixed Load**

| | |
|---|---|
| 2 double sheets or | 6 pair shorts |
| 1 king size sheet(s) | 2 shirts |
| 4 pillowcases | 2 blouses |
| 6 T-shirts | 6 handkerchiefs |

**Towels**

| | |
|---|---|
| 8 bath towels | 10 washcloths |
| 8 hand towels | 1 bath mat |

**Delicates**

| | |
|---|---|
| 3 camisoles | 2 bras |
| 4 slips | 2 nighties |
| 4 panties | |

| | |
|---|---|
| **QUICK WASH cycle** | 2 dress shirt |
| (2-3 garments) | 1 pair dress pants |

## Dispenser operation

- **Did you follow the manufacturer's directions when adding detergent and fabric softener to the dispensers?**
  Measure detergent and fabric softener. Slowly pour into the dispensers. Wipe up all spills. Dilute fabric softener in the fabric softener dispenser.

- **Did you put powdered or liquid color-safe bleach into the liquid chlorine bleach dispenser (on some models)?**
  Add powdered or liquid color-safe bleach directly to the washer basket. Do not use the chlorine bleach dispenser for color-safe bleach.

- **Is the fabric softener dispenser clogged?**
  Clean the fabric softener dispenser. See "Washer Care" for details.

- **Are the laundry additives in the correct dispenser compartment?**
  Add the correct amounts of detergent, fabric softener or liquid chlorine bleach to the correct compartments. Add powdered or liquid color-safe bleach to the Main Wash compartment.

- **Is there water in the dispenser at the end of the cycle?**
  A small amount of water will remain in the dispenser compartment. This is normal.

## Washer odor

- **Have you run the Clean Washer Cycle lately?**
  To freshen your washer and to avoid odors, see "Cleaning Your Washer."

- **Are you using HE detergent?**
  Use of non-HE detergent can cause a film residue which can result in odor.

- **Did you leave the door open after use?**
  This washer has a tight seal to avoid water leaks. To avoid odors leave the door open to allow the washer to dry between uses.

## Door won't unlock

- **Did all of the water drain out of the washer during the spin?**
  Select DRAIN/SPIN to remove any water remaining in the washer. The washer door will unlock at the end of the drain.

- **Is the door locked and is the "Add a garment" light on?**
  Press PAUSE/CANCEL once. The door will unlock.

## Washer Operation

### Washer won't run, fill, rinse or tumble; washer stops



**⚠WARNING**

**Electrical Shock Hazard**

Plug into a grounded 3 prong outlet.

Do not remove ground prong.

Do not use an adapter.

Do not use an extension cord.

Failure to follow these instructions can result in death, fire, or electrical shock.

- **Is the power cord plugged into a grounded 3 prong outlet?**
  Plug power cord into a grounded 3 prong outlet.

- **Are you using an extension cord?**
  Do not use an extension cord.

- **Has a household fuse blown, or has a circuit breaker tripped?**
  Replace the fuse, or reset the circuit breaker. If the problem continues, call an electrician.

- **Are both the hot and cold water faucets turned on?**
  Turn on the water.

- **Is the water inlet hose kinked?**
  Straighten the hoses.

- **Are the water inlet valve screens clogged?**
  Turn off the water and remove inlet hoses from the washer. Remove any accumulated film or particles. Reinstall hoses, turn on water and check for leaks.

- **Is the washer in a normal pause in the cycle?**
  The washer pauses for about 2 minutes during certain cycles. Allow the cycle to continue. Some cycles feature periods of tumbling and soak.

- **Is the washer overloaded?**
  Wash smaller loads.

- **Is the washer door firmly shut?**
  The door must be closed during operation.

- **Are the shipping bolts removed?**
  All four shipping bolts must be removed for proper operation of the washer.

- **Has a cycle been selected, but START has not been selected and held for 1 second?**
  Press and hold START, for 1 second.

- **Was the door open after completion of last cycle?**
  The door must be opened and closed again to start a new cycle.

- **Are you using a low speed wash cycle?**
  Powdered detergents may not dissolve well in a slow-speed cycle. For best results, use liquid detergent for slow-speed cycles such as Delicate.

- **Did you unload the washer promptly?**
  To avoid dye transfer, unload the washer as soon as it stops.

- **Did you use a fabric softener dispensing ball?**
  Dispensing balls will not operate correctly with this washer. Add liquid fabric softener to the fabric softener compartment.

- **Did you use powdered detergent in a low-speed cycle?**
  Consider using liquid detergent.

- **Did you use Quick Wash on a large load?**
  For best results, use Quick Wash for small, lightly soiled loads.

## Load is wrinkled, twisted, tangled

- **Did you unload the washer promptly?**
  Unload the washer as soon as it stops.

- **Did you use the right cycle for the load being washed?**
  Use the Delicate cycle or another cycle with a low spin speed to reduce wrinkling.

- **Did you overload the washer?**
  The wash load must be balanced and not overloaded. Loads should tumble freely during washing.

- **Was the wash water warm enough to relax wrinkles?**
  If safe for load, use warm or hot wash water.

- **Are the hot and cold water hoses reversed?**
  Check that the hot and cold water hoses are connected to the right faucets. A hot rinse followed by spin will cause wrinkling. See "Connect the Inlet Hoses."

# ASSISTANCE OR SERVICE

Before calling for assistance or service, please check "Troubleshooting." It may save you the cost of a service call. If you still need help, follow the instructions below.

When calling, please know the purchase date and the complete model and serial number of your appliance. This information will help us to better respond to your request.

## If you need replacement parts

If you need to order replacement parts, we recommend that you only use FSP® factory specified parts. These parts will fit right and work right because they are made with the same precision used to build every WHIRLPOOL® appliance.

**To locate FSP replacement parts in your area:**

In the U.S.A., call the Customer eXperience Center at **1-800-253-1301**, or your nearest designated service center.

In Canada, call **1-800-807-6777**, or your nearest designated service center.

## In the U.S.A.

Call the Whirlpool Customer eXperience Center toll free: **1-800-253-1301**.

**Our consultants provide assistance with:**

- Features and specifications on our full line of appliances

- Installation information

- Use and maintenance procedures

- Accessory and repair parts sales

- Specialized customer assistance (Spanish speaking, hearing impaired, limited vision, etc.)

- Referrals to local dealers, repair parts distributors, and service companies

Whirlpool designated service technicians are trained to fulfill the product warranty and provide after-warranty service anywhere in the United States.

To locate the Whirlpool designated service company in your area, you can also look in your telephone directory Yellow Pages.

### For further assistance

If you need further assistance, you can write to Whirlpool Corporation with any questions or concerns at:

Whirlpool Brand Home Appliances
Customer eXperience Center
553 Benson Road
Benton Harbor, MI 49022-2692

Please include a daytime phone number in your correspondence.

## In Canada

Call the Whirlpool Canada LP Customer Interaction Centre toll free: **1-800-807-6777.**

**Our consultants provide assistance with:**

- Use and maintenance procedures

- Accessory and repair parts sales

- Features and specifications on our full line of appliances

- Referrals to local dealers, repair parts distributors, and service companies. Whirlpool Canada LP designated service technicians are trained to fulfill the product warranty and provide after-warranty service anywhere in Canada.

### For further assistance

If you need further assistance, you can write to Whirlpool Canada LP with any questions or concerns at:

Customer Interaction Centre
Whirlpool Canada LP
1901 Minnesota Court
Mississauga, Ontario L5N 3A7

Please include a daytime phone number in your correspondence.

# WHIRLPOOL CORPORATION MAJOR APPLIANCE WARRANTY

### ONE YEAR LIMITED WARRANTY

For one year from the date of purchase, when this major appliance is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Parts and repair labor to correct defects in materials or workmanship. Service must be provided by a Whirlpool designated service company. This limited warranty applies only when the major appliance is used in the country in which it was purchased.

### ITEMS WHIRLPOOL WILL NOT PAY FOR

1. Service calls to correct the installation of your major appliance, to instruct you how to use your major appliance, to replace or repair house fuses or to correct house wiring or plumbing.
2. Service calls to repair or replace appliance light bulbs, air filters or water filters. Those consumable parts are excluded from warranty coverage.
3. Repairs when your major appliance is used for other than normal, single-family household use.
4. Damage resulting from accident, alteration, misuse, abuse, fire, flood, acts of God, improper installation, installation not in accordance with electrical or plumbing codes, or use of products not approved by Whirlpool.
5. Any food loss due to refrigerator or freezer product failures.
6. Replacement parts or repair labor costs for units operated outside the United States or Canada.
7. Pickup and delivery. This major appliance is designed to be repaired in the home.
8. Repairs to parts or systems resulting from unauthorized modifications made to the appliance.
9. Expenses for travel and transportation for product service in remote locations.
10. The removal and reinstallation of your appliance if it is installed in an inaccessible location or is not installed in accordance with published installation instructions.
11. Replacement parts or repair labor costs when the major appliance is used in a country other than the country in which it was purchased.

### DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES

CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW. WHIRLPOOL SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. SOME STATES AND PROVINCES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR LIMITATIONS ON THE DURATION OF IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS, SO THESE EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS, WHICH VARY FROM STATE TO STATE OR PROVINCE TO PROVINCE.

Outside the 50 United States and Canada, this warranty does not apply. Contact your authorized Whirlpool dealer to determine if another warranty applies.

If you need service, first see the "Troubleshooting" section of the Use & Care Guide. After checking "Troubleshooting," additional help can be found by checking the "Assistance or Service" section or by calling Whirlpool. In the U.S.A., call **1-800-253-1301**. In Canada, call **1-800-807-6777**.                                                                                                           12/05

**Keep this book and your sales slip together for future reference. You must provide proof of purchase or installation date for in-warranty service.**

Write down the following information about your major appliance to better help you obtain assistance or service if you ever need it. You will need to know your complete model number and serial number. You can find this information on the model and serial number label located on the product.

Dealer name _____

Address _____

Phone number _____

Model number _____

Serial number _____

Purchase date _____

# GARANTIE DES GROS APPAREILS MÉNAGERS
# WHIRLPOOL CORPORATION

### GARANTIE LIMITÉE DE UN AN

Pendant un an à compter de la date d'achat, lorsque ce gros appareil ménager est utilisé et entretenu conformément aux instructions jointes à ou fournies avec le produit, Whirlpool Corporation ou Whirlpool Canada LP (ci-après désignées "Whirlpool") paiera pour les pièces spécifiées par l'usine et la main-d'œuvre pour corriger les vices de matériaux ou de fabrication. Le service doit être fourni par une compagnie de service désignée par Whirlpool. Cette garantie limitée s'applique exclusivement lorsque l'appareil est utilisé dans le pays où il a été acheté.

### WHIRLPOOL NE PRENDRA PAS EN CHARGE

1. Les visites de service pour rectifier l'installation du gros appareil ménager, montrer à l'utilisateur comment utiliser l'appareil, remplacer ou réparer des fusibles ou rectifier le câblage ou la plomberie du domicile.

2. Les visites de service pour réparer ou remplacer les ampoules électriques de l'appareil, les filtres à air ou les filtres à eau. Ces pièces consomptibles ne sont pas couvertes par la garantie.

3. Les réparations lorsque le gros appareil ménager est utilisé à des fins autres que l'usage unifamilial normal.

4. Les dommages imputables à : accident, modification, usage impropre ou abusif, incendie, inondation, actes de Dieu, installation fautive ou installation non conforme aux codes d'électricité ou de plomberie, ou l'utilisation de produits non approuvés par Whirlpool.

5. Toute perte d'aliments due à une défaillance du réfrigérateur ou du congélateur.

6. Le coût des pièces de rechange et de la main-d'œuvre pour les appareils utilisés hors des États-Unis ou du Canada.

7. Le ramassage et la livraison. Ce gros appareil ménager est conçu pour être réparé à domicile.

8. Les réparations aux pièces ou systèmes résultant d'une modification non autorisée faite à l'appareil.

9. Les frais de transport pour le service d'un produit dans les régions éloignées.

10. La dépose et la réinstallation de votre appareil si celui-ci est installé dans un endroit inaccessible ou n'est pas installé conformément aux instructions d'installation fournies.

11. Le coût des pièces de rechange et de la main-d'œuvre lorsque l'appareil est utilisé dans un pays autre que le pays où il a été acheté.

### CLAUSE D'EXONÉRATION DE RESPONSABILITÉ AU TITRE DES GARANTIES IMPLICITES; LIMITATION DES RECOURS

LE SEUL ET EXCLUSIF RECOURS DU CLIENT DANS LE CADRE DE LA PRÉSENTE GARANTIE LIMITÉE CONSISTE EN LA RÉPARATION PRÉVUE CI-DESSUS. LES GARANTIES IMPLICITES, Y COMPRIS LES GARANTIES APPLICABLES DE QUALITÉ MARCHANDE ET D'APTITUDE À UN USAGE PARTICULIER, SONT LIMITÉES À UN AN OU À LA PLUS COURTE PÉRIODE AUTORISÉE PAR LA LOI. WHIRLPOOL N'ASSUME AUCUNE RESPONSABILITÉ POUR LES DOMMAGES FORTUITS OU INDIRECTS. CERTAINES JURIDICTIONS NE PERMETTENT PAS L'EXCLUSION OU LA LIMITATION DES DOMMAGES FORTUITS OU INDIRECTS, OU LES LIMITATIONS DE LA DURÉE DES GARANTIES IMPLICITES DE QUALITÉ MARCHANDE OU D'APTITUDE À UN USAGE PARTICULIER, DE SORTE QUE CES EXCLUSIONS OU LIMITATIONS PEUVENT NE PAS S'APPLIQUER DANS VOTRE CAS. CETTE GARANTIE VOUS CONFÈRE DES DROITS JURIDIQUES SPÉCIFIQUES ET VOUS POUVEZ ÉGALEMENT JOUIR D'AUTRES DROITS QUI PEUVENT VARIER D'UNE JURIDICTION À UNE AUTRE.

À l'extérieur du Canada et des 50 États des États-Unis, cette garantie ne s'applique pas. Contacter votre marchand Whirlpool autorisé pour déterminer si une autre garantie s'applique.

Si vous avez besoin de service, voir d'abord la section "Dépannage" du Guide d'utilisation et d'entretien. Après avoir vérifié la section "Dépannage", de l'aide supplémentaire peut être trouvée en vérifiant la section "Assistance ou service" ou en appelant Whirlpool. Aux É.-U., composer le **1-800-253-1301**. Au Canada, composer le **1-800-807-6777**.                    12/05

**8540910A**
© 2006 Whirlpool Corporation.
All rights reserved.
Tous droits réservés.

® Registered Trademark/TM Trademark of Whirlpool, U.S.A., Whirlpool Canada LP
licensee in Canada
® Marque déposée/TM Marque de commerce de Whirlpool, U.S.A., Emploi Licencié par
Whirlpool Canada LP au Canada



1/06
Printed in Mexico
Imprimé au Mexique

# EXHIBIT 4





# Whirlpool®

## duet
sport™ ht

---

# FRONT-LOADING
# AUTOMATIC WASHER

## Use & Care Guide

For questions about features, operation/performance,
parts, accessories or service call: **1-800-253-1301**

In Canada, call: **1-800-807-6777**

or visit our website at
**www.whirlpool.com** or **www.whirlpool.ca**

---

# LAVEUSE
# AUTOMATIQUE À
# CHARGEMENT FRONTAL

## Guide d'utilisation et d'entretien

Au Canada, pour assistance, installation ou service, composez le :
**1-800-807-6777**

ou visitez notre site internet à
**www.whirlpool.ca**

---

Table of Contents/Table des matières .................. 2

 Designed to use only HE
High Efficiency Detergent
Conçue pour l'utilisation
d'un détergent haute
efficacité seulement



8540321

# WASHER USE



## Starting Your Washer

⚠ **WARNING**

**Fire Hazard**

Never place items in the washer that are dampened with gasoline or other flammable fluids.

No washer can completely remove oil.

Do not dry anything that has ever had any type of oil on it (including cooking oils).

Doing so can result in death, explosion, or fire.

**WARNING:** To reduce the risk of fire, electric shock, or injury to persons, read the IMPORTANT SAFETY INSTRUCTIONS before operating this appliance.

The following is a guide to using your washer. Please refer to specific sections of this manual for more detailed information.

Do not store laundry additives on the top surface of this washer. Vibration is normal during operation.

## Using the Proper Detergent

Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times, and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

### First Wash Cycle Without Laundry

Before washing clothes for the first time, if not completed during the final installation step, choose the Normal/Casual cycle and run it without clothes. Use only HE High Efficiency detergent. Use ½ the manufacturer's recommended amount for a medium-sized load. This initial cycle serves to ensure the interior is clean before washing clothes.

### For All Wash Cycles

1. **To load washer**
   Open the washer door by pulling on the handle. Sort laundry according to color and type of fabric. Place a load of sorted clothes in the washer. Do not overload washer. Overloading can cause poor cleaning.
   - The washer can be fully loaded, but not tightly packed. Washer door should close easily.
   - Mix large and small items. Avoid washing a single item. Load evenly.
   - Wash small items such as infant socks in mesh garment bags. It is recommended that more than one garment bag be used and that each garment bag be filled with equal amounts of material.
   - When unloading garments, occasionally check under the rubber rim at the front of the tub for small items.

2. Close the washer door by pushing it firmly until the lock clicks. The washer door will remain locked during the wash cycle.
   **NOTE:** After any wash cycle is completed, the door must be opened and then closed before a new cycle can begin. The door can be opened only if PAUSE/CANCEL is selected while the ADD A GARMENT light is illuminated or if the cycle has been canceled. See "To cancel a cycle" in the "Changing Cycles and Options" section.

3. Open the dispenser drawer and add laundry additives to the detergent, bleach, or fabric softener compartments. Close drawer slowly to avoid spills. See "Using the Dispenser."

4. Turn on the washer by selecting POWER. Select one of the cycles by turning the cycle selector. The indicator light for the selected cycle will illuminate. When selecting a Wash Cycle, the preset Modifiers and Options, Water Temp, and Spin Speed for the selected cycle will illuminate. The preset settings provide the recommended fabric care for the selected cycle. See "Wash Cycles."

5. Select the desired Options. Not all Options are available with all cycles. See "Options."

6.  If desired, select the END OF CYCLE SIGNAL. The signal is helpful when you are washing items that should be removed from the washer as soon as it stops. Press END OF CYCLE SIGNAL to select ON or OFF.

7.  **To begin the wash cycle immediately**
    Select and hold START (for approximately 1 second).

    ■   If you do not select START within 5 minutes of choosing a cycle, the washer automatically shuts off.

    ■   When the wash cycle is complete, the CYCLE COMPLETE status light illuminates, the door unlocks, and the wash load can be removed from the washer. The washer powers down automatically 5 minutes after the cycle is complete and the CYCLE COMPLETE light goes off. To power down the washer manually after the wash cycle is complete, select PAUSE/CANCEL once.

8.  **To begin the wash cycle later**
    Select DELAY WASH until the desired delay time (in hours) is displayed. Select START. The countdown to the wash cycle will show in the display window.

    **IMPORTANT:** When delaying a cycle, use only powdered detergents in the main wash compartment since liquid detergents may seep out of the compartment during Delay, before the wash cycle begins.

## Using the Dispenser

Your new washer has a dispenser drawer with three separate compartments for your laundry additives—one is for detergent, one is for liquid chlorine bleach, and one is for liquid fabric softener. Laundry additives are diluted and dispensed automatically at the proper time during the wash cycle, making it unnecessary for you to return to the washer during the cycle to add them.

It is normal for small amounts of water to remain in the dispensers when the wash cycle is complete.

Do not put laundry additives directly into the wash tub. Always use the proper dispensers when adding laundry additives.

### Choosing the Right Detergent

Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times, and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

### To fill dispenser compartments

1.  Pull out the dispenser drawer.

2.  Add the desired laundry additives to the proper compartment.

3.  Push in the dispenser drawer slowly and completely (to avoid a spill).



*Dispenser*

*A. Dispenser release lever*
*B. Main Wash detergent compartment*
*C. Liquid chlorine bleach compartment*
*D. Fabric softener compartment*

### Main Wash detergent compartment
(Letter B in Dispenser Illustration)

Add liquid or powdered HE detergent to this compartment for your main wash cycle.

■   Powdered color-safe bleach may be added to the Main Wash compartment along with the powdered detergent.

■   Liquid detergent: Measure the amount of liquid detergent with the measurement device which comes with the detergent. Add no more than the manufacturer's recommended amount. The liquid detergent flows immediately into the washer.

■   Powdered detergent: Measure the amount of powdered detergent with the measurement device which comes with the detergent. Add no more than the manufacturer's recommended amount.

**NOTE:** Overfilling could cause an oversudsing condition.

### Chlorine bleach compartment
(Letter C in Dispenser Illustration)

Add NO MORE THAN ⅔ cup (160 mL) liquid chlorine bleach to this compartment. The bleach will be automatically diluted and dispensed at the best time during the first rinse after the wash cycle. This compartment cannot dilute powdered bleach.

■   Use only liquid chlorine bleach in this dispenser. Do not use this dispenser to add powdered chlorine or any form of color-safe bleach to your load.

■   Always measure liquid chlorine bleach. Use a measuring cup with a pour spout; do not guess. Follow the manufacturer's directions for proper use.

■   Do not fill beyond the "MAX" level.

    **NOTE:** Overfilling could cause garment damage.

13

# LAUNDRY TIPS

### Preparing clothes for washing

Follow these recommendations to help you prolong the life of your garments.

- Use only High Efficiency detergents. The package for this type of detergent will be marked "HE" or "High Efficiency." This wash system, along with less water, will create too much sudsing with a regular non-HE detergent. Using regular detergent will likely result in washer errors, longer cycle times and reduced rinsing performance. It may also result in component failures and noticeable mold or mildew. HE detergents are made to produce the right amount of suds for the best performance. Follow the manufacturer's instructions to determine the amount of detergent to use.



*Use only HE High Efficiency detergent.*

- Close zippers, snaps, and hooks to avoid snagging other items. Remove pins, buckles, and other hard objects to avoid scratching the washer interior. Remove non-washable trim and ornaments.

- Empty pockets and turn them inside-out.

- Turn down cuffs; brush away lint and dirt.

- Turn synthetic knits inside-out to avoid pilling.

- Tie strings and sashes so they will not tangle.

- Mend tears, loose hems, and seams.

- Treat spots and stains.

- Stained or wet garments should be washed promptly for best results.

- Mix large and small items, avoid washing single items, and load evenly.

- Wash small items, such as infant socks, in a mesh garment bag. To create a balanced load it is recommended that more than one garment bag be used, and that each garment bag be filled with equal amounts of material.

   **NOTE:** If you are washing only small items, it is recommended that more than one mesh garment bag be used, and that each garment bag be filled with equal amounts of material.

### Sorting

- Separate heavily soiled items from lightly soiled ones, even if they would normally be washed together. Separate lint-givers (towels, chenille) from lint-takers (corduroy, synthetics, permanent press). When possible, turn lint-givers inside-out.

- Separate dark colors from light colors, colorfast items from noncolorfast items.

- Sort by fabric and construction (sturdy cottons, knits, delicate items).

### Unloading

- Remove clothes from washer after the cycle is completed. Metal objects such as zippers, snaps, and buckles may rust if left in the washer basket for a long time.

- When unloading garments, occasionally check under the rubber rim at the front of the tub for small items.

## Loading

### Loading suggestions (maximum size loads)

**Heavy Work Clothes**

| | |
|---|---|
| 2 pair pants | 3 pair jeans |
| 3 shirts | 1 coverall |

**Mixed Load**

| | |
|---|---|
| 2 double sheets or | 6 pair shorts |
| 1 king size sheet(s) | 2 shirts |
| 4 pillowcases | 2 blouses |
| 6 T-shirts | 6 handkerchiefs |

**Towels**

| | |
|---|---|
| 8 bath towels | 10 washcloths |
| 8 hand towels | 1 bath mat |

**Delicates**

| | |
|---|---|
| 3 camisoles | 2 bras |
| 4 slips | 2 nighties |
| 4 panties | |

| | |
|---|---|
| **QUICK WASH cycle** | 2 dress shirt |
| (2-3 garments) | 1 pair dress pants |

## Dispenser operation

- **Did you follow the manufacturer's directions when adding detergent and fabric softener to the dispensers?**
  Measure detergent and fabric softener. Slowly pour into the dispensers. Wipe up all spills. Dilute fabric softener in the fabric softener dispenser.

- **Did you put powdered or liquid color-safe bleach into the liquid chlorine bleach dispenser (on some models)?**
  Add powdered or liquid color-safe bleach directly to the washer basket. Do not use the chlorine bleach dispenser for color-safe bleach.

- **Is the fabric softener dispenser clogged?**
  Clean the fabric softener dispenser. See "Washer Care" for details.

- **Are the laundry additives in the correct dispenser compartment?**
  Add the correct amounts of detergent, fabric softener or liquid chlorine bleach to the correct compartments. Add powdered or liquid color-safe bleach to the Main Wash compartment.

- **Is there water in the dispenser at the end of the cycle?**
  A small amount of water will remain in the dispenser compartment. This is normal.

## Washer odor

- **Have you run the Clean Washer Cycle lately?**
  To freshen your washer and to avoid odors, see "Cleaning Your Washer."

- **Are you using HE detergent?**
  Use of non-HE detergent can cause a film residue which can result in odor.

- **Did you leave the door open after use?**
  This washer has a tight seal to avoid water leaks. To avoid odors leave the door open to allow the washer to dry between uses.

## Door won't unlock

- **Did all of the water drain out of the washer during the spin?**
  Select DRAIN/SPIN to remove any water remaining in the washer. The washer door will unlock at the end of the drain.

- **Is the door locked and is the "Add a garment" light on?**
  Press PAUSE/CANCEL once. The door will unlock.

## Washer Operation

### Washer won't run, fill, rinse or tumble; washer stops



**⚠️WARNING**

**Electrical Shock Hazard**

Plug into a grounded 3 prong outlet.

Do not remove ground prong.

Do not use an adapter.

Do not use an extension cord.

Failure to follow these instructions can result in death, fire, or electrical shock.

- **Is the power cord plugged into a grounded 3 prong outlet?**
  Plug power cord into a grounded 3 prong outlet.

- **Are you using an extension cord?**
  Do not use an extension cord.

- **Has a household fuse blown, or has a circuit breaker tripped?**
  Replace the fuse, or reset the circuit breaker. If the problem continues, call an electrician.

- **Are both the hot and cold water faucets turned on?**
  Turn on the water.

- **Is the water inlet hose kinked?**
  Straighten the hoses.

- **Are the water inlet valve screens clogged?**
  Turn off the water and remove inlet hoses from the washer. Remove any accumulated film or particles. Reinstall hoses, turn on water and check for leaks.

- **Is the washer in a normal pause in the cycle?**
  The washer pauses for about 2 minutes during certain cycles. Allow the cycle to continue. Some cycles feature periods of tumbling and soak.

- **Is the washer overloaded?**
  Wash smaller loads.

- **Is the washer door firmly shut?**
  The door must be closed during operation.

- **Are the shipping bolts removed?**
  All four shipping bolts must be removed for proper operation of the washer.

- **Has a cycle been selected, but START has not been selected and held for 1 second?**
  Press and hold START, for 1 second.

- **Was the door open after completion of last cycle?**
  The door must be opened and closed again to start a new cycle.

23

# WHIRLPOOL CORPORATION MAJOR APPLIANCE WARRANTY

## ONE YEAR LIMITED WARRANTY

For one year from the date of purchase, when this major appliance is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Parts and repair labor to correct defects in materials or workmanship. Service must be provided by a Whirlpool designated service company. This limited warranty applies only when the major appliance is used in the country in which it was purchased.

## ITEMS WHIRLPOOL WILL NOT PAY FOR

1. Service calls to correct the installation of your major appliance, to instruct you how to use your major appliance, to replace or repair house fuses or to correct house wiring or plumbing.
2. Service calls to repair or replace appliance light bulbs, air filters or water filters. Those consumable parts are excluded from warranty coverage.
3. Repairs when your major appliance is used for other than normal, single-family household use.
4. Damage resulting from accident, alteration, misuse, abuse, fire, flood, acts of God, improper installation, installation not in accordance with electrical or plumbing codes, or use of products not approved by Whirlpool.
5. Any food loss due to refrigerator or freezer product failures.
6. Replacement parts or repair labor costs for units operated outside the United States or Canada.
7. Pickup and delivery. This major appliance is designed to be repaired in the home.
8. Repairs to parts or systems resulting from unauthorized modifications made to the appliance.
9. Expenses for travel and transportation for product service in remote locations.
10. The removal and reinstallation of your appliance if it is installed in an inaccessible location or is not installed in accordance with published installation instructions.
11. Replacement parts or repair labor costs when the major appliance is used in a country other than the country in which it was purchased.

## DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES

CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW. WHIRLPOOL SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. SOME STATES AND PROVINCES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR LIMITATIONS ON THE DURATION OF IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS, SO THESE EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS, WHICH VARY FROM STATE TO STATE OR PROVINCE TO PROVINCE.

Outside the 50 United States and Canada, this warranty does not apply. Contact your authorized Whirlpool dealer to determine if another warranty applies.

If you need service, first see the "Troubleshooting" section of the Use & Care Guide. After checking "Troubleshooting," additional help can be found by checking the "Assistance or Service" section or by calling Whirlpool. In the U.S.A., call **1-800-253-1301**. In Canada, call **1-800-807-6777**.                                                                                    12/05

**Keep this book and your sales slip together for future reference. You must provide proof of purchase or installation date for in-warranty service.**

Write down the following information about your major appliance to better help you obtain assistance or service if you ever need it. You will need to know your complete model number and serial number. You can find this information on the model and serial number label located on the product.

Dealer name _____

Address _____

Phone number _____

Model number _____

Serial number _____

Purchase date _____

26

# GARANTIE DES GROS APPAREILS MÉNAGERS
# WHIRLPOOL CORPORATION

## GARANTIE LIMITÉE DE UN AN

Pendant un an à compter de la date d'achat, lorsque ce gros appareil ménager est utilisé et entretenu conformément aux instructions jointes à ou fournies avec le produit, Whirlpool Corporation ou Whirlpool Canada LP (ci-après désignées "Whirlpool") paiera pour les pièces spécifiées par l'usine et la main-d'œuvre pour corriger les vices de matériaux ou de fabrication. Le service doit être fourni par une compagnie de service désignée par Whirlpool. Cette garantie limitée s'applique exclusivement lorsque l'appareil est utilisé dans le pays où il a été acheté.

## WHIRLPOOL NE PRENDRA PAS EN CHARGE

1. Les visites de service pour rectifier l'installation du gros appareil ménager, montrer à l'utilisateur comment utiliser l'appareil, remplacer ou réparer des fusibles ou rectifier le câblage ou la plomberie du domicile.

2. Les visites de service pour réparer ou remplacer les ampoules électriques de l'appareil, les filtres à air ou les filtres à eau. Ces pièces consomptibles ne sont pas couvertes par la garantie.

3. Les réparations lorsque le gros appareil ménager est utilisé à des fins autres que l'usage unifamilial normal.

4. Les dommages imputables à : accident, modification, usage impropre ou abusif, incendie, inondation, actes de Dieu, installation fautive ou installation non conforme aux codes d'électricité ou de plomberie, ou l'utilisation de produits non approuvés par Whirlpool.

5. Toute perte d'aliments due à une défaillance du réfrigérateur ou du congélateur.

6. Le coût des pièces de rechange et de la main-d'œuvre pour les appareils utilisés hors des États-Unis ou du Canada.

7. Le ramassage et la livraison. Ce gros appareil ménager est conçu pour être réparé à domicile.

8. Les réparations aux pièces ou systèmes résultant d'une modification non autorisée faite à l'appareil.

9. Les frais de transport pour le service d'un produit dans les régions éloignées.

10. La dépose et la réinstallation de votre appareil si celui-ci est installé dans un endroit inaccessible ou n'est pas installé conformément aux instructions d'installation fournies.

11. Le coût des pièces de rechange et de la main-d'œuvre lorsque l'appareil est utilisé dans un pays autre que le pays où il a été acheté.

## CLAUSE D'EXONÉRATION DE RESPONSABILITÉ AU TITRE DES GARANTIES IMPLICITES; LIMITATION DES RECOURS

LE SEUL ET EXCLUSIF RECOURS DU CLIENT DANS LE CADRE DE LA PRÉSENTE GARANTIE LIMITÉE CONSISTE EN LA RÉPARATION PRÉVUE CI-DESSUS. LES GARANTIES IMPLICITES, Y COMPRIS LES GARANTIES APPLICABLES DE QUALITÉ MARCHANDE ET D'APTITUDE À UN USAGE PARTICULIER, SONT LIMITÉES À UN AN OU À LA PLUS COURTE PÉRIODE AUTORISÉE PAR LA LOI. WHIRLPOOL N'ASSUME AUCUNE RESPONSABILITÉ POUR LES DOMMAGES FORTUITS OU INDIRECTS. CERTAINES JURIDICTIONS NE PERMETTENT PAS L'EXCLUSION OU LA LIMITATION DES DOMMAGES FORTUITS OU INDIRECTS, OU LES LIMITATIONS DE LA DURÉE DES GARANTIES IMPLICITES DE QUALITÉ MARCHANDE OU D'APTITUDE À UN USAGE PARTICULIER, DE SORTE QUE CES EXCLUSIONS OU LIMITATIONS PEUVENT NE PAS S'APPLIQUER DANS VOTRE CAS. CETTE GARANTIE VOUS CONFÈRE DES DROITS JURIDIQUES SPÉCIFIQUES ET VOUS POUVEZ ÉGALEMENT JOUIR D'AUTRES DROITS QUI PEUVENT VARIER D'UNE JURIDICTION À UNE AUTRE.

À l'extérieur du Canada et des 50 États des États-Unis, cette garantie ne s'applique pas. Contacter votre marchand Whirlpool autorisé pour déterminer si une autre garantie s'applique.

Si vous avez besoin de service, voir d'abord la section "Dépannage" du Guide d'utilisation et d'entretien. Après avoir vérifié la section "Dépannage", de l'aide supplémentaire peut être trouvée en vérifiant la section "Assistance ou service" ou en appelant Whirlpool. Aux É.-U., composer le **1-800-253-1301**. Au Canada, composer le **1-800-807-6777**.                  12/05

---

**Conservez ce manuel et votre reçu de vente ensemble pour référence ultérieure. Pour le service sous garantie, vous devez présenter un document prouvant la date d'achat ou d'installation.**

Inscrivez les renseignements suivants au sujet de votre gros appareil ménager pour mieux vous aider à obtenir assistance ou service en cas de besoin. Vous devrez connaître le numéro de modèle et le numéro de série au complet. Vous trouverez ces renseignements sur la plaque signalétique située sur le produit.

Nom du marchand _____

Adresse _____

Numéro de téléphone _____

Numéro de modèle _____

Numéro de série _____

Date d'achat _____

**8540321**
© 2006 Whirlpool Corporation.
All rights reserved.
Tous droits réservés.

® Registered Trademark/TM Trademark of Whirlpool, U.S.A., Whirlpool Canada LP
licensee in Canada
® Marque déposée/TM Marque de commerce de Whirlpool, U.S.A., Emploi Licencié par
Whirlpool Canada LP au Canada



3/06
Printed in Mexico
Imprimé au Mexique

# EXHIBIT 5





# duet® HT

# FRONT-LOADING AUTOMATIC WASHER

## Use & Care Guide

For questions about features, operation/performance,
parts, accessories or service call: 1-800-253-1301

In Canada, for assistance call: 1-800-461-5681,
for installation and service call: 1-800-807-6777

or visit our website at
www.whirlpool.com or www.whirlpool.com/canada

# LAVEUSE AUTOMATIQUE À CHARGEMENT FRONTAL

## Guide d'utilisation et d'entretien

Pour des questions à propos des caractéristiques, du fonctionnement/
performance, des pièces, accessoires ou service,
composez le 1-800-253-1301.

Pour assistance au Canada, composez le
1-800-461-5681,
pour installation et service, composez le 1-800-807-6777

ou visitez notre site internet à
www.whirlpool.com ou www.whirlpool.com/canada

Table of Contents/Table des matières .................. 2



4619 7020 3982

# WHIRLPOOL® WASHER WARRANTY

### ONE-YEAR FULL WARRANTY

For one year from the date of purchase, when this washer is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation will pay for FSP® replacement parts and repair labor to correct defects in materials or workmanship. Service must be provided by a Whirlpool designated service company.

### SECOND YEAR LIMITED WARRANTY ON ALL ELECTRONIC CONTROL BOARDS

For the second year from the date of purchase, when this washer is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation will pay for FSP® replacement parts for all electronic control boards.

### SECOND THROUGH FIFTH YEAR LIMITED WARRANTY ON PORCELAIN OR POWDER TOP, DRIVE SYSTEM BELT AND PULLEYS

In the second through fifth years from the date of purchase, when this washer is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation will pay for FSP® replacement parts for the following, if defective in materials or workmanship: porcelain or powder top (against chipping and rust); drive system belt and pulleys.

### SECOND THROUGH TENTH YEAR LIMITED WARRANTY ON OUTER TUB

In the second through tenth years from the date of purchase, when this washer is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation will pay for FSP® replacement parts for the outer tub should it crack or fail to contain water, if defective in materials or workmanship.

### LIFETIME LIMITED WARRANTY ON STAINLESS STEEL WASH DRUM

For the lifetime of the washer, when this washer is operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation will pay for FSP® replacement parts for the Stainless Steel wash drum if defective in materials or workmanship.

**Whirlpool Corporation will not pay for:**

1. Service calls to correct the installation of your washer, to instruct you how to use your washer, or to replace house fuses or correct house wiring or plumbing.
2. Repairs when your washer is used in other than normal, single-family household use.
3. Damage resulting from accident, alteration, misuse, abuse, fire, flood, acts of God, improper installation, installation not in accordance with local electrical and plumbing codes, or use of products not approved by Whirlpool Corporation.
4. Any labor costs during the limited warranty periods.
5. Replacement parts or repair labor costs for units operated outside the United States and Canada.
6. Pickup and delivery. This product is designed to be repaired in the home.
7. Repairs to parts or systems resulting from unauthorized modifications made to the appliance.
8. In Canada, travel or transportation expenses for customers who reside in remote areas.

### WHIRLPOOL CORPORATION AND WHIRLPOOL CANADA INC. SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.

Some states and provinces do not allow the exclusion or limitation of incidental or consequential damages, so this exclusion or limitation may not apply to you. This warranty gives you specific legal rights and you may also have other rights which vary from state to state or province to province.

**Outside the 50 United States and Canada,** this warranty does not apply. Contact your authorized Whirlpool dealer to determine if another warranty applies.

If you need service, first see "Troubleshooting." Additional help can be found by checking "Assistance or Service," or call our Customer Interaction Center at **1-800-253-1301** from anywhere in the U.S.A. or write: Whirlpool Corporation, Customer Interaction Center, 553 Benson Road, Benton Harbor, MI 49022-2692. In Canada, call Whirlpool Canada Inc. at **1-800-807-6777**. 5/01

**Keep this book and your sales slip together for future reference. You must provide proof of purchase or installation date for in-warranty service.**

Write down the following information about your washer to better help you obtain assistance or service if you ever need it. You will need to know your complete model number and serial number. You can find this information on the model and serial number label/plate, located on your appliance.

Dealer name _____

Address _____

Phone number _____

Model number _____

Serial number _____

Purchase date _____



**4619 7020 3982**
© 2002 Whirlpool Corporation.
All rights reserved.
Tous droits réservés.

® Registered Trademark/TM Trademark of Whirlpool, U.S.A., Whirlpool Canada Inc. Licensee in Canada
® Marque déposée/TM Marque de commerce de Whirlpool, U.S.A., Emploi licencié par Whirlpool Canada Inc. au Canada

9/02
Printed in U.S.A.
Imprimé aux É.-U.